_no summons issued_

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

          DEC 28 2015      CA

              AT SEATTLE
        CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

**15 - C V - 0 2 0 1 8**
**RSM**

ANNE BLOCK, an individual

              Plaintiff,

vs.

WASHINGTON STATE BAR ASSOCIATION,
LINDA EIDE, individually and in her capacity as
an employee of defendant Washington State Bar
Association;
LIN O'DELL, individually and in her capacity as
defendant Washington State Bar Association and in
her marital community with defendant MARK
PLIVILECH, her husband and in his individual
capacity;
JENNIFER DREMOUSIS, individually and in her
capacity as defendant Washington State Bar
Association;
JULIE SHANKLAND, individually and in her
capacity as defendant Washington State Bar
Association;
KATHRYN BERGER, individually and in her
capacity as defendant Washington State Bar
Association;
ALISON SATO, individually and in her capacity
as defendant Washington State Bar Association;
STEPHANIE BLOOMFIELD, individually and in
her capacity as defendant Washington State Bar
Association;

Civil Case No.

COMPLAINT FOR DAMAGES;

1. 42 USC § 1983 Violations, damages
   and Equitable Relief; and

2. 42 USC § 1988 COSTS and Attorney Fees;
   and

3. 28 U.S.C §1961 et seq. (see 18 U.S.C. §§
   1964(a) and (c) [" Civil RICO"]

4. Washington's " Little RICO" RCW
   9A 82.100(2); and

5. Sherman Anti-Trust Act violation 15 U.S.C.
   §1); violating the Americans with Disabilities
   Act, 42 U.S.C. 1201 et seq. ("ADA"); and

6. Americans with Disabilities Act, 42 U.S.C.
   1201 et seq. ("ADA"); and

7. Washington Law Against Discrimination,
   RCW 49.60 et seq. ("WLAD"); and

8. Violating right to privacy, RCW 9.73.060.

Complaint for Damages Page **1** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

MARCIA LYNN DAMEROW FISCHER,
individually and in her capacity as defendant
Washington State Bar Association;
MARC SILVERMAN,  individually and in his
capacity as defendant Washington State Bar
Association;
STEPHANIA CAMP DENTON,
individually and in her capacity as defendant
Washington State Bar Association;
MICHELE NINA CARNEY, individually and in
her capacity as defendant Washington State Bar
Association;
SARA ARDEEN, individually and in her capacity
as defendant Washington State Bar Association;
MICHELE NINA CARNEY, individually and in
her capacity as defendant Washington State Bar
Association;
TODD R. STARTZEL, individually and in his
capacity as defendant Washington State Bar
Association;
S. NIA RENEI COTTRELL, individually and in
her capacity as defendant Washington State Bar
Association;
MICHAEL JON MYERS, individually and in his
capacity as defendant Washington State Bar
Association;
WILLIAM EARL DAVIS, individually and in his
capacity as defendant Washington State Bar
Association;
KEITH MASON BLACK,  individually and in his
capacity as defendant Washington State Bar
Association;
KEVIN BANK,  individually and in his capacity as
defendant Washington State Bar Association;
JOSEPH  NAPPI JR, individually and in his
capacity as defendant Washington State Bar
Association;
JOHN DOE, individually and in his capacity as
defendant Washington State Bar Association;

WILLIAM MCGILLIN, individually and in her
capacity as defendant Washington State Bar
Association;
ANDREW CARRINGTON, individually and in his
capacity as defendant Washington State Bar
Association;

**JURY TRIAL DEMANDED**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

DOUG ENDE, individually and in his capacity as
defendant Washington State Bar Association;
RONALD SCHAPPS, individually and in his
capacity as defendant Washington State Bar
Association;
SETH FINE, individually, and in his official
capacity as an employee of defendant Snohomish
County and an employee of Washington State Bar
Association ;
G. GEOFFREY GIBBS, individually, and in his
official capacity as an employee of defendant
Snohomish County and an employee of
Washington State Bar Association ;

NADINE SCOTT,  individually and in her capacity
as defendant Washington State Bar Association;
SHERRY MEHR, individually and in her capacity
as defendant Washington State Bar Association;
KING COUNTY, a Washington State County and
Municipal Corporation;
CARY COBLANTZ, individually, and in his
official capacity as an employee of defendant King
County;
PORT OF SEATTLE, a Washington State Port and
Municipal Corporation;
KALI MATUSKA, individually, and in her official
capacity as an employee of defendant Port of
Seattle;
JULIE TANGA, individually, and in her official
capacity as an employee of defendant Port of
Seattle;

SEAN GILLEBO, individually, and in his official
capacity as an employee of defendant Port of
Seattle;

JAMES TUTTLE, individually, and in his official
capacity as an employee of defendant Port of
Seattle;
CITY OF DUVALL, a Washington State City and
Municipal Corporation;
LORI BATIOT, individually, and in her official
capacity as an employee of defendant City of
Duvall;
SNOHOMISH COUNTY, a Washington County
and Municipal Corporation;

Complaint for Damages Page **3** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

THE CITY OF GOLD BAR, a Washington State
City and Municipal Corporation;

LINDA LOEN, individually, and in her capacity as
defendant City of Gold Bar Mayor and Public
Records Officer;

CRYSTAL HILL PENNINGTON (nee BERG),
individually, and in her marital community with
defendant John Pennington, her husband;

JOHN PENNINGTON,  individually, and in his
marital community with defendant Crystal Hill
Pennington, his wife, and in his official capacity as
Director of Snohomish County Department of
Emergency Management for defendant Snohomish
County;

KENYON DISEND, A WASHINGTON PLLC
business in Washington;

MICHAEL KENYON,  individually, and in his
official capacity as an employee  and as a
shareholder of defendant Kenyon Disend;

ANN MARIE SOTO, individually, and in her
official capacity as an employee for defendant
Kenyon Disend;

SANDRA SULLIVAN ( nee, MEADOWCRAFT),
individually, and in her official capacity as an
employee for defendant Kenyon Disend;

MARGARET KING, individually, and in her
official capacity as an employee of defendant
Snohomish County and for defendant Kenyon
Disend;

MARK ROE, individually, and in his official
capacity as an employee and public records officer
of defendant Snohomish County;

SEAN REAY, individually, and in his official
capacity as an employee of defendant Snohomish
County;

SARA DiVITTORIO, individually, and in her
official capacity as an employee of defendant
Snohomish County;

BRIAN LEWIS, individually, and in his official
capacity as an employee and public records officer
of defendant Snohomish County;

JOE BEAVERS, individually;

SKY VALLEY MEDIA GROUP, LLC dba SKY
VALLEY CHRONICLE, a Limited Liability
Company in Washington;

Complaint for Damages Page **4** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

RONALD FEJFAR, aka RON FAVOR aka RON
FABOUR aka CHET ROGERS individually, and
in his official capacity as an agent for defendant
Sky Valley Media Group, LLC.

Defendants.

Comes now the Plaintiff, Anne Block ("Block"), seeking to protect and vindicate

fundamental constitutional rights.  Block brings a civil rights action brought under the First and

Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging

Defendants' restriction on and continuing attempts to punish Plaintiff's right to engage in protected

First Amendment activities free from Defendants' interference. Block brings a civil rights action

brought under the First and Fourteenth Amendments to the United States Constitution, and under 42

U.S.C § 1983, challenging Defendants restrictions on continuing attempts to punish Plaintiff's right

to engage in protected First Amendment activities; Block should be able to exercise these rights from

defendants interference.

Block requests the Court take notice that the Washington State Constitution prohibits:

immunities and "hereditary privileges [See Article 1, sec 12 and sec 28]; any limitation of

civil and criminal actions; and prohibits legalizing the unauthorized or invalid act of any

officer. [See Article 2, Section 28(12 and 17) Defendants have no immunity under any legal

theory as the Washington Constitution expressly prohibits immunities whether "hereditary" or

statutory. See RCW 4.04.010 voiding common law inconsistent with these constitutional

provisions.

Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201

and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal

Complaint for Damages Page **5** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

and equitable powers of this Court.  42 U.S.C. §§ 1983 and 1988; RICO remedies authorized by 28 U.S.C §1961 et seq. see 18 U.S.C. §§ 1964(a) and (c) "Civil RICO"; mail and wire fraud in violation of 18 U.S.C. §1341; Sherman Anti-Trust Act violation (15 U.S.C. §1); violating the Americans with Disabilities Act, 42 U.S.C. 1201 et seq. ("ADA"); and Washington Law Against Discrimination, RCW 49.60 et seq. ("WLAD"); and for declaratory and injunctive relief under federal law, and state law tort claims against the above named defendants alleges as follows:

## 1.  JURISDICTION AND VENUE

1.1  The acts and omissions alleged in this Complaint occurred within the geographical and jurisdictional boundaries of the United States District Court for the Western District of Washington by persons located and residing therein, and events that gave rise to this complaint took place within the geographical jurisdictional boundaries of the Western District of Washington. Venue in this district is therefore appropriate pursuant to 28 U.S.C. §1391.

1.2 Block is entitled to sue for and obtain injunctive relief under 15 U.S.C. § 26

1.3 This court has subject matter jurisdiction on Anti-Trust violations under the Sherman Act pursuant to 28 U.S.C. § 1337.

1.4 This court has subject matter jurisdiction over Block's claims of violations of her constitutional rights under 42 U.S.C. § 1983.

1.5 This court has subject matter jurisdiction over Block's state law claims pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367. Block is entitled to sue for damages under state law causes of action.

1.6 Plaintiff is entitled to relief under the Americans with Disabilities Act, 42 U.S.C. § 1201 et seq. ("ADA");

1.7 Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or

Complaint for Damages Page **6** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

omissions giving rise to Plaintiff's claims occurred in this district.

1.8 Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

1.9 Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.  Plaintiff's claim for nominal damages are authorized by 42 U.S.C. § 1983.

1.10 This Court is authorized to grant Block's prayer for relief regarding costs, including reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

1.11 Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## II.  PARTIES

2.0 **PLAINTIFF BLOCK:**  The Plaintiff, Anne Block, is a single woman who is competent to bring this action.  She resides within the City of Gold Bar, is a citizen, author, journalist, and is a civil rights activist.  She has exercised speech and petition rights secured to her by the First and Fourteenth Amendments to the United States Constitution.  For exercising her constitutional rights the Defendants conducted a campaign of prohibited retribution and retaliation, individually and collectively.

2.1 **DEFENDANT WASHINGTON STATE BAR ASSOCIATION:** Defendant Washington State Bar Association ("WSBA") is a Washington agency, whose officials and employees, as a matter of policy, custom and usage of the WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights.  Washington State Bar Association is a RICO defendant.

Complaint for Damages Page **7** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

2.2 **DEFENDANT LINDA EIDE**: Defendant Linda Eide ("Eide") is an employee of Washington State Bar Association, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Linda Eide conspired with others to retaliate against the Plaintiff and acted outside her official capacity as a prosecutor. She is a RICO defendant.

2.3 **DEFENDANT LIN O'DELL:** Defendant Lin O'Dell is an agent of defendant WSBA, who as a matter of policy, custom and usage, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff her exercising her constitutional and statutory rights.  Lin O'Dell conspired with others to retaliate against the Plaintiff and acted outside her official capacity as a prosecutor. She is a RICO defendant.

2.4 **DEFENDANT JULIE SHANKLAND**: is an employee of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Julie Shankland conspired with others to retaliate against the Plaintiff and acted outside her official capacity as liaison. She is a RICO defendant.

2.5 **DEFENDANT STEPHANIE BLOOMFIELD**: Defendant Stephanie Bloomfield is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure

Complaint for Damages Page **8** of **65**

Plaintiff. Stephanie Bloomfield conspired with others to retaliate against the Plaintiff and acted outside her official capacity as a prosecutor. She is a RICO defendant.

**2.6 DEFENDANT JENNIFER DREMOUSIS**: Defendant Jennifer Dremousis is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Jennifer Dremousis conspired with others to retaliate against the Plaintiff and acted outside her authority. She is RICO defendant.

