UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| ANNE BLOCK, an individual, | CASE NO. C15-2018RSM |
| Plaintiff, |  |
| v. | ORDER GRANTING PENDING MOTIONS TO DISMISS |
| WASHINGTON STATE BAR ASSOCIATION, *et al.*, |  |
| Defendants. |  |

## I.     INTRODUCTION

THIS MATTER comes before the Court on the following pending motions to dismiss:

1.  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of Gold Bar, Joe Beavers and Linda Loen (collectively "Gold Bar Defendants") (Dkt. #23);

2.  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Sara DiVittorio, Seth Fine, G. Geoffrey Gibbs, Brian Lewis, John Pennington, Sean Reay, Mark Roe, and Snohomish County (collectively "Snohomish County Defendants") (Dkt. #28);

3.  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Kenyon Disend, PLLC, Michael Kenyon, Margaret King, Ann Marie Soto and Sandra Sullivan (collectively "Kenyon Disend Defendants") (Dkt. #30); and

ORDER
PAGE - 1

4.   Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of Duvall and Lori Batiot (collectively "City of Duvall Defendants") (Dkt. #35).[1]

Plaintiff has failed to respond to the Gold Bar Defendants' motion.  However, she has opposed the other motions above.  Dkts. #44, #69 and #70.  For the reasons discussed herein the Court now GRANTS each of the Defendants' motions and dismisses the claims against those Defendants in their entirety and with prejudice, as further discussed below.

## II.   BACKGROUND

On December 28, 2015, Plaintiff filed a Complaint naming 56 different Defendants and alleging a variety of claims ranging from Racketeer Influenced and Corrupt Organizations ("RICO") Act violations to false reporting to fraud.  *See* Dkt. #1.  On February 18, 2016, Plaintiff filed a "second" Amended Complaint.[2]  Dkt. #19.  Plaintiff's Amended Complaint contains 87 pages of allegations against 53 different local government and/or private entities and individuals.  Dkt. #19.  According to Plaintiff, she "brings a civil rights action [] under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on and continuing attempts to punish [her] right to engage in protected First Amendment activities . . . ."  *Id.* at 4-5.  In addition, Plaintiff makes a number of civil RICO claims and has filed a separate, proposed RICO Statement in support of those claims.  Dkts. #19 at 77-79 and #20.  The above described motions to dismiss followed.

The Court will discuss facts specific to the various parties below.  However, for additional context to these motions, the Court notes that Plaintiff is no stranger to this Court.  In

---

[1]  The Court will address the remaining four Motions to Dismiss (Dkts. #39, #45, #51 and #73) on or near their noting dates, as well as the pending Motion for Sanctions (Dkt. #47) and three pending Motions to Intervene (Dkts. #37, #40, and #41), in separate Orders.

[2]  The Court notes that although Plaintiff characterized the amendment as a "second" amended pleading, it is actually a first Amended Complaint as no other prior amendments had been filed. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the "second" amendment was timely.

ORDER
PAGE - 2

addition to the instant matter, she has filed two prior actions.  *Block v. Chao*, Case No. C08-1850JLR and *Block v. Snohomish County, et al.*, Case No. C14-0235RAJ.  The latter action included many of the same allegations against many of the same Defendants as the instant matter.  Further, while Plaintiff is proceeding *pro se* in the instant action, she is also an attorney admitted to practice in Washington.  However, according to Washington State Bar Association ("WSBA") records, her license is currently suspended.  *See* https://www.mywsba.org/LawyerDirectory/LawyerProfile.aspx?Usr _ID=37640 (*last visted* 3/29/2016).  At least some of the allegations she makes in this action stem from apparent disbarment proceedings before the WSBA.  Dkt. #19 at 47, 55-56 and 59.

The Court also finds relevant Plaintiff's conduct in her prior case before the Honorable Richard A. Jones.  In that case, although not his typical practice, Judge Jones noted that Plaintiff's litigation in this Court appears to be part of a much larger campaign.  Case No. C14-0235RAJ, Dkt. #61 at 2.  Plaintiff's conduct in that case resulted not only in the dismissal of her claims, but also in sanctions.  *See id.*, Dkts. #6, #78, #107.  That case appears to be ongoing.  The Court highlights the prior case because it appears the instant action is also part of a larger campaign against Defendants.  As further discussed below, Plaintiff appears to be using her litigation as a way to attempt to punish them by hauling them into court to defend against primarily meritless claims.  For whatever reasons, it appears that Plaintiff feels she has been wronged by Defendants and sees the judicial system not necessarily as a forum in which she will receive justice, but as a tool to use against the Defendants.[3]  With that context, the Court turns to Defendants' motions.

---

[3]  As Snohomish County Defendants highlight, evidence of this intent can be found in Plaintiff's RICO Statement.  Dkt. #28 at 2, fn. 1.  The RICO Statement is primarily cut and paste from the Amended Complaint, supplemented by additional direct cut and paste of about 80 pages of superfluous material from other unrelated "RICO statements."  For example, pages

### III.    DISCUSSION

**A.  Standard of Review**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Absent facial plausibility, Plaintiffs' claims must be dismissed.  *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents for which it has taken judicial notice.  *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Here, the Court has taken judicial notice of, and considers herein, documents filed in Plaintiff's other cases in this Court, and specifically those filed in the aforementioned action before Judge Jones.  Judicial notice is appropriate because the documents presented are matters of public record, having been filed on the public docket in this Court.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

---

86-108 of Plaintiff's RICO Statement contain 128 paragraphs of material which appear to have been directly copied from a "RICO statement" previously filed in *Scheidler v. Avery et. al. See* C12-5996RBL, Dkt # 68-1 at ¶ ¶ 8-130.  Likewise, pages 108-162 of Plaintiff's RICO statement also appear to merely be an additional 350 cut and pasted paragraphs of material directly from a "RICO statement" previously filed by Plaintiff's associate John Scannell. *Scannell v. Washington State Bar Association  et. al.*, C12-0683SJO, Dkt. # 74-1 at ¶ ¶ 8-358.

ORDER
PAGE - 4

**B.  Gold Bar Defendants' Motion to Dismiss**

The Court first addresses Gold Bar Defendants' Motion to Dismiss.  Dkt. #23.  These Defendants argue that Plaintiff's claims against them are (1) barred by the doctrine of *res judicata* (2) time-barred; and (3) insufficiently pled under Fed. R. Civ. P. 12(b)(6), and therefore should be dismissed.  *Id.*

As an initial matter, when Plaintiff filed her Amended Complaint, she no longer named the City of Gold Bar as a Defendant, and the City was terminated from this action at that time.  *See* Dkt. #19.  Accordingly, Gold Bar Defendants' motion is moot as to the City of Gold Bar and the Court will not address that portion of the motion.