**2.7 DEFENDANT NADINE SCOTT**: Defendant Nadine Scott is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights Nadine Scott is RICO defendant.

**2.8 DEFENDANT JOSEPH NAPPI JR.** Defendant Joseph Nappi Jr. is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with the other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Joseph Nappi Jr. conspired with other named defendants to retaliate against the Plaintiff and acted outside his authority He is a RICO defendant.

**2.9 DEFENDANT RONALD SCHAPPS:** Defendant Ronald Schapps is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

exercising her constitutional and statutory rights. Ronald Schapps conspired with others to retaliate against the Plaintiff and acted outside authority He is a RICO defendant

2.10 **DEFENDANT WILLIAM MCGILLIN:** Defendant William McGillin is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. William McGillin conspired with others to retaliate against the Plaintiff and acted outside his authority. He is a RICO defendant.

2.11 **DEFENDANT ANDREW O. CARRINGTON:**  Defendant Andrew O. Carrington is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Andrew O. Carrington conspired with others to retaliate against the Plaintiff and acted outside his authority. He is a RICO defendant.

2.12 **DEFENDANT ALISON SATO:** Defendant Alison Sato is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Alison Sato conspired with others to retaliate against Plaintiff. and acted outside her authority. She is a RICO defendant.

2.13 **DEFENDANT KATRHYN BERGER:** Defendant Kathryn Berger is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in

Complaint for Damages Page **10** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

1   agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for

2   exercising her constitutional and statutory rights. Kathryn Berger conspired with others to retaliate

3   against Plaintiff and acted outside her authority. She acted outside her authority. She is a RICO

4   defendant.

5       **2.14 DEFENDANT MARCIA LYNN DAMEROW FISCHER:** Defendant Marcia Lynn

6   Damerow Fischer is an agent of defendant WSBA, who as a matter of policy, custom and usage of

7   defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated

8   collectively and in concert and in agreement with other named defendants against the Plaintiff to

9   wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Marcia Damerow

10  Fischer conspired with others to retaliate against Plaintiff and acted outside her authority.   She is a

11  RICO defendant.

12      **2.15 DEFENDANT TODD STARTZEL:**  Defendant Todd R. Startzel is an agent of defendant

13  WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power

14  conferred upon them by the State of Washington, retaliated collectively and in concert and in

15  agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for

16  exercising her constitutional and statutory rights. Todd R. Startzel conspired with others to retaliate

17  against Plaintiff and acted outside his authority.  Todd R. Startzel is a RICO defendant.

18

19      **2.16 DEFENDANT MARC SILVERMAN:**  Defendant Marc Silverman is an agent of

20  defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the

21  power conferred upon them by the State of Washington, retaliated collectively and in concert and in

22  agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for

23  exercising her constitutional and statutory rights. Marc Silverman conspired with others to retaliate

24  against Plaintiff and acted outside his authority. Marc Silverman is a RICO defendant.

25

Complaint for Damages Page **11** of **65**

2.17 **DEFENDANT KEITH MASON BLACK:** Defendant Keith Mason Black is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Keith Mason Black  conspired with others to retaliate against Plaintiff and acted outside his authority. Keith Mason Black is a RICO defendant.

2.18 **DEFENDANT MICHAEL JON MYERS:** Defendant Michael Jon Myers is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Michael Jon Myers conspired with others to retaliate against Plaintiff and acted outside his authority.  He acted outside his authority. Michael Jon Myers is a RICO defendant.

2.19 **DEFENDANT MICHELE NINA CARNEY:** Defendant Michele Nina Carney is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Michele Nina Carney conspired with others to retaliate against Plaintiff and acted outside her authority.   Michele Nina Carney is a RICO defendant.

2.20 **SARA ARDEEN:**   Defendant Sara Ardeen is a volunteer agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Sara Ardeen conspired with others to retaliate against Plaintiff and acted outside her authority. Sara Ardeen is a RICO defendant.

2.21 **DEFENDANT KEVIN BANK:** Defendant Kevin Bank is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights.  Kevin Bank conspired with others to retaliate against Plaintiff and acted outside his authority. Kevin Bank is a RICO defendant.

2.22 **DEFENDANT DOUG ENDE:** Defendant Doug Ende is an agent of defendant WSBA, who as a matter of policy, custom and usage of defendant WSBA, and with the power conferred upon them by the State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. Doug Ende conspired with others to retaliate against Plaintiff and acted outside his authority.  Doug Ende is a RICO defendant.

2.23 **DEFENDANT MARK PLIVILECH:** Defendant Mark Plivilech is an employee or agent of defendant of Lin O'Dell, and reportedly the husband of defendant Lin O'Dell.  Mark Plivilech retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff.  Mark Plivilech conspired with others to retaliate against Plaintiff. Mark Plivilech is a RICO defendant.

2.24 **DEFENDANT CITY OF DUVALL:** Defendant is a Washington State City and Municipal Corporation whose officials and employees, as a matter of policy, custom and usage of the City, and with the power conferred upon them by King County, retaliated collectively and in concert and in

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her rights. The City of Duvall conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. The City of Duvall is not a RICO defendant.

2.25 **DEFENDANT LORI BATIOT:** is a police officer for Defendant City of Duvall, who acted and lives within the geographical and jurisdictional boundaries of this court. She is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising those rights. Lori Batiot conspired with other named defendants to retaliate against Plaintiff. She is a RICO defendant.

2.26 **DEFENDANT SANDRA SULLIVAN** (nee Meadowcraft): Sandra Sullivan is a special prosecutor employed by Defendant City of Duvall and its law firm Kenyon Disend, who acted and lives within the geographical and jurisdictional boundaries of this court. She is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising her constitutional and statutory rights. Sandra Sullivan conspired with other named defendants to retaliate against the Plaintiff and acted outside her official capacity as a prosecutor. She is a RICO defendant.

2.27 **DEFENDANT KING COUNTY**: Defendant King County is a Washington State County and Municipal Government whose officials and employees, as a matter of policy, custom and usage of the County, and with the power conferred upon them by State of Washington, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her rights. King County conspired with others to retaliate

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

against Plaintiff for exercising her constitutional and statutory rights. King County is not a RICO defendant.

2.28 **DEFENDANT CARY COBLANTZ:** Defendant Cary Coblantz was at material times a county employee with Defendant King County assigned to the City of Shoreline, who acted and lives within the geographical and jurisdictional boundaries of this court. He is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising her constitutional and statutory rights. Cary Coblantz conspired with other named defendants to retaliate against the Plaintiff. He is a RICO defendant.

2.29 **DEFENDANT PORT OF SEATTLE**: Defendant Port of Seattle is a Washington State Port and Municipal Corporation whose officials and employees, as a matter of policy, custom and usage of the Port and with the power conferred upon them by King County, retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff for exercising her rights.   The Port of Seattle conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. The Port of Seattle is not a RICO defendant.

2.30 **DEFENDANT JAMES TUTTLE**: Defendant James Tuttle is an investigator employee for defendant Port of Seattle internal affairs unit, who acted and lives within the geographical and jurisdictional boundaries of this court. He is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights. James Tuttle conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. He is not RICO defendant.

Complaint for Damages Page **15** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

2.31 **DEFENDANT SEAN GILLEBO**:  Defendant Sean Gillebo is a police officer for defendant Port of Seattle, who acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights.  Sean Gillebo conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. He is not a RICO defendant.

2.32 **DEFENDANT KALI MATUSKA:** Defendant Kali Matuska is a police officer for defendant Port of Seattle, who acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights.  Kali Matuska conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. She is not a RICO defendant.

2.33 **DEFENDANT JULIE TANGA:** Defendant Julie Tanga is a police officer for defendant Port of Seattle, who acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights.  Julie Tanga conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. She is not a RICO defendant.

2.35 **DEFENDANT LINDA LOEN**:  Defendant Linda Loen, who acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

concert and in agreement with other persons, acted outside color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against her for exercising those rights. Linda Loen conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. She is a RICO defendant.

2.36 **DEFENDANT JOE BEAVERS** is a resident of City of Gold Bar, who acted and lives within the geographical and jurisdictional boundaries of this court. He is a person who, individually, and in concert and in agreement with other persons who acted under color of law as the public records officer to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against her for exercising those rights. Joe Beavers conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. He is a RICO defendant.

2.37 **DEFENDANT CRYSTAL HILL PENNINGTON:** Defendant Crystal Hill Pennington (nee Berg) ("Hill Pennington") acted and lives within the geographical and jurisdictional boundaries of this court. She is a person who, individually, and in concert and in agreement with other persons, to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against her for exercising those rights. Crystal Hill Pennington (nee Berg) is currently the wife of Defendant John Pennington. Crystal Hill Pennington (nee Berg) conspired with others to retaliate against the Plaintiff her constitutional and statutory rights. Crystal Hill Pennington (nee Berg) is a RICO defendant.

2.38 **SKY VALLEY MEDIA GROUP, LLC**: Defendant Sky Valley Media Group, LLC or aka or dba or commonly known as the "Sky Valley Chronicle", was at all material times a Washington Limited Liability Company whose officials and employees, as a matter of policy, custom and usage, retaliated collectively and in concert and in agreement with other named defendants against the

Plaintiff to wrongfully injure Plaintiff for exercising her constitutional and statutory rights. The Sky Valley Media Group, LLC is a RICO defendant.

2.39 **DEFENDANT RON FEJFAR:** Defendant Ron Fejfar was at all material times the agent of Defendant Sky Valley Media Group, LLC. He acted and lives within the geographical and jurisdictional boundaries of this court. He, in concert and in agreement with other named defendants, acted under color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising those rights. Ron Fejfar conspired with other named defendants to retaliate against Plaintiff for exercising her constitutional and statutory rights. He is a RICO defendant.

2.40 **DEFENDANT SNOHOMISH COUNTY**: Defendant Snohomish County is a Washington State County and Municipal Government whose officials and employees, as a matter of policy, custom and usage of the County, and with the power conferred upon them by State of Washington , retaliated collectively and in concert and in agreement with other named defendants against the Plaintiff to wrongfully injure Plaintiff. Snohomish County conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. Snohomish County is not a RICO defendant.

2.41 **DEFENDANT MARK ROE:** Defendant Mark Roe was at all material times a prosecutor for defendant Snohomish County acting as an investigator and acted outside color of the law. He acted and lives within the geographical and jurisdictional boundaries of this court. He is a person who, individually, and in concert and in agreement with other persons, acted outside color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising those rights. Mark Roe conspired with others to retaliate against the Plaintiff for exercising her constitutional and statutory rights. Mark Roe is a RICO defendant.

Complaint for Damages Page **18** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA 98272

2.42 **DEFENDANT JOHN PENNINGTON:**   Defendant John Pennington is the Director of the Snohomish County Department of Emergency Management, who acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually, and in concert and in agreement with other persons, acted outside color of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against her for exercising those rights. He conspired with others to injure the Plaintiff.  Pennington conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights. He is currently the husband of Defendant Crystal Pennington and they constitute a marital community under the laws of the State of Washington.   Pennington is a RICO defendant.

2.43 **DEFENDANT SARA DI VITTORIO:** Defendant Sara Di Vittorio was at all material times a prosecutor for defendant Snohomish County. She acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights.  Sara Di Vittorio conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. Di Vittorio is a RICO defendant.

2.44 **DEFENDANT BRIAN LEWIS:**  Defendant Brian Lewis was at all material times the employee and public records officer for Snohomish County.  He acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually, and in concert and agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights.  Brian Lewis conspired with other named defendants to retaliate against Plaintiff for exercising her constitutional and statutory rights.  Lewis is a RICO defendant.

Complaint for Damages Page **19** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

2.45 **DEFENDANT SEAN REAY:** Defendant Sean Reay was at all material times a prosecutor for defendant Snohomish County acting as an investigator. He acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually and in concert and in agreement with other persons, acted outside color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights. He acted outside his official capacity as prosecutor. Sean Reay conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights. He acted outside his official capacity as prosecutor with defendant Snohomish County. Sean Reay is a RICO defendant.