With respect to Defendants Loen and Beavers, Plaintiff makes the following allegations.  As to Ms. Loen (the current Mayor of the City of Gold Bar), Plaintiff alleges that she (Ms. Loen) deprived her of her constitutional rights by retaliating against her.  Dkt. #19 at ¶ 2.29.  Ms. Loen allegedly conspired with others to retaliate against Plaintiff for exercising her constitutional and statutory rights.  *Id.*  In addition, Plaintiff identifies Ms. Loen as a RICO Defendant.  *Id.*  Plaintiff further alleges that Ms. Loen met with Joe Beavers during the first week of December 2013, and that "immediately after" that meeting she called Plaintiff telling her "she must keep [her] WSBA license" and that she must go "to that deposition."  Dkt. #19 at ¶ 3.97.  Plaintiff believes that Ms. Loen was referring to a deposition scheduled by the WSBA. *Id.*  Plaintiff alleges that Ms. Loen then sent her an email stating that she would receive a lot of public records.  *Id.* at ¶ 3.97.  Although not entirely clear, Plaintiff implies that Ms. Loen was acting in concert to provide the WSBA with "altered" public records, while not making it a priority to respond to Plaintiff's public records requests. Dkt. #19 at 3.97.

ORDER
PAGE - 5

As to Mr. Beavers, Plaintiff alleges that he also deprived Plaintiff of rights guaranteed by the United States Constitution by retaliating against her for exercising those rights. Dkt. #19 at ¶ 2.28. She also identifies Mr. Beavers as a RICO Defendant. *Id.* More specifically, Plaintiff alleges that Mr. Beavers breached his public duties, violated his oath of office, conspired and agreed to cover up former City of Gold Bar employee Karl Marjerle's crimes in exchange for assistance obtaining a new job with the City of Bellevue, getting unfettered access to unemployment benefits and $10,000. *Id.* at ¶¶ 3.5 and 3.8. Plaintiff further alleges that Mr. Beavers illegally accessed and retrieved Plaintiff's mental health history, retrieved that history for some other person, falsely characterized it as Plaintiff's and disseminated it inside public records. *Id.* at ¶ 3.15. She alleges that Mr. Beavers ordered Gold Bar's clerk to write a WSBA complaint for former City of Gold Bar council member Dorothy Croshaw, who filed a WSBA complaint against Plaintiff in June 2010; that he stole money from the City's water fund in late 2010; that he conspired to assemble, write and file the second WSBA complaint against Plaintiff using city staff and city's public records in June 2012; that he furthered the efforts of the enterprise on June 19, 2015, in a meeting at King County District Court; that he assisted attorney Kenyon Disend in obtaining the contract with the City of Gold Bar for legal services; that he stated "we're going to get [Plaintiff's license]"; that he met and conspired with others at the WSBA offices; that he used city resources to assist the WSBA by providing altered records to a WSBA investigator; and that he signed onto the Gold Bar Reporter, for which Plaintiff reports. *Id.* at ¶¶ 3.17, 3.18, 3.20, 3.22, 3.23, 3.26, 3.85, 3.93, 3.97 and 3.99.

As referenced above, on February 18, 2014, Ms. Block filed a complaint in this Court against numerous defendants, including the City of Gold Bar and Joe Beavers. *Block v. Snohomish County, et al.,* C14-0235RAJ, Dkt. #1. In that case, Plaintiff alleged that the City of

ORDER
PAGE - 6

Gold Bar "wrongfully retaliate[d] against and injure[d] her for exercising her First Amendment rights." *Id.* She also alleged that Joe Beavers "deprive[d] Plaintiff of rights guaranteed by the United States constitution by retaliating against her for exercising those rights" and conspir[ing] with others to retaliate against [] her]." *Id.* Judge Jones ultimately dismissed Plaintiff's Complaint with prejudice as to her retaliation, RICO and Sherman Act claims. *Id.*, Dkt. #89.

In the instant action, the allegations against Mr. Beavers largely mirror those that she raised in the action before Judge Jones. For example, in the prior action, Plaintiff made identical allegations regarding bribery and former Gold Bar employee Karl Marjerle. *Id.*, Dkt. #62 at ¶ 3.9. Significantly, Judge Jones rejected all of Plaintiff's claims relying on her allegation of a vast retaliatory conspiracy, RICO enterprise or anti-trust scheme between Snohomish County, Gold Bar, the WSBA and their employees as "implausible". *Id.*, Dkt. #89 at 7-9 and 13.

Gold Bar Defendants now argue that Plaintiff's claims against Mr. Beavers are barred by the doctrine of *res judicata*. Dkt. #23 at 5-6. Gold Bar Defendants further argue that Plaintiff's claims against Mr. Beaver's are also time-barred as the events giving rise to Plaintiff's alleged injuries occurred more than three years prior to filing the instant action. *Id.* at 6-7. Finally, Gold Bar Defendants argue that Plaintiff has failed to allege sufficient facts against Defendants Beaver and Loen to support either a RICO claim or a First Amendment retaliation claim. *Id.* at 7-8 and 10-11. Plaintiff has failed to respond to this motion. "Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LCR 7(b)(2). For the reasons stated by Gold Bar Defendants in their motion, and because Plaintiff

ORDER
PAGE - 7

as failed to present any contrary legal authority, the Court agrees with Gold Bar Defendants and dismisses the claims against them in their entirety.

## C.  Snohomish County Defendants' Motion to Dismiss

The Court next turns to the Snohomish County Defendants' Motion to Dismiss.  Dkt. #28.  These Defendants argue that all of the claims against them should be dismissed because they are time barred, barred by the doctrine of *res judicata*, and Plaintiff fails to establish a cognizable claim against any of them.  Dkt. #28 at 2.

As an initial matter, the Court notes that Plaintiff's Amended Complaint and RICO Statement appear to raise a majority of the same allegations brought in the aforementioned case before Judge Jones.  As in that case, Plaintiff now alleges a multi-agency conspiracy to retaliate against her for exercising her constitutional rights and attempts to claim this alleged conspiracy amounts to the operation of a "RICO" enterprise.  Dkt. #19.  She also appears to raise new claims of defamation against two of the Snohomish County Defendants.  Because the Snohomish County Defendants are numerous, and because many of the references to them are merely to their job titles or other such "background information," the Court does not summarize all of the allegations here.  To the extent necessary, the Court discusses specific allegations in the context of Defendants' legal arguments below.

### 1.  Motion to Strike

The Court first addresses Snohomish County Defendants' request that the Court decline acceptance of Plaintiff's RICO Statement as untimely.  Dkt. #66 at 2.  The Court DENIES this request as MOOT.  For the reasons discussed herein, even considering the allegations contained in Plaintiff's RCO Statement, her claims fail as a matter of law.