2.46 **DEFENDANT SETH FINE:** Defendant Seth Fine was at all material times a prosecutor for defendant Snohomish County and WSBA, acting as an investigator. He acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually and in concert and in agreement with other persons, acted under color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights. Seth Fine conspired with others to retaliate against the Plaintiff for exercising her constitutional and statutory rights. He acted outside His official capacity as prosecutor with defendant Snohomish County. Seth Fine is a RICO defendant.

2.47 **DEFENDANT MARGARET KING:** Defendant Margaret King was employed by Kenyon Disend, a contractor for City of Gold Bar, from April 2010 through the end of December 2012, acting as investigator;  and was employed as a prosecutor for defendant Snohomish County from January 2013 to the end of 2013, acting as investigator.  King is a resident of King County, who acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in concert and in agreement with other named defendants, acted outside color

Complaint for Damages Page **20** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

of law to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising those rights.  King conspired with other named defendants to retaliate against Plaintiff and injure Plaintiff for exercising her constitutional and statutory rights. She acted outside her official capacity as attorney for the City of Gold Bar, and she acted outside her official capacity as prosecutor for defendant Snohomish County. She is a RICO defendant.

2.48 **DEFENDANT G. GEOFFREY GIBBS:** Defendant Geoffrey Gibbs was at all material times a Disciplinary Board member, and/or Board of Governors member, and employee or agent for Defendant WSBA. He acted and lives within the geographical and jurisdictional boundaries of this court. He is a person who, individually and in concert and in agreement with other named defendants, acted to deprive Plaintiff of rights guaranteed by the United States Constitution by retaliating against Plaintiff for exercising those rights.  Gibbs conspired with other named defendants to retaliate against the Plaintiff for exercising her constitutional and statutory rights.  Gibbs acted outside his authority. Gibbs is a RICO defendant.

<u>NON- PARTIES POTENTIAL DEFENDANTS TO BE NAMED LATER</u>

2.49 **SCOTT NORTH:** Defendant Scott North was at all material times a resident of Snohomish County. He acted and lives within the geographical and jurisdictional boundaries of this court.  He is a person who, individually, and in concert and agreement with named defendants, acted to injure Plaintiff for exercising her constitutional and statutory rights. He is potentially a RICO defendant.

2.50 **DENISE BEASTON:** Denise Beaston, an employee with the City of Gold Bar, acted and lives within the geographical and jurisdictional boundaries of this court.  She is a person who, individually, and in concert and agreement with other persons, acted under and outside color of law to deprive Plaintiff of rights guaranteed by the United States constitution by retaliating against her

Complaint for Damages Page **21** of **65**

for exercising her constitutional and statutory rights. .  She conspired with other named defendants to retaliate against the Plaintiff. She is a potential RICO defendant.

### III.  FACTUAL ALLEGATIONS

3.1  All federal judges in Washington have an inherent conflict of interest that prevent them hearing this case. As members of the Washington State Bar Association, they become liable for its wrongdoing, and therefore are indirect defendants in the cases.  The Ninth Circuit has already ruled in Marshall v. WSBA, Pope v. WSBA, and Scannell v. WSBA, that this conflict requires disqualification.

3.2  Plaintiff Block is an investigative journalist, a civil rights advocate, and a citizen of the City of Gold Bar, located in County of Snohomish.  Plaintiff is the co-owner of an online political blog called the "Gold Bar Reporter," which reports on government and government officials in Snohomish County and the City of Gold Bar.  As early as 2008 and continuing to the present day, the Plaintiff learned of misfeasance, malfeasance, and corruption within city and county government. Since 2013, Plaintiff actively investigates and reports on corruption within the Washington State Bar Association (WSBA). Plaintiff has attempted to exercise her rights guaranteed by the speech and petition provisions of the First Amendment to the United States Constitution to investigate and report on the ongoing activities (many criminal) of county and city officials up to the date of filing this complaint.

3.3  Block is also a former Washington State attorney harassed by defendants out of the practice of law. Block asserts that the individually named defendants have, in bad faith, conspired to deprive her of her vested right to practice law through a number of acts which led her to resignation from the bar.  Additionally, the individual defendants have conspired to form an enterprise with the purpose of dominating the WSBA and its disciplinary system so as to allow prosecutors, defense

Complaint for Damages Page **22** of **65**

attorneys, practitioners' at large firms, and non-minority attorneys to practice unethically and evade accountability for their misconduct.  The conspiracy will hereinafter be referred to as "the enterprise."

3.4   The enterprise has, as one of its goals, to dominate the Washington State Bar Association by punishing those who oppose or seek to expose the illegal goals of the enterprise.  It does this through extortion, by harassing, bribing, threats, bullying, and punishing its enemies with disciplinary actions "to send a message" and to punish those members that oppose their criminal activities and exercise their constitutional and statutory rights.

3.5  In December 2008, Plaintiff a citizen of Gold Bar, Washington, located in Snohomish County, requested records relating to defendant Gold Bar's Mayor Crystal Hill not reporting an act of domestic terrorism by a former water employee. This request was made after Plaintiff received a phone call from Gold Bar Council Member, Dorothy Croshaw informing Plaintiff that "the City had just made a secret deal to pay off Karl Marjerle in exchange for his silence".  Public records obtained from Snohomish County in late 2008 establish that Marjerle sabotaged the City's water system and illegally used the City's petro card for his personal use.  The City failed report Marjerle's crimes in accordance with their duties to the public: defendants Hill, Beavers, and Croshaw breached their public duties, violated their oaths of office, conspired, and agreed to cover up Marjerle's crimes in exchange for the following:  assistance obtaining a new job with the City of Bellevue, unfettered access to unemployment benefits, and $10, 0000.00. One motive for this bribe was that Marjerle knew that Crystal Hill, aka Crystal Berg, had plead guilty to bank fraud in 2005 while she was a sitting Gold Bar Council member and committed perjury in 2005 and 2007 by lying on her Washington Public Disclosure PDC  F-1 form. In December 2008, Block exercised her statutory rights pursuant to RCW 42.56 (Public Records Act "PRA") asking the City of Gold Bar for all

Complaint for Damages Page 23 of 65

records relating Karl Marjerle. Instead of releasing public records in compliance with the PRA, the City of Gold Bar injured the public records by removing them from the city offices and/or the public official that held them, concealing them, and transferring the records to a private party, the insurance company, American Association for Washington Cities (AWC) representative Eileen Lawrence. RCW 40.16.010 states: "Every person who shall willfully and unlawfully remove, alter, mutilate, destroy, conceal, or obliviate a record, map, book, paper, document, or other thing filed or deposited in a public office, or with a public officer by authority of law, is guilty of a class C felony and shall be punished by imprisonment in a state correctional facility for not more than 5 years or by a fine of not more than one thousand dollars or by both.")  The purpose of transferring the records according council member Jay Prueher was because AWC instructed the city not to turn over the public records because the city would be sued again due to what was contained in the records. As of today, the City of Gold Bar, Snohomish County, and AWC continue to conceal public records. The cover up, assistance with Marjerle obtaining new employment, and unemployment benefits under the circumstances, constituted bribery and extortion, thus predicate acts under RICO.

3.5  In October 2009, Crystal Hill Pennington, then acting Mayor of Gold Bar, did hold a meeting on a non-regularly scheduled date, at a non-principal location, where notice was not given by posting notice prominently at the principal location, nor by giving notice to the newspaper, radio, or television station, nor was it posted on the City's website pursuant to RCW42.30.080 (Special Meetings). Further, there were no minutes recorded at the special meeting, but were created later following a public records request and lawsuit in late February 2009.

3.6  The members of the 2009 Gold Bar Planning Commission were regular attendees of the City Council meetings. Both the City Council meetings and the Planning Commission

Complaint for Damages Page 24 of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

meetings were customarily held at the principal location in City Hall on opposite Tuesdays. On the day of this Special Meeting, the Planning Commission was meeting at the principal location. Several members of the planning commission were unaware of the special meeting and did not see any notice of special meeting posted at the principal location which they then occupied. Plaintiff asserts this "special meeting" was in fact a secret meeting in violation of OPMA intended to evade public knowledge and scrutiny. It follows then that if regular attendees (planning commission members) did not see notice, the general public was also unaware of the special meeting. In December 2008 after being informed by council member Dorothy Croshaw of the Marjele settlement, Plaintiff requested all records relating to Karl Marjerle, which should have included the special meeting notice and meeting minutes. Only after Plaintiff hired an open government attorney and filed suit did the city provide Plaintiff with a notice of special meeting and minutes, which Plaintiff asserts were created after the special meeting took place and after Plaintiff requested records in native format with metadata. The meeting minutes have been provided in native format with metadata, only paper format. The arrangement agreed upon in the secret meeting, under the circumstances constituted bribery and extortion, thus predicate acts under RICO.

3.7 From public records, Plaintiff discovered that on July 8, 2008 the City of Gold Bar terminated Karl Marjerle for gross misconduct, sabotaging the city's wells and unlawful use of the city petro card. Mr. Marjerle was previously placed on paid administrative leave pending an investigation for his use of the city's petro card in late June 2008. After Marjele was informed he was being placed on administrative leave, he left city hall and went to wells #3 and #4 and shut them down which he admitted in a Loudermill hearing. This hearing was recorded by Marjerle and conducted by Crystal Hill. Marjerle subsequently applied for and was denied unemployment

Complaint for Damages Page 25 of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

benefits due to his gross misconduct. Marjerle retained counsel to fight for unemployment benefits, Brian Dale, and employee with Snohomish County's largest legal consultant, Anderson Hunter.  Marjerle never claimed he was terminated without cause, nor did he ever file or threaten to file a lawsuit. Marjerle did sign an at-will employment acknowledgment from the city of Gold Bar upon employment. In a September 2008 letter, Marjerle's attorney requested that the city not participate in Marjerle's unemployment hearing.    According to council member Dorothy Croshaw; in October 2008, the secret Gold Bar meeting occurred to arrange Marjerle's payoff in exchange for his silence. In late 2008 Marjerle had an unemployment hearing contesting the denial of benefits; the city abdicated their duty and failed to participate and subsequently Marjerle received unemployment benefits despite being terminated for gross misconduct; in January 2009, he was given assistance obtaining new employment Crystal Hill Pennington called the city of Bellevue and gave a "positive reference; Marjerle additionally received $10,000. At the time, G. Geoffrey Gibbs's law firm, representing Marjerle, had one of the largest contracts with Snohomish County, and Seth Fine and Sean Reay were in charge of criminal prosecution unit in Snohomish County.  Marjerle was not prosecuted for his crimes. Telephone retrieved from Snohomish County establishes that Reay and Gibbs communicate on a regular basis. There was no legitimate purpose for the benefits provided to Marjerle. There was no legitimate reason not pursue criminal charges against Marjerle. Marjerle in late summer 2014 told PSI Investigators that he was under an agreement not to talk about the terms of the settlement agreement.    In September 2013, then Mayor Joe Beavers announced at a city council meeting that the state auditor ordered him, Joe Beavers, to deposit an additional $12,000 + in Karl Marjerle's retirement account. This was six years past Marjerle's termination for cause. Joe

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

Beavers offered no evidence at the meeting of this "order". Neither was their evidence in the state auditor's annual financial audit report to support Joe Beaver's claim. The benefits Marjerle received he was not entitled to. The agreement and authorization for payment of these funds to Marjerle was misappropriation of public funds (RCW 42.20.070(1)). The agreement and payment constitutes bribery, extortion thus a predicate act under RICO.

3.8 Since August 2009, Plaintiff maintains and reports on local news inside Snohomish County on a BlogSpot called "the Gold Bar Reporter" which is co-owned with another Gold Bar resident, Susan Forbes. As early as 2008 and continuing to the present day, Plaintiff learned of misfeasance, malfeasance, and corruption within city and county government. Plaintiff has attempted to exercise her rights, as guaranteed by the speech and petition provisions of the First Amendment of the United States Constitution, by reporting on the activities of local city and county officials via her co-owned blog the Gold Bar Reporter.