ORDER
PAGE - 8

### 2. *Statute of Limitations*

Snohomish County Defendants argue that Plaintiff's Section 1983 claims are subject to a three-year statute of limitations, but many of her claims are outside of that limitation. Dkt. #28 at 11-12. As this action was commenced on December 28, 2015, any § 1983 claims arising before December 28, 2012 are time-barred. *See Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). A review of the 87-page Amended Complaint reveals that all claims stemming from allegations related to Mr. Pennington's complaints to police, allegations stemming from any purported failures to prosecute Plaintiff's enemies, as well as allegations that Sean Reay and Sara Di Vittorio yelled at Plaintiff or threatened her in 2012, are outside the statute of limitations and are now barred. *See*, *e.g.*, Dkt. #19 at ¶¶ 3.5, 3.13-3.17, 3.19, 3.26, 3.27, and 3.28. Further, any civil rights claims against Mr. Gibbs stemming from the alleged 2011 court hearing are also time-barred, as are any new allegations regarding his conduct as a member of the WSBA board of governors, a position he has not held since 2010. *Id.* at ¶¶ 2.14 and 3.54 and Dkt. #66 at 4, fn. 3. Further, there are no timely filed allegations of retaliation against Defendants Roe, Reay, Gibbs, Lewis, Di Vittorio, or Fine. *See* Dkt. #19. As a result, all of those claims are time-barred and will be dismissed.

### 3. *Res Judicata*

Snohomish County Defendants also argue that many of Plaintiff's claims are barred by the doctrine of *res judicata*. Dkt. #28 at 8-11. Under the doctrine of *res judicata*, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L.Ed.2d 210 (1979)). Disallowed claims include both those that were raised and those that "could have been raised in the prior action."

ORDER
PAGE - 9

*W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997).  The doctrine applies where there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.  *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013) (citing *Glickman*, 123 F.3d at 1192).   A dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) is considered a "final judgment on the merits."  *Federated Dept. Stores v. Moitie*, 452 U.S. 394, 399, 101 S. Ct. 2424, 69 L.Ed.2d 103 (1981); *Classic Auto Refinishing, Inc. v. Marino*, 181 F.3d 1142 (9th Cir.1999).

In the matter before Judge Jones, Plaintiff brought nearly identical claims against Snohomish County and Mr. Pennington.  Judge Jones dismissed Plaintiff's Complaint "with prejudice as to her retaliation, RICO, and Sherman Act claims against the Defendants she named in her complaint." *Block v. Snohomish County, et al.*, Case No. C14-0235RAJ, Dkt. #89 at 19.  With respect to the retaliation claim, Plaintiff had alleged retaliation based on Mr. Pennington's complaints to law enforcement, his allegedly harassing internet posts, his allegedly retaliatory WSBA complaints, and the Snohomish County Prosecuting Attorney's Office's alleged retaliatory failure to investigate or bring charges against Plaintiff's targets.  *See id.*, Dkt. #62 at ¶ ¶ 3.19, 3.36, 3.80, 3.81 and 3.84.  Plaintiff also alleged claims related to Messrs. Gibbs' and Fine's role on the WSBA disciplinary committee, and stemming from Mr. Gibbs' actions as a Snohomish County Superior Court Commissioner for a 2011 hearing.  *Id*. at ¶ ¶ 3.16 and 3.32.  Plaintiff also included nearly identical RICO claims against Snohomish County.  *See id.*  The Court agrees with Defendants that each of these claims share an identity with claims Plaintiff has alleged in the instant case, an identity or privity between parties, and were subject to a final judgment on the merits.  Accordingly, these claims will be dismissed.

Likewise, Judge Jones' dismissal order also dismissed with prejudice Plaintiff's claims against other parties which "rely on the allegations that the court rejected as implausible." *Block v. Snohomish County, et. al.*, C14-0235RAJ, Dkt. #89 at 19. Judge Jones specifically rejected as "implausible" all claims relying on Plaintiff's allegation of a vast retaliatory conspiracy, RICO enterprise, or anti-trust scheme between Snohomish County, Gold Bar, the WSBA, and their employees. *Id.* at 7-9 and 13. Accordingly, to the extent Plaintiff attempts to raise those claims again in this action, they are barred.

Plaintiff's arguments that her claims are not barred because she has named parties that were not previously named or permitted to be added in the matter before Judge Jones is unavailing. *See* Dkt. #44 at 6-7. Parties who share the same interests and were adequately represented in previous litigation are privies to the parties from previous litigation and their claims are subject to *res judicata*. *See Taylor v. Sturgell,* 553 U.S. 880, 893 (2008). "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940)); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam); *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972) ("*[R]es judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants.") The employer-employee relationship establishes privity when employer and employee interests are the same and were adequately represented. *See Josephs ex rel. Estate of Leibrock-Josephs v. Gallatin Cty.*, 385 F. App'x 671, 673 (9th Cir. 2010) *subsequent*

ORDER
PAGE - 11

*mandamus proceeding sub nom. In re Gallatin Cty.*, 450 F. App'x 624 (9th Cir. 2011).   Thus the Snohomish County Defendants who were not parties to the previous action are nonetheless in privity because they share the same interest, the dismissal of Plaintiff's claims, and their interests were adequately represented in the previous dismissed action for the same reasons they seek dismissal here.   Accordingly, the Court agrees that all claims relying on Plaintiff's allegation of a vast retaliatory conspiracy, RICO enterprise, or anti-trust scheme between Snohomish County, Gold Bar, the WSBA, and their employees should be dismissed because they are barred.

   *4.   Plaintiff's Remaining Claims*

   To the extent that Plaintiff's current claims arise from alleged actions falling within the statute of limitations and/or were not addressed by Judge Jones in her prior action, the Court now agrees with Snohomish County Defendants that Plaintiff fails to plead sufficient facts to support plausible claims.  *See* Dkt. #28 at 12-21.

   First, with respect to Plaintiff's First Amendment retaliation claim, she fails to allege facts to support the elements of such a claim.   Government officials may not take action in retaliation for protected expression or for the purpose of chilling that expression.  *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1984); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("the law is settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out"). This applies to retaliation for ordinary speech, petitioning the government for redress, legal actions, and other actions taken in furtherance of First Amendment activity.  *See Sorrano's Gasco*, 874 F.2d at 1313-14; *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 876 (9th Cir. 2008).   To establish a First

Amendment retaliation claim, a plaintiff must show (1) that a defendant took some form of state action which would deter a reasonable person from engaging in First Amendment activities and (2) that the "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog*, 469 F.3d at 1232.