3.9 The City of Gold Bar, Snohomish County, and Washington State Bar Association channels its citizen's First Amendment speech and petition rights through a system of formal written public records requests and responses under Washington State's Public Records Act (RCW 42.56), as does Snohomish County and the Washington State Bar. Plaintiff as a news reporter requests, gathers, disseminates and reports on news in Washington State as defined under RCW 5.68.010. Plaintiff has been labeled as news reporter by high ranking members of open government, and in September 2015 honored for her contributions in reporting.

3.7 In early 2009, after Plaintiff filed suit against the City of Gold Bar seeking access to public records, Seth Fine, acting outside his official capacity as a prosecutor, and in derogation of his responsibility to avoid ex parte contact as a disciplinary board member stole from the WSBA the Plaintiff's WSBA license application and investigative file. He then disseminated Plaintiff's WSBA

Complaint for Damages Page **27** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

license application and investigative file to the City of Gold Bar's law firm, Weed, Graafstra, and Benson, Inc. The file was then further disseminated to the City of Gold Bar employees and its governing body. Fine's actions amounted to those of an investigator not a prosecutor or a disciplinary board member.   Fine's actions violated Plaintiff's civil rights and served no governmental purpose, and amounted to extortion, thus a predicate act under RICO. 3.11 In late November 2013, Eide, acting on behalf of Defendant WSBA issued an illegal subpoena for Plaintiff's Gold Bar Reporter news files collected for and in preparation for publication on several political appointees from Snohomish County. None of the files collected, nor were any of the files collected from a potential or past or current client. The files Plaintiff collected were retrieved under the PRA, and many were given to Plaintiff by long-term career county employees. The WSBA's subpoena and attempts to depose and retrieve documents from Plaintiff solely on First Amendment news reporting activity and did not involve a client, only a political appointee, John E. Pennington, and his current wife, the former Mayor of Gold Bar, Crystal Hill. Without legal authority to issue such subpoenas in violation Plaintiff's constitutional and statutory rights, this constituted extortion and was thus a predicate act under RICO. This also violated Plaintiff's civil rights and served no governmental purpose. Plaintiff learned in late 2013 that the WSBA's complainant and political appointee John E. Pennington was a personal friend to lead counsel Linda Eide.

3.8   Plaintiff published over fifty articles about John Pennington's incompetence,  lack of credentials, and criminal history of assaulting women, to head the Department of Emergency Management for Snohomish County, and had requested access to his records starting as early as December 2008 republishing an article written by another political Chad Shue regarding Pennington's online diploma from California Coastal College, an online college the U.S. government reported  sold diplomas at a flat rate; and another online diploma mill college U.S. Senator Tom

Harkin said was not providing education on PBS's Frontline, Education Inc..

See http://www.washblog.com/story/2006/6/18/112517/706

See also, http://www.pbs.org/wgbh/pages/frontline/educating-sergeant-pantzke/tom-harkin/

3.9 Public records Plaintiff reviewed since 2009 established that John Pennington made several attempts to use his political influence with the Snohomish County Sheriff's Office since May 2009 to have Plaintiff charged with "cyber-stalking." Pennington's criminal complaints only complained about Plaintiff's constitutional and statutory rights.

3.10 In March 2009, Defendant Hill Pennington, Pennington, Beavers, and Snohomish County to illegally access and retrieve Block's mental health history. Though they retrieved history for some other person, they falsely characterized it as hers and disseminated inside public records.

3.11 Additional public records documented that Pennington criminally harassed Plaintiff on his Sky Valley Chronicle Facebook (SVC) and blog spots. Public payroll records confirm that many of Pennington's posts on the SVC were made while on the County's payroll; and one threat to physically harm Plaintiff in December 2012 was made while being paid by FEMA in Paris Texas.

3.12 Plaintiff's investigative pieces included posting police reports documenting that Hill Pennington violently assaulted a six year child in her care leaving extensive bruises on the child's arms; Hill Pennington's secreting of public records involving Hill Pennington and Pennington passing around mug shots; Pennington's racist communication about President Obama; issues relating to John Pennington's involvement in a the rape of a 5 year child from Cowlitz County; and Kenyon Disend's Special Prosecutor Sandra  Sullivan ( nee Meadowcraft) assisting Pennington in quashing criminal assault charges of a third trimester pregnant Duvall City Council member, Ann Laughlin, in May 2009. Kenyon Disend, Michael Kenyon, Sandra Sullivan, City of Duvall, continue

Complaint for Damages Page 29 of 65

to withhold records relating to Kenyon Disend's assisting Pennington in quashing criminal charges. Snohomish County Prosecutor Mark Roe failed to prosecute Hill Pennington for child abuse, instead, Roe emailed the child protective services (CPS) officer directing her to not pursue criminal charges. Roe's actions violated Plaintiff's civil rights and served no governmental purpose.  Kenyon Disend and its employees Sullivan and Kenyon's assisting Pennington with quashing criminal assault charges in 2009.

3.13 In June 2010, Gold Bar's clerk Penny Brenton was ordered by Beavers to write WSBA complaints against Plaintiff which Dorothy Croshaw falsely certified that she had knowledge of.  Brenton a paid Gold Bar contractor at the time also stated that Dorothy Croshaw paid her to write the WSBA complaints. Source public records from Gold Bar.

3.14 In June 2010, Pennington wrote to Gold Bar's police chief Robert Martin asking him to charge Plaintiff with "cyber-stalking" pointing to a response one of the Gold Bar Reporters wrote to one its readers stating that Gold Bar Reporters should be afraid of John Pennington, which triggered a response that the Gold Bar Reporters were insured by Smith Wesson. Martin's superiors dismissed the complaint as a prior restraint on Free Speech. Pennington never filed an official criminal complaint only sent an email to Gold Bar Deputy Sheriff's Officers trying to misuse his political influence to have Plaintiff charged with a crime.

3.15 In April 2011, Beavers assisted Kenyon Disend in obtaining the contract with the City of Gold Bar for legal services. Margaret King was assigned to represent the City of Gold Bar.

3.16 On month following Kenyon Disend's contract with Gold Bar, Gold Bar's clerk Penny Brenton was ordered by then Mayor Beavers to write a WSBA complaint for former council member Dorothy Croshaw. Croshaw filed a WSBA complaint against Plaintiff in June 2010.  Public records confirm Margaret King's involvement in Croshaw complaint filed against Plaintiff solely based on

Complaint for Damages Page **30** of 65

Plaintiff's Gold Bar Reporter publications. The City admitted in a public inspection request that it was collecting Gold Bar Reporter files. In late 2010, the WSBA dismissed King, Croshaw, Brenton and Beavers complaints as restraints on Plaintiff's free speech rights that have nothing to do with the practice of law.

    3.17 In late 2010 after receiving information that Beavers was stealing money from the City's water fund, Plaintiff filed a Recall Petition against Beavers. In early 2011, King without first seeking permission from the Gold Bar City Council filed a Motion for Sanctions against Plaintiff for exercising her constitutional right to file a Recall. Plaintiff objected noting that RCW and Washington State's Constitution only allows a City to defend a Recall Petition and provides no legal means to file a motion for sanction with tax payer monies on Recall Petitions. Snohomish County Superior Court Judge Krese agreed with Plaintiff dismissing King's illegal motion for sanctions.

    3.18 In late 2011, Gold Bar council member Chuck Lie (Lie) witnessed the City's strategy inside executive meetings as a three prong approach against Plaintiff: "out money you, and when that didn't work, they moved to defame you, and when that didn't work, they moved to discredit you." Lie also witnessed that the City of Gold Bar used its Executive Meetings for non-permissible purposes (RCW limits what an agency can discuss in executive session) and mainly talked about retaliating against the Gold Bar Reporter by shutting down the Gold Bar Reporters online news blog. Lie further witnessed council members stating that any settlement agreement with Plaintiff would include a demand that the Gold Bar Reporter be taken down and Beavers. Lie further witnessed Beavers stating "She (Plaintiff) took Karl Marjele's license so we're going get hers!"  Lie is the one who complained to the Department of Health about Marjerle lying on his application file with Bellevue which resulted in his termination, not Plaintiff.

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

3.19  In late 2011, Gold Bar council member Chuck Lie stated "Margaret King is coming after you!"  Within one week, Defendant, Margaret King, City of Gold Bar attorney, filed a Motion for Sanctions on a Recall Petition in violation of Washington State Recall laws. Recall laws prohibit the filing of Sanctions using taxpayer monies to file a Motion for Sanctions on Recall Petitions. King's actions violated Plaintiff's civil rights and served no governmental purpose. King's actions amount to extortion, thus a predicate act under RICO.

3.20  In late 2011, King, after receiving Plaintiff's Notice of Unavailability on a public records lawsuit filed against the City of Gold Bar,  filed an ex parte Motion, without notifying Plaintiff.  Plaintiff was out of the state visiting her terminally ill father. King filed her motion with Snohomish County Superior Court. The motion was then heard not by a Superior Court Judge but by personal friend to Michael Kenyon, Mark Roe, Sean Reay, and Seth Fine, defendant G. Geoffrey Gibbs. Gibbs is a commissioner by permanent appointment. Washington State's Public Records Act prohibits a Commissioner from hearing any issues relating to public records. Gibbs's ignored Washington law, and held two ex parte hearings, denying Plaintiff's rights to be notified of such hearings and denying Plaintiff a meaningful opportunity to be heard, in violation of the due process clause under the 14th Amendment. Gibbs did so after receiving Plaintiff's Notice of Unavailability. He further issued sanctions against Plaintiff.  King, Kenyon, and Gibb's actions violated Plaintiff's civil rights and served no governmental purpose. King, Kenyon, and Gibb's actions amount to extortion, thus a predicate act under RICO.

3.21   In January 2012, Margaret King, Crystal Hill Pennington, and Joe Beavers met and conspired to assemble, write, and file the second WSBA complaint against Plaintiff's WSBA license. King, Hill Pennington and Beavers's used city staff, city's public records withheld from the Plaintiff for over three years. In February 2012, Gold Bar's law firm, Kenyon Disend, billed the taxpayers of

Complaint for Damages Page **32** of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

Gold Bar for the WSBA complaint against Plaintiff.

3.22 In late March 2012, Reay telephoned Plaintiff under the guise of having a CR 26 conference as it relates to a public records case. During this telephone conference Reay threatened Plaintiff and her paralegal that if Plaintiff continued to insist on deposing Pennington he would have Plaintiff and her paralegal arrested. By doing so, Reay was not acting as a prosecutor.

3.23   In July 2012, Plaintiff, having received an Order Compelling Snohomish County employees' deposition testimony, deposed Snohomish County's public records officer Diana Rose. Plaintiff, Rose, Reay, Di Vittorio, Gold Bar resident reporter Joan Amenn, and a court reporter were present.   Rose admitted under oath that she physically tampered with county public records, removing them from Snohomish County, delivering them to City of Gold Bar. Once Rose admitted that she committed an "injury to public records", a felony in Washington State, Plaintiff questioned Rose on who ordered her to remove County records.   This prompted Reay to start screaming at Plaintiff to divert attention. Di Vittorio ordered Rose not to answer Plaintiff's questions. Reay and Di Vittorio's actions violated Plaintiff's civil rights and served no governmental purpose.