Snohomish County Defendants argue that Plaintiff's claim must be dismissed because she fails to establish either the state actor or the retaliatory motive requirements.  Dkt. #28 at 14-18.  Specifically, Defendants argue that she fails to meet the state actor requirement with respect to Mr. Pennington and Mr. Gibbs, and fails to allege facts sufficient to support a retaliatory motive by any of the other Snohomish County Defendants.  *Id.*  The Court agrees.

Complaints Mr. Pennington allegedly made to law enforcement, the courts and the WSBA related to Plaintiff appear to have been made in his capacity as a private citizen and do not constitute government action.  Further, Plaintiff herself alleges that Mr. Pennington was on administrative leave from April 2014 through his termination in 2016, Dkt. # 19 at ¶ 3.32, and therefore claims from that time period cannot be considered state action.  Likewise, Plaintiff fails to allege that Mr. Gibbs acted within his authority when he allegedly drafted some WSBA complaints or sent emails to people at the WSBA.

Defendants also argue that Plaintiff's Amended Complaint fails to connect any of the claimed retaliatory actions to these Defendants or their alleged motivation.  Dkt. #28 at 17. Defendants further argue that she fails to allege any facts which could lead a reasonable person to plausibly infer such a connection.  The Court agrees with Defendants.  A review of Plaintiff's Amended Complaint reveals Plaintiff's failure to adequately plead facts sufficient to support her First Amendment retaliation claim.

ORDER
PAGE - 13

Likewise, Plaintiff fails to adequately support her RICO claim against these Defendants. To plead a civil RICO claim, Plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 496, 105 S.Ct. 3275, 3284–85 (1985)).   The "predicate acts" that constitute "racketeering activity" are listed at 18 U.S.C. § 1961(a); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

In this case, Plaintiff does not specifically identify a predicate act related to these Defendants.   *See* Dkts. #19 and #20.   At best, Plaintiff alleges that they engaged in extortion. To constitute a RICO predicate act, extortion must either meet the elements of the federal crime described in the Hobbs Act or as a state felony crime.   18 U.S.C. § 1951.   The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."   18 U.S.C. § 1952(b).   The "obtaining" element "requires a showing that a defendant received something of value from the victim of the alleged extortion and that the "thing of value can be exercised, transferred, or sold." *United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009).   Washington law similarly requires that the defendant "obtain or attempt to obtain by threat [the] property or services of the owner . . . ."   RCW 9A.56.110.

A review of Plaintiff's Amended Complaint and attendant RICO Statement reveals no allegations sufficient to satisfy these required elements.   First, Plaintiff does not identify that the Snohomish County Defendants obtained anything of value from Plaintiff by use of force or threat of use of force.   Further, Plaintiff does not identify the purported "RICO enterprise"

ORDER
PAGE - 14

which these Defendants are alleged to have conducted, nor does she allege any facts connecting Defendants to any other "enterprise" involving other Defendants.  In addition, Plaintiff has failed to properly identify a specific predicate act which Defendants are alleged to have committed, and has failed to identify the required "pattern" of two listed acts within ten years of each other with the threat of continuing activity.  *See* 18 U.S.C. § 1961(5); *Howard v. America Online*, 208 F.3d 741, 746 (9th Cir. 2000).

Finally, Snohomish County Defendants argue that, to the extent that the causes of action for Sherman Act violations, defamation, or ADA violations are alleged against them, Plaintiff has not pled any facts supporting such claims.  Dkt. #28 at 19-21.  Having reviewed Plaintiff's 87-page Amended Complaint in its entirety, the Court agrees.  While Plaintiff attempts to raise a defamation claim against Defendants Reay and Pennington, her own allegations defeat her claim.  Washington State law provides an absolute privilege from liability for defamation to executive officials properly discharging an official duty.  *Liberty Bank of Seattle, Inc. v. Henderson*, 75 Wash. App. 546, 562, 878 P.2d 1259 (1994); *Gold Seal Chinchillas, Inc. v. State*, 69 Wash.2d 828, 834, 420 P.2d 698 (1966).  Similarly, witness statements made in judicial proceedings are also subject to immunity, because "the administration of justice requires witnesses in a legal proceeding be able to discuss their views without fear of a defamation lawsuit."  *Deatherage v. State, Examining Bd. of Psychology*, 134 Wash. 2d 131, 136, 948 P.2d 828 (1997).  Washington courts also recognize that statements of opinion, as opposed to statements of fact, are not actionable. *Dunlap v. Wayne*, 105 Wash.2d 529, 537-39, 716 P.2d 842 (1986).

The allegations pertaining to Defendants Reay and Pennington stem from statement allegedly made during Court proceedings and/or are statements of opinion.  *See* Dkt. #19 at ¶ ¶

ORDER
PAGE - 15

3.72, 3.73 and 3.81 and *Block v. Snohomish County, et. al.*, C14-0235RAJ, Dkts. #12 at 1 and #41 at ¶ 4.  Accordingly, the allegations cannot support a defamation claim.

> *5.  Monell Claim*

Finally, the Court addresses Snohomish County Defendants' argument that Plaintiff fails to establish a *Monell*[4] claim against the County.  Dkt. #28 at 21-22.  The Court agrees.  In this case, Plaintiff has not sufficiently alleged any unconstitutional conduct against Snohomish County to support a plausible claim.  Indeed, Plaintiff has merely alleged that the previous County Executive had put in place policies of "'Let Pennington Do as He Pleases' and the policy 'Get Anne Block.'"  Dkt. #19 at ¶ 3.32.  There are no factual allegations tied to these allegations.  *See* Dkt. #19.  Additionally, to the extent that Plaintiff intends to claim that some County staff were "not trained, supervised, disciplined, or adequately screened for employment," *id.* at ¶ 3.32, such alleged negligent actions do not provide a basis for County liability under § 1983.  Without more, Plaintiff fails to plead sufficiently particular allegations to state a plausible claim.

For all of the above reasons, the claims against the Snohomish Defendants will be dismissed.

**D.  Kenyon Disend Defendants' Motion to Dismiss**

The Court next turns to the Kenyon Disend Defendants' Motion to Dismiss.  Dkt. #30.  Individual Defendants Kenyon, Soto, King and Sullivan are all current or former employees of co-Defendant Kenyon Disend, PLLC.  They are all identified by Plaintiff as "RICO defendants."  Dkt. #19 at ¶¶ 2.31-2.35.  In her Amended Complaint, Plaintiff alleges that in "May 2009," Kenyon Disend, Ms. Sullivan and Mr. Kenyon assisted defendant John Pennington in "quashing criminal assault charges" and are withholding public records relating

---

[4] *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

to this assistance.  *Id.* at ¶ 3.17.  Plaintiff further alleges that in "April 2011," Defendant Joe Beavers assisted Kenyon Disend in obtaining a legal services contract with the City of Gold Bar, and Ms. King was assigned to represent the city.  *Id.* at ¶ 3.20.  According to Plaintiff, Ms. King had some "involvement" in a WSBA complaint filed against her (Plaintiff) by a non-party, Dorothy Crowshaw in June of 2010.  *Id.* at ¶ 3.21.