3.24 In February 2013, the Snohomish County Daily Herald, acting on information provided to them by Plaintiff exposed Snohomish County Executive Officer Kevin Hulten for criminally harassing Plaintiff.  See http://www.heraldnet.com/article/20130214/NEWS01/702149999\

3.25 In late February 2013, Plaintiff sends Snohomish County a litigation hold demanding that the county preserve all record in native format with metadata as it relates to her. Snohomish County Council refers the Hulten investigation to the King County Major Crimes Unit who confirms that the Herald's story was "right on target. " According to King County Major Crimes Unit, Hulten used a "wiping program" in March 2013 to destroy evidence only after receiving Plaintiff's litigation hold. From King County's Major Crimes files from Reardon investigation, public emails between

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

Reardon's executive officers confirmed that Snohomish County Executive Officers were authors on the Sky Valley Chronicle. An online news site which not one person identifies who is writing. In April 2013, Plaintiff receives a news tip from a person alleging to be a Snohomish County insider stating that Pennington and his public records officer Diana Rose (Rose) created a diversion to expose Snohomish County Executive Aaron Reardon's affair with a county social worker named Tamara Dutton. According to the source, this was done because Reardon's affairs were about to become public and Deanna Dawson threatened Reardon that if he exposed her, she would take him down. The Washington State Patrol (WSP) was investigating Reardon for misappropriation of public monies and had interview Dawson about her affair with Reardon.  Dawson denied she had an affair with Reardon even though public records from Washington State's Public Disclosure Commission (PDC) documented Dawson was traveling with Reardon in France.  In late April 2013,  Plaintiff published " The Stoning on Tamara Dutton " in April 2013 alleging for the first time that Pennington and Rose assisted Dawson with covering up her extra marital affair with Snohomish County Executive Reardon, throwing Dutton under the bus to protect Dawson.  Plaintiff learned in the summer of 2013 that Rose was a very close friend to Dawson.

3.26 In May 2013, Plaintiff's private investigators provided Plaintiff with a 30 plus year background search on Pennington. This investigation concluded that Pennington was kicked out of a church in San Diego California for molesting two boys during a church camping trip, he is the only suspect in the rape of a five year old girl from Cowlitz County Washington, picture documents he is molesting his step daughter, and a witness, Ann Laughlin declared under oath that she caught Pennington taking naked showers with his genitalia hanging in the face of a six year old girl (declaration filed in King County Court).  As a result, Plaintiff published a story about how Snohomish County DEM John Pennington was kicked out of church after two boys made sexual

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

abuse allegations against him. Instead of filing a defamation suit, Pennington filed a series of WSBA complaints with his personal friend and lead WSBA counsel Eide stating that Plaintiff's publications were "beyond the pale."   A careful review of past Gold Bar council meetings confirmed that the phrase "beyond the pale" was used by Crystal Hill on a regular basis. Block answered Pennington's complaint affirming under oath that she contacted Pennington for comment prior to publishing any of her stories, and Pennington was a political appointee not a client, thus Plaintiff 's answer to the WSBA was that  it had no jurisdiction in this matter. Plaintiff further asserted <u>New York Times v Sullivan</u>, and suggested to the WSBA that if Pennington believes that we've defamed him, then he should file a defamation suit. Public records confirm that Pennington sued government resources inside Snohomish County for the WSBA complaint.

       3.27  In   August 2013, Gold Bar Reporter's co-owner Susan Forbes contacted the WSBA stating that the Gold Bar Reporter have never sued for defamation, but if the Gold Bar Reporters got their Pennington story wrong we will retract; she left her contact information for Pennington but clearly stated that she will not retract anything until Pennington answers some questions. Pennington never requested a "retraction" and he never responded to Forbes's letter to the Washington State Bar in this matter.

       3.28  In July 2013, Hill Pennington sent Plaintiff a "Tweet" stating "can't wait to go to your disbarment hearing." Plaintiff responded to the WSBA stating that she stands by her articles on Pennington, left the door open for Pennington to contact the Gold Bar Reporters for a retraction, and further asserted her constitutional rights to be left alone in her private affairs that do not involve a client, only a political official who Plaintiff as an investigative journalist has been reporting on for corrupt acts of child and criminal assault since August 2009. The WSBA assigned lead counsel Linda Eide.  Linda Eide is a first relative to Senator Tracey Eide. Tracey Eide and Pennington are

Complaint for Damages Page 35 of 65

personal friends. Public emails from Snohomish County confirmed that a personal relationship exists between Pennington and WSBA Eide. In the middle of September 2013, the SVC published a story asking the general public to file WSBA complaints against Plaintiff.  The SVC also stated that it would be filing its own WSBA complaints.  Pennington is the only person who filed and signed the WSBA complaints. In November 2013, WSBA Eide issued a "subpoena seeking all Gold Bar Reporter files relating to Pennington and Crystal Hill. All property records for a website owned by Plaintiff and all non-clients of Plaintiff '"CrystalHillPennngton" Eide also issued a subpoena for Gold Bar Reporter files and the deposition of Plaintiff in the same. Edie unilaterally scheduled the deposition for December 6, 2015, even after being notified that Plaintiff had been diagnosed with severe diverticulitis, unable to walk, thus disabled.

3.29 Plaintiff sent an email to Eide on December 3, 2013, "objecting" to the WSBA subpoena for records and deposition relating to the same, asserting again that it had no legal right to citing First Amendment, Media Shield (RCW 5.68.010) and in violations of her constitutional rights. Eide ignored Plaintiff's December 3, 2013, objection letter and held an exparte deposition on December 6, 2013, even though ELC 5.5 mandates that once Eide received an objection, she was mandated to suspend the deposition until she could obtain a court order.  In late 2013, Washington State's Legislature under RCW 5.68.010 mandated that 'no agency with subpoena power can issue a subpoena for media files;" and the WSBA Rules of Professional Conduct (RPCs) had no provision to oversee lawyers First Amendment rights or news reporters on issues not relating to the practice of law. Acting without authority of law, Eide unilaterally sent her request to the WSBA Review Committee asking for an investigation in the middle of February 2014.. One day prior to the Review Committee Meeting, Eide sent Plaintiff a Notice asking her if she wanted to submit any evidence. Plaintiff submitted the December 3, 2013 notifying the WSBA that she objected in violation of RCW

Complaint for Damages Page **36** of 65

5.68.010 and her First Amendment rights as a news reporter.

3.30 On February 14, 2014, the WSBA Review Committee issued a formal complaint against Plaintiff based solely on Eide's exparte communication. Eide then sent Pennington a copy but not the Plaintiff member at the time. Pennington immediately published it on his Sky Valley Chronicle site. Lie informed Plaintiff that the Sky Valley Chronicle had just posted the Review Committee's formal complaint against Plaintiff. Plaintiff immediately contacted Eide asking why she sent a copy of non-public record to Pennington before sending a WSBA member a copy. As a result, Eide sent a server to Plaintiff house around 9:45 p.m. According to public records retrieved from the WSBA and a witness neighbor, the server intentionally breached the peace. WSBA public records confirmed that the server breached the peace intentionally hoping that someone would call the police. A neighbor who lives directly across the street from Plaintiff witnessed the breach of peace, came over to the WSBA server directly and stated that either he leave or he will remove him. The next day Plaintiff inspected her front door and noticed that the WSBA server caused extensive damage to the wood frame of Plaintiff's front door. Plaintiff's partner repaired the door and placed a metal plate around the wood frame to secure the door.

3.31 March 3, 2014,Defendant O'Dell is appointed by Defendant Nappi. Nappi has an undisclosed conflict of interest because O'Dell routinely refers cases vulnerable adults who she serves as guardian and/or trustee to a firm Nappi works for. She not disclose that an court appointed investigator and special master to assist the superior court in Stevens county has concluded on February 19, 2014 that O'Dell had committed ethical violations and would not account for funds that she had gained control over in her role as a limited guardian of a vulnerable adult, Paula Fowler. The unaccounted for funds were between $3 million and 4 million and remain unaccounted for at the time of filing of this suit. The court eventually found

Complaint for Damages Page 37 of 65

that O'Dell failed her duties as established by statute or standards of practice adopted by the certified professional guardian board and ordered the guardianship ended. Lynn O'Dell refused to resign as guardian and still refuses to account for the funds under her control. In addition public disclosures obtained by Block show that O'Dell has exploited another vulnerable adult Harry Highland, when she paid 15,000 for the house assessed at $208,000.in Spokane County.

3.32  The WSBA has a long history of fixing cases in advance by paying the chief hearing officer $30,000 a year to pre-select judges to ensure conviction. This is the only primary duty that the Chief Hearing Officer has over other hearing officers who are "volunteers". She was chosen for primarily three reasons. First, she owned a construction company that profited from contracts that should have never been allowed because the construction took place on the Oso mudslide site, which caused 47 people to perish. Since Pennington approved the permits, she would be a natural ally of him.

3.33

3.34  Second, she also ran a partnership which allowed her to exploit vulnerable adults as a guardian. On March 22, 2014, the OSO mudslide occurred killing 47 residents. At the time Pennington was on the east coast being paid by Snohomish when he was under contract for FEMA Emergency Institute. He doesn't get back until March 24, 2014 according to public records obtained by Block.

3.35  Finally and most importantly, she was chosen to fix the case against Anne Block in return for the bar not prosecuting bar complaints against her so she could continue to exploit and profit from her unethical actions as a guardian. The exchange of the conviction of Anne Block in exchange for her immunity from her illicit actions as a guardian constitutes bribery and a

Complaint for Damages Page **38** of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

predicate act under RICO.

3.36 At the end of April 2014, Plaintiff notified the WSBA and the Washington State Supreme Court that she would not be renewing her license and would be disassociating with the WSBA.  On May 1, 2014, the Washington State Supreme Court signed her request to dissociate with the WSBA.  Post May 1, 2014, Eide and O'Dell continued to threaten plaintiff via email and mail, attempting to unlawfully assert jurisdiction over Plaintiff's First Amendment protected activities that do not relate to RPC or clients, but only relate to Plaintiff's political news reports on the Gold Bar Reporter.

3.37 In May 2014, after being notified that Plaintiff does not waive personal and subject matter jurisdiction to the WSBA, Plaintiff notified O'Dell and Eide that she would be out of state on business for two months. O'Dell unilaterally set discovery for a three week period during the time that Plaintiff would be out of state. O'Dell and Eide refused to answer a single discovery request issued by Plaintiff.

3.38 In early May 2014, without waiving personal and subject matter jurisdiction, also noting that Plaintiff was no longer a member, Plaintiff agreed to participate in settlement conference with Eide.  The conference amounted to Edie trying to extort Plaintiff's democratic rights, alleging that Plaintiff does not have the legal right to disassociate with the WSBA under the First Amendment. Plaintiff again noted that the WSBA has no jurisdiction over Plaintiff's First Amendment rights to report on Pennington, and now the corruption inside the WSBA.

3.39 In early May 2014, after successfully "disassociating " with the WSBA by having the Washington State Supreme Court sign her suspension order for non-payment of fees and non-compliance of CLEs, Plaintiff finally agreed to speak with Lin O'Dell but at all times without waiving her personal and subject matter jurisdiction. Plaintiff's again noted that she was no longer a

Complaint for Damages Page 39 of 65

WSBA member had disassociated as a result of being criminally harassed by Pennington with the assistance of the WSBA.  This was the first time Plaintiff had any communication with O'Dell. During this telephone conversation, Plaintiff called O'Dell a thief and noted that the Gold Bar Reporter discovered that she was stealing elderly clients' homes.  Plaintiff also told O'Dell to "go pound sand! I'm not a member of your corrupt organization any longer, so don't contact me again!" At the end of June 2014, Eide had exparte communication with Reay trying to quash a legally issued CR45 subpoena Plaintiff issued for Pennington's deposition testimony.  Source is public phones records. RPC prohibits the WSBA Hearing Officer from having exparte contact with the Office of Disciplinary Counsel. Plaintiff filed WSBA complaints against Eide, O'Dell and Reay, and Ronald Schapps without investigating a single allegation dismissed Plaintiff's WSBA complaints in late 2014.

3.40  In late June 2014, Eide and O'Dell again held an exparte telephone call and unilaterally set a hearing date three weeks later without notifying the Plaintiff.  Source is public phones records from the WSBA.  RPC prohibit the WSBA Hearing Officer from having exparte contact with the Office of Disciplinary Counsel.  Eide and O'Dell actions violated and continue to violate Plaintiff's civil rights to be free from retaliation and punish as a result of her news reports.