Plaintiff goes on to allege that in "early 2011," Ms. King, without seeking permission from the Gold Bar City Council, filed a Motion for Sanctions against Plaintiff in a recall petition case that Plaintiff had filed against former Gold Bar Mayor Beavers.  *Id.* at ¶ 3.22. Then, in "late 2011," a Gold Bar Councilmember "stated" that "Margaret King is coming after you!" Plaintiff alleges these actions "amount to extortion, thus a predicate act under RICO." *Id.* at ¶ 3.24.

Plaintiff also alleges that in "late 2011," Ms. King filed an "ex-parte Motion" in an unidentified Snohomish County Superior Court matter after "notifying Plaintiff via email only hours before."  Dkt. #19 at ¶ 3.25.  According to Plaintiff, this Motion was heard by co-Defendant Snohomish County Commissioner Geoffrey Gibbs, a "personal friend to Michael Kenyon", even though "Washington State's Public Records Act prohibits a Commissioner from hearing any issues relating to public records."  Plaintiff states she was sanctioned as a result, and that such actions "amount to extortion, thus a predicate act under RICO."  *Id.* at ¶ 3.25.

Plaintiff alleges that in "January 2012," Ms. King, Mr. Kenyon and Ms. Soto conspired with co-Defendants Crystal Hill-Pennington, Pennington and Beavers to write and file a WSBA complaint against her using Gold Bar staff and public records, and that Kenyon Disend billed Gold Bar taxpayers for doing so.  *Id.* at ¶ 3.26.

Plaintiff then asserts a litany of seemingly unrelated allegations:

ORDER
PAGE - 17

- On May 13, 2014, defendant Sean Reay ("Reay") "called Kenyon Disend." *Id.* at ¶ 3.59;

- At an unspecified time and in an unidentified matter, someone named Krista Dashtestani "personally met Michael Kenyon in court proceeding [sic] involving Hill-Pennington." *Id.* at ¶ 3.70;

- Co-Defendant Cary Coblantz conspired with co-Defendant Sandra Sullivan to have Plaintiff charged with stalking.  On September 21, 2015, Plaintiff published articles on her Gold Bar Reporter blog entitled, "Duvall City attorney Sandra Sullivan (Meadowcraft) [sic] quashing criminal charges for political favors, EXPOSED" and "Michael Kenyon's Dirty Bag of Secrets Part II." *Id.* at ¶ 3.83;

- In 1993, Mr. Kenyon was the City Attorney for Kelso at the time Pennington was a suspect in the rape of a 5 year old girl in Cowlitz County.  Mr. Kenyon "owns one of the largest municipal law firms in Washington State." *Id.* at ¶ 3.89; and

- From May 2014 to present, Mr. Kenyon "sign[s] on to [Block's blog] the Gold Bar Reporter on an almost daily basis." *Id.* at ¶ 3.99.

While the Amended Complaint generally alleges that all Defendants are liable under her various causes of action, she fails to identify any specific Defendants with the exception of "Count One", in which she identifies "the RICO defendants", and "Count Three", in which she notes that "many defendants" committed the alleged acts.  *See id.* at ¶ ¶ 5.1a – 5.1b and 5.3d-5.3e.

The Kenyon Disend Defendants now argue that Plaintiff's claims are barred by the statute of limitations, Plaintiff's claims are barred by the doctrine of *res judicata*, Plaintiff fails to allege facts sufficient to support a § 1983 claim against the Kenyon Disend Defendants, Plaintiff fails to assert sufficient allegations to support a First Amendment retaliation claim against any Kenyon Disend Defendants, Plaintiff fails to assert sufficient allegations to support a RICO claim against any Kenyon Disend Defendants, Plaintiff fails to assert sufficient allegations to support a Sherman Anti-Trust Act claim against any of the Kenyon Disend Defendants, and Plaintiff fails to assert any conduct pertaining to the Kenyon Disend Defendants in support of her defamation or ADA claims.   Dkt. #30 at 6-18.   The Court addresses each of these claims in turn.

### 1. *Motion to Strike*

As an initial matter, the Kenyon Disend Defendants ask the Court to strike Plaintiff's opposition to their motion as untimely.  Dkt. #75 at 2-4.  While the Court acknowledges that due to the volume of parties involved in this action, the number of motions and related briefs is also numerous, it appears the Kenyon Disend Defendants have misconstrued the various filings to date.  First, the Court notes that Plaintiff filed her opposition to the instant motion on March 23, 2016.   Dkt. #69.   On the docket, the Response is directly linked to Kenyon Disend Defendants' Motion to Dismiss, as noted in the document description.   *Id.* (linking the brief to the motion at Dkt. #30).   The Response filed prior to that date is linked to the Snohomish County Defendants' Motion to Dismiss.  Dkt. #44 (linking the brief to the motion at Dkt. #28). Thus, contrary to Kenyon Disend Defendants' assertion, Plaintiff has filed only one response to their motion.

However, the Court agrees that Plaintiff's response was untimely.  Kenyon Disend Defendants' Motion to Dismiss was noted for consideration on March 25, 2016.  Dkt. #30. Accordingly, Plaintiff's response was due no later than Monday, March 21, 2016.  LCR 7(d). Plaintiff did not file her response until March 23, 2016.  Dkt. #69.  Although Plaintiff was granted a two-day extension of time to respond to Snohomish County Defendants' motion to dismiss,[5] she did not seek, nor was she granted, such an extension to respond to Kenyon Disend Defendants' motion.  *See* Dkts. #43 and #46.  Accordingly, the Court GRANTS Defendants' motion and STRIKES the response as untimely.

### 2.  *Statute of Limitations*

The Court now addresses Kenyon Disend Defendants' statute of limitations argument. Like Snohomish County Defendants, the Kenyon Disend Defendants argue that Plaintiff's Section 1983 claim is subject to a three-year statute of limitations and that her RICO claim is subject to a four-year statute of limitations.  Dkt. #30 at 6-7.  Defendants further argue that because Plaintiff initiated this action on December 28, 2015, all 42 U.S.C. § 1983 claims arising before December 28, 2012 and all RICO claims arising before December 28, 2011 are time barred.  *Id.*

The Court agrees with Defendants that Plaintiff has failed to demonstrate the majority of her claims against the Kenyon Disend Defendants are within the applicable statute of limitations.  As noted above, Plaintiff alleges that Ms. King, Mr. Kenyon and Ms. Soto filed a bar complaint against her in "early 2012" (Dkt. #19 at ¶ 3.26), that Ms. King filed various motions "in early 2011" (*Id.* at ¶ 3.22) and "in late 2011" (*Id.* at ¶ 3.24), and that Ms. King was

---

[5]  Although Plaintiff did not specify the motion for which she sought an extension of time to respond, she filed her motion for extension of time contemporaneously with her response to Snohomish County Defendants' Motion to Dismiss, which was two days late and the only response due at the time.  Accordingly, the Court interpreted the motion as one to accept her late-filed response and nothing more.