3.41  At the beginning of July 2014, Plaintiff learned via Hill Pennington, Pennington and Fejfar's Sky Valley Chronicle posts that Eide and O'Dell had set an exparte hearing for July 21, 2014, without notifying the Plaintiff. ELC mandate that Plaintiff have input in scheduling dates. After reading a hearing date had been unilaterally set by O'Dell on the Sky Valley Chronicle, Plaintiff contacted Eide stating that there is no way she can participate in person as she is legally deaf. Plaintiff requested a reasonable accommodation without waiving personal and subject matter jurisdiction, asking for a telephone hearing. The WSBA refused to engage in the interactive process

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

in violation of state and federal laws prohibiting discrimination.  O'Dell and Eide then used her disability as a basis to further discipline of disbarment against Plaintiff.

3.42 On July 21, 2014, Eide, Nappi Jr. and O'Dell held an exparte hearing by muting Plaintiff out of the telephone hearing retaliating against Plaintiff for exercising her First Amendment protected free speech rights, and for exercising her rights secured under state and federal anti-discrimination laws. Eide and O'Dell actions violated and continue to violate Plaintiff's civil rights, disability rights under federal and state anti-discrimination legislation by seeking for discipline for plaintiff's disability that did not allow her to personally participate without a headset.

3.43 In August 2014, while serving on the WSBA Board of Governors, G. Geoffrey Gibbs contacted via email the WSBA Office of Disciplinary Counsel Jean McElroy complaining of Plaintiff's First Amendment news reports on the Gold Bar Reporter as it relates our investigation of Gibbs's links to corruption in Snohomish County. Plaintiff asserted that Gibbs is the reason why Snohomish County yields over 40 % of disbarred lawyers in Washington State.  The Gold Bar Reporters reported that Gibbs had committed fraud upon the Courts, stole land misusing his influence with Snohomish County Superior Court  to steal land from Carolyn Riggs, was the law firm that along with Snohomish County Prosecutors Reay and Fine as prosecutors in charge of Snohomish County's Criminal Prosecution Unit who made an illegal agreement to  quash  criminal charges against Gold Bar's water boy Marjerle in 2008 as a political favor G. Geoffrey Gibb's law firm, Anderson Hunter. Anderson Hunter represented Karl Marjele. Marjele knew that Hill Pennington had falsified her Washington State public disclosure form (F -1) and as a result of her conviction was unfit for public officer.  RPC prohibit exparte contact between any WSBA Board member and an ODC member when there's an active investigation.  When Plaintiff filed a complaint against Gibbs's the WSBA ignored it.

Complaint for Damages Page **41** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

3.44    In September 2014, O'Dell continued to issue wire and mail threats, and used Plaintiff's free speech statements against her by placing those statements (made only after Plaintiff was no longer a member) into her findings of fact to warrant disbarment. O'Dell also placed for the first time in the WSBA record a false statement and finding that Plaintiff lied about Pennington causing him harm. Since there was no such evidence in the WSBA record documenting that Plaintiff lied about Pennington, Plaintiff objected noting that this not only violated Our U.S. Supreme Court's holdings Re the Discipline of *Ruffalo* but also violated Plaintiff's 14th Amendment due process rights to be given notice and meaningful opportunity to respond. Plaintiff stands by every article published, and the WSBA file contains no evidence in support of O'Dell's findings that Plaintiff lied about Pennington.

3.21   In late 2014, Plaintiff learned from Snohomish County public phone records that On May 8, 2014 at 1.29 PM, and at 2:35, and 3:28, Sean Reay made exparte contact with WSBA Disciplinary Counsel WSBA members at 206-733-5926.   Reay is an employee of defendant Snohomish County assigned to prosecute claims brought against the County not monitors WSBA complaints.

3.22   Additional public phone records from Snohomish County also  established that On May 13, 2014, at 1:40 Sean Reay called Kenyon Disend, a city attorney for Gold Bar and for the City of Duvall.

3.23   On May 30, 2014, 1:00 PM Sean Reay called WSBA Linda Eide at 206-733-5902. This exparte contact provided no valid governmental purpose and was solely to conspire to harm Plaintiff solely based on Plaintiff's protected activities.   There was no governmental purpose for a Snohomish County Prosecutor to be calling the WSBA lead counsel Eide or Alison Sato on

Complaint for Damages Page **42** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

Plaintiff's case while using county resources and while on the county's payroll. Reay was acting outside his official duties as Snohomish County prosecutor.

3.24 In June 2014, a blogger from Snohomish County contacted Plaintiff informing her that defendant WSBA Eide was in fact a first relative to Senator Tracy Eide. Senator Tracy Eide is a personal friend to Aaron Reardon and John Pennington.

3.25 In July 2014, the WSBA become subject to sunshine laws of Washington. Plaintiff sent the WSBA a public records request seeking all records relating to who assigned WSBA hearing officers. Plaintiff received email communication between Chief Hearing Officer Joseph Nappi Jr. and Yakima attorney and WSBA hearing officer David Thorner discussing how they would pre-decide cases prior to trial, just as they had inside a training session about the Marjia Starwecski complaints. Two WSBA complaints filed against Starwecski were written by WSBA Board member G. Geoffrey Gibbs, but filed anonymously filed with his colleagues inside the WSBA ODC.

3.26 Plaintiff is a person with documented major life impairment as defined by the Americans with Disabilities Act (ADA), requested a reasonable accommodation for the July 21, 2014 hearing which the WSBA ignored. Plaintiff filed an Equal Employment Opportunity Complaint (EEO) with the Seattle District Office. The EEO issued a right to sue letter, dated on September 25, 2015, and received by Plaintiff' on September 31, 2015.

3.27 In late 2014, Plaintiff filed WSBA complaints against Lin O'Dell, Linda Eide, and Sean Reay for exparte communication in violation of Washington Rules of Professional Conduct (RPA). WSBA assigns Ronald Schapps to investigate Bar complaints Plaintiff filed against

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

O'Dell, Eide and Reay.  Schapps admits in letter that he did not investigate Plaintiff's WSBA complaints.

3.28  In early April 2015, Plaintiff retrieved public records from Snohomish County Dept. of Emergency (DEM) sent from John Pennington during the last week of July 2015, using county resources, disseminated non-government information to a non-government vendor named Steve McLaughlin stating prior to any decision made by O'Dell claiming that Plaintiff is a "soon to be disbarred attorney". Pennington did not say "she may get disbarred" he said affirmatively as though the fix was already in with O'Dell.  Pennington made an agreement via public emails to have Steve McLaughlin "stalk" plaintiff at her home in Gold Bar, Washington. Plaintiff published Pennington's public email communication – made using county resources and while on the county's payroll- on the Gold Bar Reporter on April 28, 2015, titled "More public records linking John Pennington to stalking Gold Bar Reporter."

3.29  In March 2015, Plaintiff acting in capacity as a journalist began investigating the Penningtons involvement with the Duvall Children's Community Theater. Because Plaintiff has ample reason to believe that Pennington is responsible for the rape of a 5 year old child from Cowlitz County, and is raping his step-daughter (JH), Plaintiff requested access to records from the Duvall Community Theatre seeking to know if they ran criminal background checks on Crystal Hill Pennington and John Pennington prior to allowing both access to children.  In the middle of March 2015, acting on personal legal advice from Snohomish County Prosecutors Mark Roe and Sean Reay, John Pennington and his wife Crystal Hill Pennington field a false police report and lodged an intentionally false 911 complaint trying to cover up that PSI investigators while trying to serve a CR 45 subpoena learned that the Penningtons' were guilty of

Complaint for Damages Page 44 of 65

child abandonment leaving three minor children home alone.  Although the City of Duvall police officers are under a mandate to report child neglect, the City of Duvall when requested for records relating to their mandated child protected services report admitted that no report was ever filed with Washington State Child Protected Services.

3.30  The Penningtons filed criminal complaints with the City of Duvall because I, as an licensed attorney in other districts, exercised my legal rights under CR 45 subpoena power to depose Hill Penningtoin in a public records case filed seeking access to public records Hill Pennington continue to withhold and possess under RCW 42.56.  In the middle of March 2015, Duvall police officer Lori Batiot advised the Penningtons to Petition for a Restraining order based solely on First Amendment protected free speech and news reporting of the Plaintiff.

3.31  On March 19, 2015, the Pennngtons acting on legal advice given to them by Duvall City police officer Lori Batiot, filed a Petition for Restraining Order with Judge Meyers, King County. Hill Pennington and Pennington placed solely copies of Plaintiff's Gold Bar Reporter news publications into their Petition, complaining solely of Plaintiff's First Amendment rights to to inform the public of Penningtons crimes against women and children. Judge Meyers denied their Petition as a prior restraint on free speech.

3.32  On March 25, 2015, the City Duvall declined to prosecute Penningtons' criminal complaints based on Plaintiff's First Amendment activity ( the same evidence Penningtons' presented to Judge Meyers on March 19, 2015).

3.33  In late March 2015, Plaintiff  issued payment to retrieve over 150 paages of exhibits Hill Pennnington and Pennington filed with their Petition for Restraining Order. Plaintiff immediately noted that  the exhibits were all altered, and false statements alleging that Plaintiff

Complaint for Damages Page 45 of 65

was using anonymous emails and Twitter accounts.  Hill Pennington and Pennington  knew that

the Twitter and email addresses accounts belonged to real persons aside from Plaintiff including

Krista Dashtestani and Brandia Taamu, because Krista Dashtestani physically served Hill

Pennington with a public records request and assisted in the in person deposition of Pennington,

and personally met Michael Kenyon in court proceeding involving Hill Pennington; and Brandia

Tammu signs her Twitter and news reports.    Hill Pennington also openly bragged inside her

Petition to Restrain Plaintiff's free speech rights that they shut down two of my Twitter accounts,

and three of Brandia Tammu's Twitter accounts, but the Penningtons conveniently left out that

they were using anonymous Twitter accounts themselves, including but not limited to

"GodBarReporter" and " NsCrier".   GodBarReporter is associated with emergency management

and its only "followers" were that of emergency management agencies.

      3.34 On March 25, 2015, after having been declined criminal prosecution of Block in

Duvall, and having King County Judge Meyers deny their Petition to Restrain the Free Speech of

Plaintiff, Hill Pennington filed the exact same criminal complaint in Gold Bar, with the exact

same altered documents, alleging once again that Plaintiff is cyber- stalking her simply because

of Plaintiff's First Amendment blogs.  But this time, Crystal Hill Pennington sends her criminal

complaints directly to Prosecutor Mark Roe and falsely complains that Hill Pennington cannot

find work as a result of Plaintiff's news reports. FEMA contracts confirm that Hill Pennington

and Pennington have made over $150,000.00 with FEMA, and over $35,000 personally awarded

to Hill Pennington after she files a criminal complaint alleging she is unable to find work as a

result of Plaintiff's news reports.

Complaint for Damages Page 46 of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

3.35  On April 12, 2014, a police officer from Duvall Washington Lori Batiot called Plaintiff's partner's business phone leaving a threatening message stating that if Plaintiff did not call her back she would come over to her house in Gold Bar, located in Snohomish County. Since Duvall is located in King County, Plaintiff viewed this as an extortionist wire threat to harm Plaintiff and a gross violation of Plaintiff's civil rights over matters protected under the First Amendment.  As a result of City of Duvall police officer Batiot's wire threats, Plaintiff requested access to public records under RCW 42.56 involving Batiot, the Penningtons, and herself.  A source stated that the Penningtons are good friends with Lori Batiot and live in Duvall, Washington.

3.36  As of today, Defendants Duvall, Batiot, Penningtons and Michael Kenyon continue to withhold public records involving Plaintiff, retaliating against Plaintiff for exercising her First Amendment protected rights.  Plaintiff filed a suit seeking access to public records against the City of Duvall in late June 2015. The suit is still pending in King County Superior Court.

3.37  On May 4, 2015, after Plaintiff requested access to public records involving Batiot, Batiot filed false statements with Shoreline District Court, seeking a restraining order, attempting to commit Plaintiff to a mental institution and falsely asserting to the Court that she was indigent, that Plaintiff was unemployed, had a history of mental health issues, and was born on June 16, 1967.  According to a Duvall Washington police report retrieved under the Public Records Act in May 2014, the Penningtons requested that the Duvall police department seek a restraining order "to get John in the clear…" Batiot's is the only officer who assisted the Penningtons.