ORDER
PAGE - 20

involved in filing a bar complaint against Plaintiff in "June 2010" (*Id.* at ¶ 3.21).  These actions occurred well outside the three-year statute of limitations for 42 U.S.C. § 1983 actions.  The remaining allegations relate to actions allegedly occurring between 1993 and 2015.  *Id.* at ¶¶ 3.59-3.99.  Any claim arising before December 28, 2012, related to the Section 1983 allegations are time barred.  Likewise, to the extent Plaintiff alleges Defendants' involvement in actions prior to December 28, 2011, as related to her RICO claim, those actions are also time barred.  The Court further discusses the claims with respect to the actions alleged in the 2013-2015 timeframe below.

   *3. Res Judicata*

   Kenyon Disend Defendants next argue that certain of Plaintiff's claims are barred by the doctrine of *res judicata*.  Dkt. #30 at 7-10.  Defendants rely on the decision made by Judge Jones in Plaintiff's aforementioned case in this Court, but admit that they were not parties to that lawsuit.  However, Defendants note that Plaintiff made the same allegations against them in her RICO statement in that case, that she does in the instant matter.  Dkt. #30 at 8-9.  Defendants also note that to the extent Plaintiff alleges Fourteenth Amendment due process violations related to Ms. King's filing of an "ex parte Motion" heard before co-Defendant Gibbs, *see* Dkt. #19 at 4 and ¶ 3.25, those claims were already adjudicated in her unsuccessful appeal to Division I of the Washington State Court of Appeals in its unpublished decision dated September 23, 2013.  *See Block v. City of Gold Bar*, 176 Wn. App. 1031 (2013).

   The Court has already set forth the legal authority for the doctrine of *res judicata* above.  In her prior action before Judge Jones, Plaintiff brought many of the claims raised in the instant matter against a large group of defendants, including many of the same defendants in the instant action.  *See Block v. Snohomish County, et. al.*, C14-0235RAJ.  As noted above, Judge

ORDER
PAGE - 21

Jones dismissed Plaintiff's Complaint "with prejudice as to her retaliation, RICO, and Sherman Act claims against the Defendants she named in her complaint", and also with respect to her claims against other parties which "rely on the allegations that the court rejected as implausible." *Id.*, Dkt. # 89 at 19.

While Kenyon Disend Defendants were not named parties in the matter before Judge Jones, they were included as "alleged wrongdoers" in Plaintiff's RICO Statement in that case, and she referred to them as "defendants." *Id.*, Dkt. #74 at 9.  Specifically, Plaintiff alleged that Mr. Kenyon, Ms. Soto and Ms. King:

- "Wrote deceptive and knowingly untrue bar complaints [against Plaintiff]" (*Id.* at 9);

- Were purportedly involved in Crowshaw's bar complaint against Plaintiff (*Id.* at 23);

- Illegally withheld public records involving Pennington (*Id.* at 27);

- Met with a WSBA investigator in October 2013 "to further the predicate acts of the [RICO] Enterprise" (*Id.* at 37);

- Tried to extort Plaintiff by filing a Motion for Sanctions in a recall matter in February 2011 (*Id.* at 25); and

- Used City officials and resources to file a bar complaint against Plaintiff in January 2012 (*Id.* at 28 and 36).

These are identical to the claims that Plaintiff now raises in the instant matter.  *Compare id.* at 9-36 *with* Dkt. #19 at ¶¶ 3.17, 3.21, 3.22, 3.24 and 3.26.

ORDER
PAGE - 22

The Court agrees that these claims are now barred under the doctrine of *res judicata*. These claims share an identity with the claims that Plaintiff alleged in her prior matter, as well as an identity or privity between parties, and were subject to a final judgment on the merits.

    *4.   Plaintiff's § 1983, First Amendment Retaliation, RICO, Sherman Anti-Trust Act, Defamation and ADA Claims*

To the extent that Plaintiff's current claims arise from alleged actions falling within the statute of limitations and/or were not addressed by Judge Jones in her prior action, the Court now agrees with Kenyon Disend Defendants that Plaintiff fails to plead sufficient facts to support plausible claims.  *See* Dkt. #30 at 10-18.

First, with respect to Plaintiff's Section 1983 claim, Plaintiff fails to allege whether she names the Kenyon Disend Defendants as state actors or in their individual capacities.  To the extent that she alleges they acted in their capacities as a private law firm and private individuals, they cannot have liability under § 1983.  *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

To the extent that Plaintiff alleges they were state actors, she fails to allege sufficient facts to support any plausible claim against them.  Indeed, Plaintiff's claims fail for a number of reasons.  With respect to her First Amendment retaliation claim, she fails to allege facts to support the elements of such a claim.  The Court has already discussed the elements for such a claim above.  Kenyon Disend Defendants argue that Plaintiff's claim must be dismissed because she fails to establish the retaliatory motive requirements.  Dkt. #30 at 13-15. Defendants argue that Plaintiff's facts and allegations are merely speculative, and that the Amended Complaint fails to connect any of the claimed retaliatory actions to these Defendants or their alleged motivation.  *Id.*  Defendants further argue that she fails to allege any facts which could lead a reasonable person to plausibly infer such a connection.  The Court agrees

ORDER
PAGE - 23

with Defendants.   A review of Plaintiff's Amended Complaint reveals Plaintiff's failure to adequately plead facts sufficient to support her First Amendment retaliation claim.

Likewise, Plaintiff fails to adequately support her RICO claim against these Defendants. In this case, Plaintiff does not specifically identify a predicate act related to these Defendants. *See* Dkts. #19 and #20.  At best, Plaintiff alleges that they engaged in extortion.  However, the only mention of extortion appears to be related to Ms. King's filing of a motion for sanctions against Plaintiff in a then-pending lawsuit initiated by Plaintiff, Ms. King's filing of another motion in another then-pending lawsuit initiated by Plaintiff, and Mr. Kenyon having the status of "personal friend" to the Court Commissioner who ruled on Ms. King's motion.  *See* Dkt. #19 at ¶ ¶ 3.24-3.25.  Just as this Court has determined with respect to the Snohomish County Defendants, a review of Plaintiff's Amended Complaint and attendant RICO Statement likewise reveals no allegations sufficient to satisfy the required RICO elements with respect to the Kenyon Disend Defendants.  First, Plaintiff does not identify that Kenyon Disend obtained anything of value from Plaintiff by use of force or threat of use of force.  Further, Plaintiff does not identify the purported "RICO enterprise" which Defendants are alleged to have conducted, nor does she allege any facts connecting Defendants to any other "enterprise" involving other Defendants.  In addition, Plaintiff has failed to properly identify a specific predicate act which Defendants are alleged to have committed, and has failed to identify the required "pattern" of two listed acts within ten years of each other with the threat of continuing activity.  *See* 18 U.S.C. § 1961(5); *Howard v. America Online*, 208 F.3d 741, 746 (9th Cir. 2000).