3.38  On May 6, 2014, Plaintiff flew to Great Brittan for a month long vacation. Unbeknownst to Plaintiff, Batiot, at the Penningtons bequest, filed what amounts to a SLAPP

Complaint for Damages Page **47** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

suit in Shoreline District Court seeking a restraining order, filing almost exactly the same documents with the same intentionally false statements Crystal Hill Pennington and John Pennington in King County District Court on March 19, 2015. Although untrue, Batiot further mimicked what the Pennington had placed inside Gold Bar public records (1) the Plaintiff had been treated for mental health issues; (2) Plaintiff was unemployed; (and) Plaintiff was born on June 16, 1967.

3.39 On May 24, 2015, after arriving at London Heathrow Airport, Plaintiff was full body clothed searched, illegally detained at Seattle Tacoma International Airport, by two Port Officers, one US Customs Officer Curtis Chen, after defendants John Pennington unlawfully misused his Homeland Security connections, causing a tracker on my US Passport stating that Plaintiff and her partner were wanted for "possible felony warrant with extradition back to the US." We learned this from public records retrieved from King County Sheriff's Office.

3.40 In May 2015, King County Sheriff's Officer Cary Coblantz received at least two phone calls from defendant John Pennington, and immediately following the phone call, Coblantz received an email from the DOJ Interpol confirming what flight number Plaintiff and her partner were coming back to Seattle International Airport from London. After receiving Plaintiff's flight information from Pennington, Coblantz then placed a phone call to the Port of Seattle informing them what flight Plaintiff was on asking the Port of Seattle and US Customs officers to serve a civil order on Plaintiff. The Port of Seattle Officer Matuska,  Tanga, and Gibeleo elicited the assistance of US Customs Officer Curtis Chen to place a tacker on Plaintiff's passport. The Port of Seattle admitted via a public records request that it has never served a civil order on any other person ever except for Plaintiff. At relevant times, Pennington was being paid

Complaint for Damages Page **48** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

by Snohomish County. Coblatnz, Tanga, Gibeleo, and Tuttle, were being paid by King County. Curtis Chen was being paid by U.S. federal government. Coblantz's emails retrieved from public records also documented that he was reading another news reporters website claiming it to be Plaintiff's and then issued a public email to Port of Seattle police that Plaintiff was " anti-government."

3.41 Public records from the City of Shoreline confirmed that Coblantz not only conspired with Pennnington and Batiot to have Plaintiff charged with "stalking" but he also conspired with City of Duvall Special Prosecutor, a Kenyon Disend contractor, Sandra Sullivan ( nee Meadowcraft). Although Coblantz is assigned to the City of Shoreline, while Sullivan is assigned to Duvall, Sullivan and Coblantz agree in public records to retaliate to have Plaintiff attempting to charge plaintiff with felony criminal stalking and harassment charges. Plaintiff reviewed the evidence file from King County, City of Shoreline, and confirmed that the only evidence Batiot placed into the records were complaints against the Gold Bar Reporter's news reports. These same records confirmed that Batiot falsely restated what the Penningtons had disseminated to Gold Bar in 2009 that Plaintiff had been treated for mental health issues, was unemployed, and was born on June 16, 1967. Batiot and the Penningtons conspired together to have Plaintiff charged with stalking crimes between March 2015 to June 19, 2015. Their conspiracy failed and on September 21, 2015, the Gold Bar Reporter published "Duvall City attorney Sandra Sullivan (Meadowcraft) quashing criminal charges for political favors, EXPOSED" and "Michael Kenyon's Dirty Bag of Secrets Part II."

3.42 On June 19, 2015, Batiot also sought to have Plaintiff committed for a PSY evaluation simply for exposing via her news reports of Batiot's corrupt acts with the Penningtons

Complaint for Damages Page **49** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

and exposing her past drunk driving conviction and that she had been terminated for cause from two other police departments. Public records from the City of Brier, Whatcom County and Shoreline confirm that anytime someone would expose Batiots corrupt acts, she would be claim she was being "stalked."

3.43 On June 19, 2015, defendants Beavers, Hill, and the Penningtons met at King County District (Shoreline Division) Court to further the efforts of the Enterprise to as the Penningtons had requested of Batiot 'get John in the clear." Beavers live in Snohomish County. Judge Smith denied their attempts to restrain plaintiff and the Enterprise efforts to have Plaintiff arrested and committed for PSY evaluation. Judge Smith further stated to Batiot in open court "you utilized a lot of government resources to get Ms. Block served but you paid for none. Don't you think that's a little unfair?" Although Judge Smith was speaking to Batiot, an onlooker stated "he (Judge Smith) was glaring at John Pennington."

3.44 On June 19, 2015, Crystal Hill Pennington filed exactly the same false police report that she and her friend Batiot filed in Duvall and Shoreline, with the City of Gold Bar. Instead of dismissing Crystal Hill Pennington's criminal complaint as a prior restraint on free speech, Gold Bar's Deputy Casey immediately transferred the case to Snohomish County Prosecutor Mark Roe and Sean Reay. Public telephone records from Snohomish County Prosecutors Office document that Crystal Hill Pennington had a direct line to both Reay and Roe. Crystal Hill Pennington does not live in Snohomish County, and the events she complained about occurred in King County, City of Duvall. On March 25, 2015, City of Duvall had already dismissed the Penningtons' criminal complaint, geared only at shutting down the Gold Bar Reporters. Mark Roe then refers the case to King County Prosecutor Mark Larsen. King County Prosecutor's

Complaint for Damages Page 50 of 65

Office opines Crystal Hill Pennington and Batiot's criminal complaint against Plaintiff based solely on First Amendment protected activity is "unfounded."

3.45  From public records retrieved in August 2015, Reay assisted Hill Pennington by her giving personal giving legal advice. Public records from King County Courts filed on March 19, 2015, also document that Hill Pennington referred to Reay as her personal lawyer. Hill Pennington is a resident of Duvall, located in King County, while Reay serves as Snohomish County prosecutor. By acting as Hill Pennington's legal counsel, Reay acted as their personal counsel, outside the scope of his official duties as a Snohomish County prosecutor.

3.46 On September 3, 2015, Roe violated Plaintiff's civil rights by disseminating an email letter, which included high ranking members of the Washington State Legislature, stating that he felt sorry for John Pennington, and then further lied stating that he never had communication with Pennington.   On the same day, Plaintiff wrote Roe a response that she thought it was pretty strange for a county prosecutor to be writing a letter to plaintiff, and mighty odd that he would feel sympathetic to a non-county resident who abuses women and children.  At the time Roe contacted Plaintiff, he was being paid by Snohomish County taxpayers, and his email confirms that he used Snohomish County servers to disseminate the letter.

3.47 In September 2015, a former Snohomish County Department of Information Services employee Pam Miller gave Plaintiff public records previously requested from Snohomish County but withheld, documenting that defendant Di Vittorio and Lewis tampered with public records Plaintiff requested. In late March 2014, Miller objected in a public email that Plaintiff was being treated differently than other requesters in violation of RCW 42.56, and further stated she witnessed Lewis tampering with files ready for Plaintiff to pick up. Di Vittorio

Complaint for Damages Page 51 of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

called an in person meeting with Miller who stated that Di Vittioro screamed at her stating "Do you realize the financial risk you have placed in the County in by writing this email?"  Miller was subsequently fired immediately after blowing the whistle on Di Vittorio and Lewis's tampering with public records as it relates solely to Plaintiff's records requests.

3.48   On September 25, 2015, Snohomish County Prosecutor Mark Roe telephoned Cowlitz County Sheriff's Office asking if Gold Bar Reporters were correct about Pennington being the prime suspect in the rape of 5 year old child, thus proving Plaintiff's news articles on Pennington were right on target. In 1993 when John Pennington was named as the only suspect in the rape of 5 year old girl, defendant Michael Kenyon was the City attorney for Kelso.  Today, Michael Kenyon owns one of the largest municipal law firms in Washington State.  Clients include Defendants City of Duvall and Gold Bar.

3.49   On October 5, 2015, John Pennington was actively stalking Plaintiff at her place of business in Monroe Washington, while being paid by Snohomish County. Plaintiff took a picture of Pennington from her officer window.  At the beginning of October 2015, Plaintiff's doctor notified her that he scheduled surgery for October 30, 2015. Plaintiff immediately disseminated a copy of that letter to the WSBA liaison Julie Shankland.  Shankland without engaging in good faith   interactive process "denied" Plaintiff's reasonable accommodation request as " unreasonable" and further claiming that Plaintiff must file a Motion for Reasonable Accommodation with the Full Disciplinary Board even though no rules exist mandating such filings. The Chair of Disciplinary Counsel Jennifer Dremousis unilaterally denied Plaintiff's reasonable accommodation request in violation of General Rule 33,  RCW 49.60 and the American's

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

with Disabilities Act, overturning Washington State Supreme Court's holding in <u>Re: Discipline of</u> <u>Sanai</u>.

3.50 On October 30, 2015, the WSBA Full Disciplinary Board members Ken Bank, Marcia Dammerow Fischer, Stephanie Bloomfield, Sara Ardeen, S. Nia Renei Cottrell, Michael Jon Myers, Keith Mason Black, Kathryn Berger, Stephania Camp Denton, Marc Silverman, and William Earl Davis and ODC lead counsel Eide held an exparte hearing, violated Open Public Meetings Act by voting in executive session, held an exparte hearing only after being notified that Plaintiff was disabled unable to attend, and the WSBA Full Board engaged in in exparte communication with the Hill Pennington and Pennington during the public hearing. A long time open government news reporter videotaped the exparte proceedings again documenting that the WSBA violated Plaintiff's rights to be accommodated under RCW 49.60 and GR 33.

3.51 On October 30, 2015, while being paid by Snohomish County, Pennington, met and conspired with the WSBA Full Disciplinary Board, Beavers, Ende, Sato, Eide, and Hill Pennington at the WSBA Offices.  A WSBA employee, who is believed to be defendant Julie Shankland communicated with Pennington, carried a message from Pennington to Defendant Kevin Bank during a public hearing, relating to the WSBA's proceeding against Plaintiff. Shankland, Pennington and Bank's exparte communication during a public hearing was captured on video and posted to the Gold Bar Reporter's U Tube account and titled "WSBA Corruption caught on Camera."

3.52 At the October 30, 2015 hearing Re Block, WSBA Full Disciplinary Board member Kevin Bank threatened the news reporter videotaping the WSBA's exparte hearing against plaintiff.  Alison Sato also attempted to force the news camera and intimidate the news reporter from the public hearing even though the Washington State Attorney General issued rule that all

Complaint for Damages Page **53** of **65**

public meetings can be legally videotaped. In October 2015, Plaintiff witnessed Pennington stalking her at her place of business located in Monroe, Washington. Plaintiff snapped a picture of Pennington with her iPhone.

3.53 On November 13, 2015, after denying Plaintiff's reasonable accommodation without engaging in good faith discussions, the WSBA Full Disciplinary Board adopted O'Dell September 2014 Findings of Fact, which included false information that Plaintiff, had lied against Pennington. The WSBA's record does not support that Plaintiff lied about Pennington, nor has Pennington denied a single article written by the Gold Bar Reporters.

3.54 On November 17, 2015, Pennington reported to Snohomish County Emergency Command Center (EOC) signed onto the Gold Bar Reporter, shut down Plaintiff's Twitter account, while three people were killed in destructive wind storms. Storms that caused Governor Jay Inslee to declare a state of emergency for Washington. Pennington was on county time and on the county payroll at the time.

3.55 From June 2013 to present, defendants continuously harass Plaintiff, attempt to extort her, physically threaten people who choose to associate with Plaintiff, in a manner which effectively interferes with her right to conduct business as a news reporter and extorted her right to practice law as a result her decision to report on corruption. The WSBA encourages other members of the community to treat the plaintiff as a pariah in the legal profession and allows members to commit violations against her in violation of the rules of professional conduct against Plaintiff with impunity.