Finally, Kenyon Disend Defendants argue that, to the extent that the causes of action for Sherman Act violations, defamation, or ADA violations are alleged against them, Plaintiff has

ORDER
PAGE - 24

not pled any facts supporting such claims.  Dkt. #30 at 17-18.  Having reviewed Plaintiff's 87-page Amended Complaint in its entirety, the Court agrees.

For all of the above reasons, the claims against the Kenyon Disend Defendants will be dismissed.

### E.  City of Duvall Defendants' Motion to Dismiss

Finally, the Court addresses the City of Duvall Defendants' Motion to Dismiss.  Dkt. #35.  In her Complaint, Plaintiff alleges that the City of Duvall and its employees, "as a matter of policy, custom and usage of the City," retaliated collectively and in concert and in agreement with other named defendants to wrongfully injure her for exercising her constitutional rights.  Dkt. #19 at ¶ 2.26.  The City of Duvall is not identified as a RICO defendant.  *Id.*  Plaintiff also alleges that Sergeant Batiot acted in concert with others, under color of law, to deprive her of her constitutional rights by retaliating against her for exercising those rights.  *Id.* at ¶ 2.27.  Plaintiff further alleges that Sergeant Batiot violated RICO laws by advising co-Defendants John and Crystal Pennington to seek a petition for a restraining order, based solely on plaintiff's First Amendment protected free speech and news reporting.  *Id.* at ¶ 3.67.  Plaintiff also alleges that Sergeant Batiot called her (Plaintiff's) business partner, leaving a threatening message "stating that if plaintiff did not call her back she would come over to [plaintiff's] house in Gold Bar."  *Id.* at ¶ 3.76.  Apparently, because Sergeant Batiot works for Duvall in King County, and Plaintiff lives in Snohomish County, "plaintiff viewed this as an extortionist wire threat to harm plaintiff and a gross violation of plaintiff's civil rights over matters protected under the First Amendment."  Dkt. #19 at ¶ 3.76.

Plaintiff next alleges that City of Duvall Defendants continue to withhold public records, therefore "retaliating against plaintiff for exercising her First Amendment protected

rights." *Id.* at ¶ 3.79.  Plaintiff currently has a lawsuit pending in King County Superior Court against the City of Duvall regarding public records claims.  *Id.*

Plaintiff goes on to allege that Sergeant Batiot conspired with the Penningtons to have her charged with stalking crimes between March 2015 and June 19, 2015.  *Id.* at ¶ 3.83. Plaintiff claims that Sergeant Batiot made false statements that (1) plaintiff had been treated for mental health issues; (2) plaintiff was unemployed; (3) plaintiff was born on June 16, 1967; (4) plaintiff had hired people to go to the Pennington residence; (5) plaintiff had gone to the Pennington residence and made contact with their children; and (6) plaintiff was stalking Batiot.  *Id.* at ¶ 3.77.  Plaintiff further alleges that Sergeant Batiot made false statements in a Shoreline District Court case.  *Id.* at ¶ 3.80.  Relying on these allegations, Plaintiff asserts a claim for defamation against Sergeant Batiot.  *Id.* at ¶ 8.

Plaintiff then asserts, against Sergeant Batiot only, various RICO claims for her alleged cooperation in the commission of RICO predicate acts.  *Id.* at ¶ 2.27 and ¶ ¶ 5.1-5.3 and Dkt. #20 at 9.

The allegations against Sergeant Batiot in plaintiff's RICO statement are taken directly from the allegations found in Plaintiff's Amended Complaint.  Dkt. #20.  Furthermore, Plaintiff's RICO statement appears to be a copy of two prior RICO statements filed by other plaintiffs in this District in 2013 and 2015.  *Compare Scannell v. WSBA, et al.*, Case No. C12-0683SJO, Dkt. #74-1, ¶ ¶8-358 and *Scheidler v. Avery, et al.*, Case No. C12-5996RBL, Dkt. #68-1, ¶ ¶ 8-130, *with* Dkt. # 20 at 25-27 (using identical predicate acts language between the three statements).

Finally, Plaintiff asserts unspecified causes of action under the Sherman Anti-Trust Act and the Americans With Disabilities Act.  Dkt. #19 at ¶ ¶ 6-7.

ORDER
PAGE - 26

The City of Duvall Defendants argue that Plaintiff fails to allege sufficient facts to support a First Amendment retaliation claim by any of the City of Duvall Defendants, a *Monell* claim against the City of Duvall, a RICO claim against Defendant Batiot, a defamation claim against Defendant Batiot, a Sherman Act violation against any of the City of Duvall Defendants or an ADA claim against any of the City of Duvall Defendants.  Dkt. #35 at 6-14.  The Court addresses each of these claims in turn.

### 1.  *Motion to Strike*

As an initial matter, the City of Duvall Defendants ask the Court to strike Plaintiff's opposition to their motion as untimely.  Dkt. #77 at 2-3.  The Court GRANTS the motion.  City of Duvall Defendants' Motion to Dismiss was noted for consideration on March 25, 2016.  Accordingly, Plaintiff's response was due no later than Monday, March 21, 2016.  LCR 7(d).  Plaintiff did not file her response until March 24, 2016.  Dkt. #70.  Although Plaintiff was granted a two-day extension of time to respond to one other motion to dismiss (as already discussed above), she did not seek, nor was she granted, such an extension to respond to City of Duvall Defendants' motion.  *See* Dkts. #43 and #46.  Even if she had such an extension, she filed her response three days late.  Accordingly, the Court STRIKES the response as untimely.

### 2.  *First Amendment Retaliation Claim*

The Court now addresses Plaintiff's First Amendment retaliation claim against the City of Duvall Defendants.  As already discussed above, government officials may not take action in retaliation for protected expression or for the purpose of chilling that expression.  *Sorrano's Gasco, Inc. v. Morgan*, supra.  Like the Snohomish County and Kenyon Disend Defendants, the City of Duvall Defendants argue that Plaintiff's claim must be dismissed because she fails to establish the retaliatory motive requirements.  Dkt. #35 at 7-9.  Defendants note that Plaintiff

ORDER
PAGE - 27

has failed to allege that Defendant Batiot sought an order of protection under color of law, and instead describes an order of protection that Defendant Batiot sought as a private individual. *Id.* at 7-8.  Accordingly, Defendants argue that Plaintiff's claim against Defendant Batiot fails as a matter of law.  Defendants also note that Plaintiff has failed to allege any connection between the asserted actions and Defendant Batiot's alleged retaliatory motive.  *Id.* at 8. Likewise, Defendants highlight the fact that Plaintiff has failed to allege any retaliatory motive for the investigation of the Penningtons' complaint or how such actions by Defendant Batiot had a chilling effect on her speech. *Id.* at 8-9.