3.56 From May 2014 to Present, and only after Plaintiff was no longer a member of the WSBA, Hill Pennington, Kenyon, Pennington, Beavers, WSBA, Snohomish County, and Gibbs's sign on to the Gold Bar Reporter on an almost on a daily basis. The Gold Bar Reporter has a "tracking device" on the website. Defendants Bank, Roe, Di Vittioro, Silverman, Berger, Nappi Jr.

Complaint for Damages Page **54** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA 98272

O'Dell and Eide are also frequent visitors.

3.57 The anti-trust actions taken by the WSBA are not reviewable by the Washington State Supreme Court, nor does the Washington State Supreme Court exercise supervisory control in this regard. The individual members as well as the WSBA as a whole, are market participants with require close supervision by bar

3.58 With respect to the violations by the bar, the individually named defendants, and other defendants, their criminal activities are outlined in the accompanying RICO statement and will be submitted within 30 days of this filing.

3.59 The Washington State Bar Association and its defendants' actions amount to due process violations in violation of the 14th Amendment to the U.S. Constitution.

3.60 With respect to the Washington State Bar Association's infringement on Plaintiff's First Amendment rights without authority of law, such conduct in violation of the First Amendment to the U.S. Constitution to punish and stifle free speech--free speech issues that the WSBA and its defendants have no jurisdiction over.

3.61   The collective actions of the defendants of retaliating against attorneys who oppose their criminal activities, has prevented the plaintiff from obtaining meaningful representation, in violation of the sixth amendment right to counsel.

3.62 A true copy of the WSBA's exparte hearing against Plaintiff can be viewed at https://www.youtube.com/watch?v=qugTLbIJaHc

3.63. As outlined in the accompanying RICO statement the bar targets discipline to minority groups, sole practitioners, opponents of the RICO enterprise, and attorneys from Snohomish County. 41% of all bar discipline comes out of Snohomish County, which is only one of Washington's 49 counties.  The bar's selection procedures for discipline has an adverse impact on minority groups

Complaint for Damages Page 55 of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

which cannot be justified in terms of business necessity. The result of this activity steers the market away from these groups and thus violates the Sherman Antitrust Act.

3.64 On September 25, 2015, the EEOC issued a right to sue letter under the ADA. This suit is filed within 90 days of receiving the letter.

## IV.  LEGAL CLAIMS

### A.  42 USC § 1983 CAUSE OF ACTION

4.1  The defendants' retaliation against Plaintiff deprives her of rights secured by the First Amendment to the United States Constitution by persons who act under color of law. The retaliation wrongly deprives citizens, including Plaintiff, of First Amendment Rights and impermissibly chills exercise of those rights by the Plaintiff and similarly situated citizens.

4.2  The Defendants have conspired with each other to retaliate against the Plaintiff for her exercise of constitutionally secured rights.

4.3  The wrongful violations, acts, and omissions alleged herein have proximately and actually caused damages to the Plaintiff for loss of earning capacity, out-of-pocket losses, impairment of personal and business reputation, personal humiliation and fear, and mental anguish and suffering in an amount to be proved at trial.

4.4  The Defendants have demonstrated that they intend to continue their wrongful conduct.

The Plaintiff seeks equitable relief in the form of a permanent injunction against the WSBA and its agent defendants.

4.5  Plaintiff alleges that the conduct of the individual Defendants was motivated by evil and malicious intent and/or that their conduct involves reckless or callous indifference to the Plaintiffs constitutional rights and that this is a proper case for awarding her punitive damages.

Complaint for Damages Page **56** of 65

**B.  RICO CAUSES OF ACTION:  Violation of Federal Racketeering Act (RICO), 18 USC 1964, and Washington's "Little RICO" RCW 9A 82. 100 (2).**

**COUNT ONE:**
**5.1  1. Acquisition and Maintenance of an Interest in and Control of an _Enterprise_ Engaged in a _Pattern of Racketeering Activity_: 18 U.S.C. §§ 1961(5), 1962(b)**

5.1a.  At various times and places partially enumerated in Plaintiff's allegations, the RICO defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO _enterprise_ of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

5.1b.  During the ten (10) calendar years preceding April 11, 2012, the RICO defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

5.1c.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, _i.e._ a continuing threat of their respective _racketeering activities_, also in violation of the RICO law at 18 U.S.C. 1962(b) _supra_.

**COUNT TWO:**

**5.2.  Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c)**

5.2a.  At various times and places partially enumerated in Plaintiff's allegations, all Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

1  Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the

2  conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in

3  violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

4        5.2b.  During the ten (10) calendar years preceding March 1, 2003 all Defendants did

5  cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts

6  that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of

7  the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

8        5.2c.  Plaintiff further alleges that all Defendants did commit two (2) or more of the

9  offenses itemized above in a manner which they calculated and premeditated intentionally to

10  threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in

11  violation of the RICO law at 18 U.S.C. 1962(c) supra.

12  **COUNT THREE:**

13  **5.3.  Conspiracy to Engage in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5),**

14  **1962(d)**

15        5.3a.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby

16  incorporates same by reference, as if all were set forth fully herein.  Substance prevails over

17  form.

18        5.3b.  At various times and places partially enumerated in Plaintiff's documentary

19  material, all Defendants did conspire to acquire and maintain an interest in a RICO enterprise

20  engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

21        5.3c.  At various times and places partially enumerated in Plaintiff's allegations, all

22  Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern

23  of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d).

24  See also 18 U.S.C. §§ 1961(4), (5) and (9).

25

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

5.3d.  During the ten (10) calendar years preceding March 1, 2003 many Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

5.3e.  Plaintiff further alleges that many Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

## 6  SHERMAN ANTI-TRUST CAUSE OF ACTION

6.1 In furtherance of antitrust and RICO conspiracies, the defendants, primarily through its their control of the WSBA, produces, promotes and uses selection procedures in determining which attorneys get selected for discipline that has the effect of steering the market for attorney services away from solo practitioners, minorities, and toward the services of large firms, prosecutors, defense attorneys and other favored groups. The WSBA decides who or who do not become attorneys, and who gets disciplined. The primary design and effect of the conspiracy is to artificially restrain the pricing of legal services through anti-competitive means that results in the public obtaining unethical legal services at higher costs.

6.2  As outlined in this complaint, Block has attempted to exercise her constitutional rights, including her right to shield the sources of  political news blog articles she writes; her right to be free from unlawful search and seizure; her right to free speech; her right without censorship as a member of the press; her right to petition and redress government officials; her right be free of conduct perpetrated by the WSBA in violation of the anti-trust laws,  due process violations, constitutional violations including her legal right of freedom of association or disassociation and, her right to

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

participate in freedom of the press and freedom of speech without government sponsored interference. The Washington State Bar and its defendants' civil rights violations are continuing and ongoing, causing irreparable harm and violates Plaintiff's First Amendment protected rights, which are outside the WSBA's jurisdiction. In the course of accomplishing this restraint of trade, the defendants have also violated RICO by having conducted, and continuing to conduct, the operation and Management of an enterprise, comprised of themselves, and firms closely associated with the WSBA Board and Office of Disciplinary Counsel to monopolize the delivery of legal services.

6.3   On November 9, 2015, nine members of the WSBA Practice of Law Board resigned stating in support of the Sherman Anti-Trust violations against the WSBA: "The Washington State Bar Association has a long record of opposing efforts that threaten to undermine its monopoly on the delivery of legal services."

**7.   ADA violations, Washington Law Against Discrimination, RCW 49.60 et seq. ("WLAD").**

7.1   The Actions of the defendants, as above stated constitute violations of the American with Disabilities Act, Washington Law Against Discrimination and RCW 49.60.

7.2   As a result, the plaintiff has suffered damages in an amount to be determined at trial.

VIII.   JURY DEMAND.

8.1   Plaintiff, pursuant to Federal Rules of Civil Procedure 38, demands trial by jury of all

Complaint for Damages Page **60** of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

issues triable by jury.

IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anne Block demands judgment as follows:

9.1     That all Washington federal judges disqualify themselves from hearing this case because they are all members of the WSBA, have formed a close relationship with its leadership and therefore are potential defendants in the case.

9.2     A Judgment awarding to Plaintiff against the Defendants, jointly and severally, compensatory damages in the amount as shall be proved at trial;

9.3     A Judgment against the individual Defendants, jointly and severally, awarding Plaintiff punitive damages in the minimum amount as shall be proved at trial;

9.4     An award of costs and prevailing party attorney fees against the Defendants jointly and severally; and,

9.5     That this Court find that all RICO Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(b) (Prohibited activities).

9.6     That all RICO Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO enterprise of

Complaint for Damages Page **61** of **65**

persons, or of other individuals associated in fact, who are engaged in, or whose activities do affect, interstate or foreign commerce.

7.8   That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in COUNT ONE  supra.

7.9   That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and federal law(s).

7.10   That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b), according to the best available proof.

7.11.   That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b), according to the best available proof.

7.12.   That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(b), according to the best available proof.

7.13.   That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [sic], for the benefit of Plaintiff, His heirs and assigns.

ON COUNT TWO:

7.14   That this Court liberally construe the RICO laws and thereby find that all Defendants have associated with a RICO enterprise of persons and of other individuals who were associated in fact, all of whom did engage in, and whose activities did affect, interstate and foreign commerce in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

7.15    That this Court liberally construe the RICO laws and thereby find that all Defendants have conducted and/or participated, directly or indirectly, in the affairs of said RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) ("pattern" defined) and 1962(c) supra.

7.16.    That all   Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from associating with any RICO enterprise of persons, or of other individuals associated in fact, who do engage in, or whose activities do affect, interstate and foreign commerce.

7.17.    That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conducting or participating, either directly or indirectly, in the conduct of the affairs of any RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) and 1962(c) supra.

7.18    That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in COUNT TWO supra.

7.19.    That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. 1962(c) supra and from all other violation(s) of applicable State and federal law(s).

7.20    That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c) supra, according to the best available proof.

7.21    That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c) supra, according to the best available proof.

7.22.    That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(c) supra, according to the best available proof.

Complaint for Damages Page **63** of **65**

7.23.   That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(c) supra and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [sic], for the benefit of Plaintiff, His heirs and assigns.

ON COUNT THREE:

7.24.   That this Court liberally construe the RICO laws and thereby find that all Defendants have conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain control of, a RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) supra.

7.25   That this Court liberally construe the RICO laws and thereby find that all Defendants have conspired to conduct and participate in said RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) supra.

7.26   That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to acquire or maintain an interest in, or control of, any RICO enterprise that engages in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(b) and (d) supra.

7.27.   That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to conduct, participate in, or benefit in any manner from any RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d) supra.

7.28.   That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in COUNT THREE supra.

7.29.   That all defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. 1962(d) supra and from all other violation(s) of applicable State and federal law(s).

Complaint for Damages Page **64** of 65

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272

7.30.   That judgment be entered for plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d) supra, according to the best available proof.

7.31.   That all defendants pay to plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d) supra, according to the best available proof.

7.32.   That all defendants pay to plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(d) supra, according to the best available proof.

7.33.   That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(d) supra and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, for the benefit of Plaintiff, his heirs and assigns.

7.34.   That the court award damages to the plaintiff for the denial of her civil rights.

7.35.   That the court issue a declaratory judgment that the Washington State Disciplinary system as applied is unconstitutional because of the large number of ex parte contacts deprives the plaintiff of his right to a fair and unbiased tribunal and for the other reasons given in this complaint.

7.36.   That this court issue a declaratory judgment that the disbarment order issued by the Washington State Supreme Court is unconstitutional because of the large number of ex parte contacts deprived the plaintiff of his right to a fair and unbiased tribunal and for other reasons given in this complaint.

7.37 Such other relief as this Court deems just and equitable under the circumstances of this case.

Dated this 28th day of December 2015.

Anne Bl;ock

Complaint for Damages Page **65** of **65**

Anne Block
115 ¾ West Main St # 204
Monroe, WA  98272