The Court agrees with Defendants.  A review of Plaintiff's Amended Complaint reveals Plaintiff's failure to adequately plead facts sufficient to support her First Amendment retaliation claim.[6]  In particular, Plaintiff fails to allege that Defendant Batiot was acting under the color of law in pursuing an order of protection, or any facts in support of a retaliatory motive.  "[M]ere speculation that defendants acted out of retaliation is not sufficient." *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).  Accordingly, the claim will be dismissed.

### 3. *Monell Claim*

City of Duvall Defendants next allege that Plaintiff has failed to allege facts sufficient to support a *Monell* claim against the Defendant City.  Dkt. #35 at 9-10.  The Court agrees.  In this case, Plaintiff has not alleged any unconstitutional conduct against the City of Duvall to support a plausible claim.  Indeed, Plaintiff has merely alleged that the City "as a matter of policy, custom and usage of the City, and with the power conferred upon them by King County, retaliated collectively and in concert and agreement with other named defendants against the

---

[6]  Moreover, this Court notes that Plaintiff's own speech does not appear to have been chilled in any manner as she continues to pursue legal action and address the Defendants through her blog.

ORDER
PAGE - 28

Plaintiff to wrongfully injure Plaintiff for exercising her rights."  Dkt. #19 at ¶ 2.26.  Plaintiff

points to no City conduct, by policy, custom or otherwise, that directly resulted in any alleged

constitutional violation.  Without more, Plaintiff fails to plead sufficiently particular allegations

to state a plausible claim.  Accordingly, this claim will also be dismissed.

### 4.  RICO Claim

City of Duvall Defendants next argue that Plaintiff has failed to allege sufficient facts to

support a RICO claims.  Dkt. #35 at 10-12.  The Court has already discussed the civil RICO

requirements above.  In this case, Plaintiff does not specifically identify a predicate act related

to Defendant Batiot.  *See* Dkts. #19 and #20.  At best, Plaintiff alleges that Defendant Batiot

was involved in a conspiracy with other Defendants that also engaged in extortion and/or that

she engaged in an "extortionist wire threat."  *See*, *e.g.*, Dkts. #19 at ¶ 3.76 and #20 at 9, 71 and

74-77.  A review of Plaintiff's Amended Complaint and attendant RICO Statement reveals no

allegations sufficient to satisfy the required elements.  First, Plaintiff does not identify that

Defendant Batiot obtained anything of value from Plaintiff by use of force or threat of use of

force.  Further, Plaintiff does not identify the purported "RICO enterprise" which Defendant

Batiot is alleged to have conducted, nor does she allege any facts connecting Defendant Batiot

to any other "enterprise" involving other Defendants.  In addition, Plaintiff has failed to

properly identify a specific predicate act which Defendant Batiot is alleged to have committed,

and has failed to identify the required "pattern" of two listed acts within ten years of each other

with the threat of continuing activity.  *See* 18 U.S.C. § 1961(5); *Howard v. America Online*,

208 F.3d 741, 746 (9th Cir. 2000).  For these reasons, the Court agrees that this claim should be

dismissed.

ORDER
PAGE - 29

### 5. Defamation Claim

City of Duvall Defendants next assert that Plaintiff has failed to plead sufficient facts to support a defamation claim against Defendant Batiot. Dkt. #35 at 12-14. A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). In the instant matter, Plaintiff has alleged that Defendant Batiot made a number of false statements about her, that caused her damage. Dkt. #19 at ¶¶ 3.77-3.78. However, it appears from Plaintiff's allegations that these statements were all made during judicial proceedings related to Defendant Batiot's petition for a protective order. *Id.* Such statements are privileged under the judicial proceeding privilege. Indeed, the Washington Supreme Court has noted that the absolute privilege defense generally applies to statements made in the course of judicial proceedings and acts as a bar to any civil liability. *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475, 564 P.2d 1131 (1977). As a result, the claim will be dismissed.

### 6. Sherman Act and ADA Claims

Finally, City of Duvall Defendants argue that, to the extent that the causes of action for Sherman Act violations or ADA violations are alleged against either the City of Duvall or Defendant Batiot, Plaintiff has not pled any facts supporting such claims. Dkt. #35 at 14. Having reviewed Plaintiff's 87-page Amended Complaint in its entirety, the Court agrees. Accordingly, these claims will also be dismissed.

## F. Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v.*

*Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure for the deficiencies in Plaintiff's Complaint, particularly given the invalidity of Plaintiffs' primary legal assertions as discussed above. Moreover, considering Plaintiff's litigation history in this and other courts, and viewing the record in this case as a whole, it is clear to the Court that Plaintiff has engaged in this litigation vexatiously and as a means of harassment of the Defendants, and not merely to seek justice for her alleged injuries. For that reason, the Court finds dismissal with prejudice appropriate.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1.  The Motion to Dismiss filed by the Gold Bar Defendants (Dkt. #23) is GRANTED. The claims against Defendants City of Gold Bar, Joe Beavers and Linda Loen are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

2.  The Motion to Dismiss filed by the Snohomish County Defendants (Dkt. #28) is GRANTED. The claims against Defendants Sara DiVittorio, Seth Fine, G. Geoffrey Gibbs, Brian Lewis, John Pennington, Sean Reay, Mark Roe, and Snohomish County are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

3.  The Motion to Dismiss filed by the Kenyon Disend Defendants (Dkt. #30) is GRANTED.  The claims against Defendants Kenyon Disend, PLLC, Michael Kenyon, Margaret King, Ann Marie Soto and Sandra Sullivan are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

4.  The Motion to Dismiss filed by the City of Duvall Defendants (Dkt. #35) is GRANTED.  The claims against Defendants City of Duvall and Lori Batiot are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

5.  The Court will address the remaining four Motions to Dismiss (Dkts. #39, #45, #51 and #73), as well as the pending Motion for Sanctions (Dkt. #47) and three pending Motions to Intervene (Dkts. #37, #40, and #41), by separate Orders.

6.  The Clerk shall mail a copy of this Order to the *pro se* parties and proposed Intervenors via U.S. Mail.

DATED this 31st day of March 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE


ORDER
PAGE - 32