UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNE BLOCK, an individual,          )   CASE NO. C15-2018RSM
                                    )
          Plaintiff,                )
                                    )
     v.                             )   ORDER REGARDING PENDING
                                    )   MOTIONS
                                    )
WASHINGTON STATE BAR                )
ASSOCIATION, *et al.*,              )
                                    )
          Defendants.               )
_____    )

## I.      INTRODUCTION

THIS MATTER comes before the Court on the following pending motions:

1.  Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) filed by Cary Coblantz and King County (collectively "King County Defendants") (Dkt. #39);

2.  Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6) filed by Defendant Mark Plivilech (Dkt. #45);

3.  Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), *inter alia*, filed by Defendants Sara Andeen, Kevin Bank, Kathryn Berger, Keith Mason Black, Stephanie Bloomfield, Michele Nina Carney, S. Nia Renei Cottrell, William Earl Davis, Stephania Camp Denton, Linda Eide, Doug Ende, Marcia Lynn Damerow Fischer, William McGillin, Michael Jon Myers, Joseph Nappi Jr., Lin O'Dell, Allison Sato, Ronald Schaps, Julie Shankland, Marc Silverman, Todd R. Startzel and Washington State Bar Association ("WSBA") (collectively "WSBA Defendants") (Dkt. #51); and

ORDER
PAGE - 1

4. Motion for Sanctions filed by Defendant Kenyon Disend, PLLC ("Kenyon Disend") (Dkt. #47).[1]

For the reasons discussed herein the Court now GRANTS each of the Defendants' motions and dismisses the claims against those Defendants in their entirety and with prejudice, as further discussed below. The Court also GRANTS Kenyon Disend's motion for sanctions for the reasons discussed below.

## II.    BACKGROUND

On December 28, 2015, Plaintiff filed a Complaint naming 56 different Defendants and alleging a variety of claims ranging from Racketeer Influenced and Corrupt Organizations ("RICO") Act violations to false reporting to fraud. *See* Dkt. #1. On February 18, 2016, Plaintiff filed a "second" Amended Complaint.[2] Dkt. #19. Plaintiff's Amended Complaint contains 87 pages of allegations against 53 different local government and/or private entities and individuals. Dkt. #19. According to Plaintiff, she "brings a civil rights action [] under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on and continuing attempts to punish [her] right to engage in protected First Amendment activities . . . ." *Id.* at 4-5. In addition, Plaintiff makes a number of civil RICO claims and has filed a separate, proposed RICO Statement in support of those claims. Dkts. #19 at 77-79 and #20. The above described motions to dismiss and for sanctions followed.

---

[1]  The Court will address the remaining Motion to Dismiss (Dkt. #73) on or near its noting date, as well as the three pending Motions to Intervene (Dkts. #37, #40, and #41), a Second Motion to Disqualify (Dkt. #87), a Motion to Set Aside Order (Dkt. #93), a Motion for Preliminary Injunction (Dkt. #85) and a Motion for Stay (Dkt. #100), in separate Orders.

[2]  The Court notes that although Plaintiff characterized the amendment as a "second" amended pleading, it is actually a first Amended Complaint as no other prior amendments had been filed. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the "second" amendment was timely.

ORDER
PAGE - 2

The Court will discuss facts specific to the various parties below. However, for additional context to these motions, the Court notes that Plaintiff is no stranger to this Court. In addition to the instant matter, she has filed two prior actions. *Block v. Chao*, Case No. C08-1850JLR and *Block v. Snohomish County, et al.*, Case No. C14-0235RAJ. The latter action included many of the same allegations against many of the same Defendants as the instant matter. Further, while Plaintiff is proceeding *pro se* in the instant action, she is also an attorney admitted to practice in Washington. However, according to Washington State Bar Association ("WSBA") records, her license is currently suspended. *See* https://www.mywsba.org/LawyerDirectory/LawyerProfile.aspx?Usr _ID=37640 (*last visited* 3/29/2016). At least some of the allegations she makes in this action stem from apparent disbarment proceedings before the WSBA. Dkt. #19 at 47, 55-56 and 59.

The Court also finds relevant Plaintiff's conduct in her prior case before the Honorable Richard A. Jones. In that case, although not his typical practice, Judge Jones noted that Plaintiff's litigation in this Court appears to be part of a much larger campaign. Case No. C14-0235RAJ, Dkt. #61 at 2. Plaintiff's conduct in that case resulted not only in the dismissal of her claims, but also in sanctions. *See id.*, Dkts. #6, #78, #107. That case appears to be ongoing. The Court highlights the prior case because it appears the instant action is also part of a larger campaign against Defendants. As further discussed below, Plaintiff appears to be using her litigation as a way to attempt to punish them by hauling them into court to defend against primarily meritless claims. For whatever reasons, it appears that Plaintiff feels she has been wronged by Defendants and sees the judicial system not necessarily as a forum in which she will receive justice, but as a tool to use against the Defendants.[3]

---

[3]   As this Court previously noted, evidence of this intent can be found in Plaintiff's RICO Statement itself. Dkt. #84 at 3, fn. 3.

ORDER
PAGE - 3

On March 31, 2016, this Court issued an Order granting four motions to dismiss, which dismissed claims against numerous defendants with prejudice, including all claims against the Kenyon Disend Defendants. Dkt. #84. The Court found that many of Plaintiff's claims fell outside the applicable statutes of limitations, and that many of her claims lacked any evident factual bases. *Id.* With that context, the Court turns to Defendants' instant motions.

### III.   DISCUSSION

**A. Standards of Review**

*1. Federal Rule of Civil Procedure 12(b)(2)*

Federal Rule of Civil Procedure 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of his or her Complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Where, as here, the motion is based on written materials rather than after an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Schwarzenegger,* at 800. Uncontroverted factual allegations must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

ORDER
PAGE - 4

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.* 95 Wn.App. 462, 465, 975 P.2d 555 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger,* at 800-01.

The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). General jurisdiction exists over a non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger,* at 801. In the absence of general jurisdiction, the court may still exercise specific jurisdiction over a non-resident defendant. To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related

ORDER
PAGE - 5

activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial,* 381 F.3d 948, 960-61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

a.  General Jurisdiction

A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are "substantial" or "continuous and systematic." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

b.  Specific Jurisdiction

As noted above, in the Ninth Circuit, specific jurisdiction is analyzed using a three-part test: First, the nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; second, the claim must be one which arises out of or relates to the nonresident defendant's forum-related activities; and third, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.  If the plaintiff is successful at establishing the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.

The first prong of the test is analyzed under either a "purposeful availment" standard or a "purposeful direction" standard, which are two distinct concepts. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  Generally for claims sounding in contract, courts apply a "purposeful availment" analysis, asking whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum State,

ORDER
PAGE - 6

thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802.  For claims sounding in tort, courts generally apply a "purposeful direction" test, looking to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Schwarzenegger*, 374 F.3d at 802-03.  To establish purposeful direction, the plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)).

### 2.  *Federal Rule of Civil Procedure 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) authorizes a court to dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3).  Plaintiff has the burden of proving that venue is proper in the District in which the suit was initiated.  *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979).  28 U.S.C. § 1391 governs venue in civil actions, and provides that "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .".  "[I]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand [a 12(b)(3)] motion to dismiss."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quotation omitted).  The Court may consider evidence outside the pleadings when determining venue, and the presence of contradictory evidence requires the court to "draw all reasonable inferences in favor of the non-

ORDER
PAGE - 7

moving party and resolve all factual conflicts in favor of the non-moving party."  *Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133, 1137 (9th Cir. 2004).

### 3.  *Federal Rule of Civil Procedure 12(b)(5)*

Under Federal Rule of Civil Procedure 12(b)(5), a Complaint may be dismissed for "insufficient service of process."  Sufficiency of service is governed by Federal Rule of Civil Procedure 4.  Plaintiff is responsible for ensuring that a Summons be served with a copy of the Complaint to each defendant, and service must be accomplished by any person who is at least eighteen years old and who is not a party to the action.  Federal Rule of Civil Procedure 4(c).

Unless service is waived by the defendant or service is accomplished by a United States marshal, a plaintiff must provide proof of service to the Court by way of the server's affidavit.  Fed. R. Civ. P. 4(l)(1).  Failure to provide service does not affect the validity of service, and the Court may permit proof of service to be amended.  Fed. R. Civ. P. 4(l)(3).  Additionally,

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

### 4.  *Federal Rule of Civil Procedure 12(b)(6)*

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Absent facial plausibility, Plaintiffs' claims must be dismissed.  *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents for which it has taken judicial notice.  *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Here, the Court has taken judicial notice of, and considers herein, documents filed in Plaintiff's other cases in this Court, and specifically those filed in the aforementioned action before Judge Jones.  Judicial notice is appropriate because the documents presented are matters of public record, having been filed on the public docket in this Court.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### c.  Mark Plivilech's Motion to Dismiss

The Court first addresses Mr. Plivilech's Motion to Dismiss.  Dkt. #45.  Mr. Plivilech, who is proceeding *pro se*, has moved to dismiss Plaintiff's claims against him under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6).  *Id.* Plaintiff has failed to respond to this motion.  Based on the record before it, the Court now dismisses all claims against Mr. Plivilech, because, even if there were no deficiencies regarding jurisdiction, venue or service of process, Plaintiff has failed to state a plausible claim against Mr. Plivilech as required under Rule 12(b)(6).

Mr. Plivilech asserts in his motion that he is not an attorney, he does not know Defendant, his wife was a hearing officer involved with Plaintiff but he was not involved with

ORDER
PAGE - 9

those proceedings, and he had not even heard of Plaintiff until he was served with the Complaint.  Dkt. #45 at 2.  Nothing in the record refutes those assertions.

In her Amended Complaint, Plaintiff alleges that Mr. Plivilech conspired with his wife and other Defendants to retaliate against her.  Dkt. #19 at ¶ 2.19.  She also alleges he is a RICO Defendant.  *Id.*  The sum total "facts" alleged to support these claims are as follows:

- Mr. Plivilech lives in a house that Plaintiff asserts was obtained by exploiting an elderly non-party who had previously owned the house;

- Mr. Plivilech and his wife obtained a post office box in Duvall, even though they lived in Spokane and had no ties with Duvall; and

- Mr. Plivilech is a "convicted killer" who went to the house of another non-party and told her that he would "soon own her home".

Dkts. #19 at ¶ ¶ 3.39, 3.42 and 3.56 and #20 at 7, 47 and 62.  None of these allegations support a retaliation or RICO claim against Mr. Plivilech, or even give rise to the inference of any plausible claims.  Nor is it clear how these actions are connected to Plaintiff.  Thus, the Court agrees that any claim against Mr. Plivilech individually should be dismissed in its entirety.

Further, as discussed below, the Court will dismiss Mr. Plivilech's wife, Defendant Lin O'Dell.  Therefore, there is no longer any requirement that Mr. Plivilech be named for purposes of reaching any community marital property.  As a result, Mr. Plivilech is dismissed entirely as a Defendant to this action.

**B.  King County Defendants' Motion to Dismiss**

The Court next turns to the King County Defendants' Motion to Dismiss.  Dkt. #39. These Defendants argue that all of the claims against them should be dismissed because Plaintiff fails to explain a connection between the alleged conspiracy and the King County

ORDER
PAGE - 10

Defendants, and because Plaintiff has not adequately pleaded facts that explain what actions the King County Defendants took, let alone facts from which it could be reasonably inferred that the King County Defendants violated her rights in any way.  Dkt. #39.  These Defendants also argue that they were not properly served.  For the reasons discussed herein, the Court agrees that Plaintiff's claims against the King County Defendants should be dismissed.

> ### 1.  Motion to Strike

The Court first addresses King County Defendants' requests that the Court decline acceptance of Plaintiff's Response as untimely and that the Court decline to consider Plaintiff's RICO statement.  Dkt. #90 at 1-3.  The Court DENIES these requests as MOOT.  For the reasons discussed herein, even considering the allegations contained in Plaintiff's Response and RICO Statement, her claims fail as a matter of law.

> ### 2.  Failure to Serve

The Court next turns to King County Defendants' argument that Plaintiff has failed to serve either King County or Deputy Cary Coblantz with a copy of the Summons and/or Complaint in this matter.  Dkt. #39 at 4.  Plaintiff has failed to respond to this assertion.  *See* Dkt. #81.  Further, there is no affidavit of service or other evidence in the record that these Defendants were ever served with either the original Complaint or the Amended Complaint. However, the Amended Complaint was filed on February 18, 2016.  Dkt. #19.  Accordingly, Plaintiff has until May 18, 2016, to serve that Complaint on King County Defendants.  As a result, the Court declines to dismiss this action on the basis of improper service.

///

///

///

ORDER
PAGE - 11

*3.  Failure to State a Claim*

The Court next turns to King County Defendants' argument that Plaintiff's claims should be dismissed under Rule 12(b)(6).  Dkt. #39 at 4-11.  The Court agrees that Plaintiff has failed to plead adequate claims against these Defendants.

First, with respect to Plaintiff's First Amendment retaliation claim, she fails to allege facts to support the elements of such a claim.  Government officials may not take action in retaliation for protected expression or for the purpose of chilling that expression.  *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1984); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("the law is settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out").  This applies to retaliation for ordinary speech, petitioning the government for redress, legal actions, and other actions taken in furtherance of First Amendment activity.  *See Sorrano's Gasco*, 874 F.2d at 1313-14; *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006); C*arePartners, LLC v. Lashway*, 545 F.3d 867, 876 (9th Cir. 2008).  To establish a First Amendment retaliation claim, a plaintiff must show (1) that a defendant took some form of state action which would deter a reasonable person from engaging in First Amendment activities and (2) that the "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog*, 469 F.3d at 1232.

King County Defendants argue that Plaintiff makes only conclusory and speculative allegations against Deputy Coblantz, and that the Amended Complaint fails to connect any of the claimed retaliatory actions to these Defendants or their alleged motivation. Dkt. #39 at 6-7.  Defendants further argue that Plaintiff fails to allege any facts which could lead a reasonable person to plausibly infer such a connection.  *Id.*  The Court agrees with Defendants.

ORDER
PAGE - 12

A review of Plaintiff's Amended Complaint reveals Plaintiff's failure to adequately plead facts sufficient to support her First Amendment retaliation claim against Deputy Coblantz.  Plaintiff alleges that Deputy Coblantz was involved in some sort of effort between Homeland Security and the "DOJ Interpol" to place a "tracker" on her passport in May 2015, leading to Ms. Block being "illegally detained" at Seattle Tacoma International Airport after returning from London.  Dkt. #19 at ¶ 3.81.  Deputy Coblantz's involvement, according to Plaintiff, is that:

- Deputy Coblantz was "contacted" by John Pennington and Officer Lori Batiot on the same day that a "tracker" was placed on Plaintiff's passport, Dkt. #19 at ¶ 3.81;

- Immediately after receiving two phone calls from Mr. Pennington, Deputy Coblantz received an email from DOJ Interpol that contained Plaintiff's return-flight number, Dkt. #19 at ¶ 3.82;

- Deputy Coblantz then made a phone call asking the Port of Seattle and U.S. Customs Officers to serve a civil order on Ms. Block, Dkt. #19 at ¶ 3.82;

- Deputy Coblantz read a news website that falsely claimed to be Plaintiff's website, Dkt. #19 at ¶ 3.82; and

- Deputy Coblantz sent an e-mail to the Port of Seattle police stating that Plaintiff was "anti-government", Dkt. #19 at ¶ 3.82.

Plaintiff then concludes that Deputy Coblantz "conspired" with Mr. Pennington and Officer Batiot to charge Ms. Block with stalking.  Dkt. #19 at ¶ 3.83.  She also states that Deputy Coblantz and Sandra Sullivan, a contract prosecutor for the City of Duvall, "retaliate[d]" against her by attempting to charge her with felony criminal stalking and harassment charges.  Dkt. #19, ¶ 3.83.  She does not allege any facts regarding the attempted charges or a connection between service of the civil order and the conspiracy to file stalking charges.  Nor does she allege any facts alleging a connection between the alleged actions of Deputy Coblantz and Plaintiff's speech.

ORDER
PAGE - 13

Plaintiff responds that when read along with her proposed RICO statement, the allegations are sufficient to maintain her First Amendment claim. Dkt. #81 at 4-10. Specifically, she argues that Deputy Coblantz's connection with Mr. Pennington demonstrates a desire to retaliate against her for exercising her free speech rights. *Id.* The Court disagrees. Plaintiff's RICO Statement does nothing more than reiterate the allegations made in her Amended Complaint. Dkt. #20 at 12, 74, 75 and 76. Moreover, Plaintiff fails to allege any facts demonstrating retaliatory intent. While she argues that the alleged "anti-government" statement shows Deputy Coblantz's retaliatory intent, Dkt. #81 at 7, that is nothing more than speculation. The Court also rejects Plaintiff's speculation that Deputy Coblantz was not simply doing his job by serving a protective order, as she presents no facts that would explain how or why Deputy Coblantz would become involved in an alleged conspiracy to have Plaintiff illegally detained, or how or why he would have wanted her detained. Simply alleging a vague connection with Mr. Pennington does not cure these deficiencies.

Likewise, Plaintiff fails to adequately support her RICO claim against these Defendants. To plead a civil RICO claim, Plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 496, 105 S.Ct. 3275, 3284–85 (1985)). The "predicate acts" that constitute "racketeering activity" are listed at 18 U.S.C. § 1961(a); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

In this case, Plaintiff does not specifically identify a predicate act related to these Defendants. *See* Dkts. #19 and #20. To constitute a RICO predicate act, extortion must either

ORDER
PAGE - 14

meet the elements of the federal crime described in the Hobbs Act or as a state felony crime.

18 U.S.C. § 1951.  The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1952(b).  The "obtaining" element "requires a showing that a defendant received something of value from the victim of the alleged extortion and that the "thing of value can be exercised, transferred, or sold."  *United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009).  Washington law similarly requires that the defendant "obtain or attempt to obtain by threat [the] property or services of the owner . . . ."  RCW 9A.56.110.  A review of Plaintiff's Amended Complaint and attendant RICO Statement reveals no allegations sufficient to satisfy these required elements.  In addition, Plaintiff has failed to properly identify the required "pattern" of two listed acts within ten years of each other with the threat of continuing activity.  *See* 18 U.S.C. § 1961(5); *Howard v. America Online*, 208 F.3d 741, 746 (9th Cir. 2000).

King County Defendants also argue that, to the extent that the causes of action for Sherman Act violations, Washington's Law Against Discrimination ("WLAD") violations, defamation, ADA violations, and/or anti-privacy violations are alleged against them, Plaintiff has not pled any facts supporting such claims.  Dkt. #39 at 9-10.  Having reviewed Plaintiff's 87-page Amended Complaint in its entirety, the Court agrees.  While Plaintiff attempts to raise a defamation claim against Defendant Coblantz for allegedly referring to her as "anti-government," that statement cannot support such a claim.  Washington courts recognize that statements of opinion, as opposed to statements of fact, are not actionable. *Dunlap v. Wayne*, 105 Wash.2d 529, 537-39, 716 P.2d 842 (1986).

ORDER
PAGE - 15

Finally, the Court addresses King County Defendants' argument that Plaintiff fails to establish a *Monell*[4] claim against the County.  Dkt. #39 at 7 and 9-10.  The Court agrees.  In this case, Plaintiff has not sufficiently alleged any unconstitutional conduct against King County to support a plausible claim.  Indeed, Plaintiff acknowledges that she has failed to plead the bases of her claim against King County, but seeks leave to amend her Complaint again to add such facts.  Dkt. #81 at 19.  The Court DENIES Plaintiff's request for continuance.  Nothing in Plaintiff's brief demonstrates to the Court that she could allege facts adequate to support a plausible claim against King County.

For all of the above reasons, the claims against the King County Defendants will be dismissed.

## C.  WSBA Defendants' Motion to Dismiss

The Court next turns to the WSBA Defendants' Motion to Dismiss.  Dkt. #51.  The WSBA Defendants seeks dismissal of Plaintiff's claims for several reasons: (1) Plaintiff has not properly served the Amended Complaint on any of the WSBA Defendants; (2) the WSBA's Eleventh Amendment immunity bars Plaintiff's claims against the WSBA; (3) absolute quasi-judicial immunity bars all of Plaintiff's claims against the WSBA and all other WSBA Defendants; and (4) *Younger* abstention bars consideration of Plaintiff's claims against the WSBA Defendants.  *Id.*  Plaintiff did not timely file a Response to the motion, and the Court denied her request for additional time to file her Response.  Dkt. #102.  For the reasons discussed herein, the Court now GRANTS the WSBA's Motion to Dismiss.

### 1.  Failure to Serve

WSBA Defendants first argue that Plaintiff has failed to serve any of them with a copy of the Summons and/or Complaint in this matter.  Dkt. #51 at 8-9.  Plaintiff has failed to

---

[4]  *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

respond to this assertion.  *See* Dkt. #81.  However, Plaintiff has filed Affidavits of Service for Defendants Eide, Bloomfield, Cottrell, Schaps, Shankland, Bank, Denton and Ende.  Dkts. #105, #107, #108, #109, #110, #111, #112, #113 and #114.  Further, the Amended Complaint was filed on February 18, 2016.  Dkt. #19.  Accordingly, Plaintiff has until May 18, 2016, to serve that Complaint on Defendants.  As a result, the Court declines to dismiss this action on the basis of improper service.

### 2.   *Eleventh Amendment Immunity*

WSBA Defendants next argue that Plaintiff's claims are barred by the Eleventh Amendment.  Dkt. #51 at 10-11.  The Eleventh Amendment bars suits against a state and its agencies, and confers immunity from any prosecution of such suits.  *Lake Cty. Est., Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 400-01, 99 S. Ct. 1171 (1979).  The Ninth Circuit Court of Appeals has held that state bar associations are an "arm of the state" and therefore immune from suit.  *See Ginter v. State Bar of Nev.,* 625 F.2d 829, 830 (9th Cir. 1980); *Hirsh v. Justices of the Supreme Court of the State of Cal.,* 67 F.3d 708, 715 (9th Cir. 1995); *Lupert v. Cal. State Bar,* 761 F.2d 1325, 1327 (9th Cir. 1985).  Further, the Eleventh Amendment protects bar associations as state agencies because they operate as of the "investigative arm" of the state high court.  *O'Connor v. Nevada,* 686 F.2d 749 (9th Cir. 1982).  The WSBA's "power to regulate and punish lawyers makes clear that the WSBA does operate as the 'investigative arm' of the Washington Supreme Court."  *Eugster v. Wash. State Bar Ass'n,* 2015 U.S. Dist. LEXIS 117904 (W.D. Wash. Sept. 3, 2015) (citing *O'Connor,* 686 F.2d at 750).  In *Eugster*, Judge Robart held that the "WSBA is a state agency immunized from suit by the Eleventh Amendment."  2015 U.S. Dist. LEXIS 117904.  Accordingly, the Court agrees that Plaintiff's

First Amendment, RICO, right to privacy and defamation claims must be dismissed under the Eleventh Amendment.

### 3.  *Quasi-Judicial Immunity*

WSBA Defendants next argue that all of Plaintiff's claims should be dismissed on the basis of absolute quasi-judicial immunity.  The Ninth Circuit has found that persons performing their roles in the lawyer discipline system under the authority of the state Supreme Court have absolute quasi-judicial immunity from suits arising out of acts taken, or decisions made, in their judicial or prosecutorial roles.  *See, e.g., Hirsh v. Justices of Supreme Court of Cal.,* 67 F.3d 708, 715 (9th Cir. 1995) (holding that judges and prosecutors involved with state bar disciplinary proceedings have quasi-judicial immunity from monetary damages); *Clark v. Wash.,* 366 F.2d 678, 681 (9th Cir. 1966) (holding that the WSBA acts as an arm of the Washington Supreme Court in connection with disciplinary proceedings, and is an integral part of the judicial process and therefore entitled to the same immunity afforded prosecuting attorneys in Washington).  Likewise, such quasi-judicial immunity is also established by rules promulgated by the Washington Supreme Court.  The Washington Supreme Court has exclusive responsibility in the state to administer the lawyer discipline system and to dispose of individual cases of lawyer discipline.  *Rules for Enforcement of Lawyer Conduct* ("ELC") 2.1. Further:

> All boards, committees, or other entities, and their members and personnel, and all personnel and employees of the Washington State Bar Association, acting on behalf of the Supreme Court under the Admission to Practice Rules.  The rules for Enforcement of Lawyer Conduct, and the Disciplinary Rules for Limited Practice Officers, shall enjoy quasi-judicial immunity if the Supreme Court would have immunity in performing the same functions.

GR 12.3.  "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."  *Mireles v. Waco,* 502 U.S. 9, 11 (1991).  Quasi-judicial immunity applies even

when covered individuals are accused of acting maliciously and corruptly.  *Grundstein v. Wash. State Bar Ass'n*, 2012 U.S. Dist. LEXIS 127717, at *12 (W.D. Wash. Sept. 7, 2012) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)), *aff'd*, 576 F. App'x 708 (9th Cir. May 29, 2014).

The Court agrees with WSBA Defendants that all of Plaintiff's allegations regarding the WSBA Defendants stem from their roles in the disciplinary process.  For example, Plaintiff's allegations against Ms. Eide relate to her role as disciplinary counsel on Plaintiff's disciplinary matter.  *See* Dkt. #19 at ¶ ¶ 2.11, 3.12, 3.33, 3.36, 3.37, 3.43, 3.44, 3.45, 3.46, 3.48-4.50, 3.53, 3.553.92 and 3.93.   Likewise, Plaintiff's allegations against Ms. O'Dell's are related to her conduct during the disciplinary proceeding as hearing officer, and her responsibility to act in a judicial capacity.[5]  *See*, *e.g.*, Dkt. #19 at ¶ ¶ 2.19, 3.38, 3.40, 3.43, 3.44, 3.48 and 3.49.

Similarly, the members of the Disciplinary Board and the Conflicts Review Officers performed all of their functions in their prosecutorial or judicial capacities, so absolute quasi-judicial immunity bars any claims against these individuals.  *See, e.g., Scheidler v. Avery*, 2015 U.S. Dist. LEXIS 155494, at * 24-25 (W. D. Wash. Nov. 17, 2015) (dismissing claims against WSBA, Associate Director of the Office of Disciplinary Counsel, and conflicts review officer based on quasi-judicial immunity); *Scannell v. Wash. State Bar Ass'n*, Case No. 2:12-cv-683-SJO, Dkt. #94 (dismissing all damages claims against WSBA disciplinary counsel, hearing officer, Disciplinary Board members, and Board of Governors members based on quasi-judicial immunity); *Little v. Wash.*, Case No. 2:13-cv-1284-RSL, Dkt. #51 (dismissing claims against WSBA Board of Governors, disciplinary counsel, assistant general counsel, and hearing officer based on quasi-judicial immunity); *Grundstein*, 2012 U.S. Dist. LEXIS 127717, at **2-4 (W.D.

---

[5]   Plaintiff also makes a number of inflammatory comments about Ms. O'Dell's alleged conduct in her capacity as a Guardian for vulnerable adults, which appear to have no connection to Plaintiff and which the Court will not lower itself to discuss.  *See*, *e.g.*, Dkt. #19 at ¶ 3.39.

Wash. Sept. 7, 2012) (dismissing claims against WSBA disciplinary counsel and hearing officer based on quasi-judicial immunity), *aff'd*, No. 12-35792, 576 F. App'x 708 (9th Cir. May 29, 2014).

Similarly, Plaintiff's ADA allegations arise from the disciplinary proceeding and are therefore precluded by absolute quasi-judicial immunity.  Ms. O'Dell, the hearing officer, conducted the hearing at which Plaintiff claims she was muted and disconnected.  Dkt. #19 at ¶ 3.53.  The Disciplinary Board also made various procedural decisions in the disciplinary proceeding, including the question of accommodation.  The Ninth Circuit and other District Court have found that considering requests for accommodation in connection with court proceedings is within the judicial capacity, as is conducting and maintaining control over hearings.  *See, e.g., Duvall v. Kitsap County,* 260 F.3d 1124, 1133, 1138 (9th Cir. 2001) ("Ruling on a motion is a normal judicial function, as is exercising control over the courtroom while court is in session."); *Memmer v. Marin County Courts,* 169 F.3d 630, 634-35 (9th Cir. 1999) (wherein a federal district court judge had held that judges were immune on a public accommodation claim, but the Ninth Circuit did not address immunity); *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979) (explaining that under absolute quasi-judicial immunity, court personnel whose challenged activities are an "integral part of the judicial process" are immune from liability); *Phiffer v. Oregon*, No. CV-10-1120-SU, 2011 U.S. Dist. LEXIS 153350 (D. Or. Nov. 21, 2011) (finding that the State, state court judge, court clerk, and prosecutor were all immune from ADA claim arising out of the scheduling of court hearings), *aff'd*, 586 F. App'x 425 (9th Cir. Dec. 5, 2014).  In this case, as evidenced by Plaintiff's allegations themselves, the WSBA Disciplinary Board members and WSBA employees acted in a similar capacity when considering Plaintiff's requests for accommodation.

ORDER
PAGE - 20

Accordingly, for all of these reasons, the Court agrees that all WSBA Defendants are immune from suit and Plaintiff's claims against them must be dismissed.

    4.   *Younger Abstention, Res Judicata, Statute of Limitations, Failure to State a Claim*

Because the Court has determined that the WSBA Defendants are immune from suit, the Court needs not address these Defendants' remaining arguments regarding the *Younger* abstention doctrine, res judicata, statute of limitations and Plaintiff's alleged failure to state a claim upon which relief may be granted.

**D.  Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure for the deficiencies in Plaintiff's Complaint, particularly given the invalidity of Plaintiffs' primary legal assertions as discussed above. Moreover, considering Plaintiff's litigation history in this and other courts, and viewing the record in this case as a whole, it is clear to the Court that Plaintiff has engaged in this litigation vexatiously and as a means of harassment of the Defendants, and not merely to seek justice for her alleged injuries. For that reason, the Court finds dismissal with prejudice appropriate.

///

///

ORDER
PAGE - 21

**E. Kenyon Disend's Motion for Sanctions**

Finally, the Court addresses Kenyon Disend's Motion for Sanctions. Dkt. #47. Kenyon Disend seeks sanctions against Plaintiff for her continued vexatious litigation against the City of Gold Bar Defendants and against the Kenyon Disend Defendants, which have represented the City of Gold Bar Defendants in no less than 14 lawsuits brought by Plaintiff and/or her colleagues primarily alleging the same baseless claims. *Id.* Kenyon Disend asks the Court to impose sanctions pursuant to Federal Rule of Civil Procedure 11.

Plaintiff has opposed the motion, arguing that the Court should strike the motion in its entirety because Kenyon Disend has not answered the complaint, all pleadings are to be construed in favor of the plaintiff not in favor of the defendants, Kenyon Disend is merely attempting to submit character evidence to prove previous conduct in violation of ER 404, and the motion is an improper form of discovery attempting to force Plaintiff to demonstrate the basis for her claims without providing her with a 30-day discovery period. Dkt. #83. Alternatively, Plaintiff states that if this Court "insists on having [her] answer [] Kenyon's motion for sanctions," she would like a one-week extension of time in which to do so. *Id.* at 1. The Court DENIES Plaintiff's request for an extension of time, as it was her responsibility to either respond on the merits or seek an extension in advance of the time her Response was due. *See* LCR 7(b)(2), (d)(3) and (j). Likewise, Kenyon Disend's motion to strike Plaintiff's Response as untimely is DENIED AS MOOT, as the Court will grant Kenyon Disend's motion for the reasons below.

The Ninth Circuit Court of Appeals has set forth the considerations for Rule 11 sanctions:

> An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court "claims, defenses, and other legal contentions . . . [not]

ORDER
PAGE - 22

warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed. R. Civ. P. 11(b)(2).  When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted).  As shorthand for this test, we use the word "frivolous" "to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry."  *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig*.), 78 F.3d 431, 434 (9th Cir. 1996).

*Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005).  *Pro se* litigants are also subject to Rule 11 for filing baseless lawsuits.  *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).  When a court is considering sanctioning a *pro se* litigant, the court "can properly consider plaintiff's ability to pay monetary sanctions as one factor in assessing sanctions.  It cannot, however, decline to impose any sanction, where a violation has arguably occurred, simply because plaintiff is proceeding *pro se*.  A contrary conclusion would effectively place all unrepresented parties beyond the reach of Rule 11." *Id*.

In this case, the Court finds the record clear that Plaintiff's claims against the Kenyon Disend Defendants were frivolous, and that her motive for filing the claims was vexatious.[6]  Indeed, as noted by Kenyon Disend, Plaintiff has sent harassing emails to Kenyon Disend on a near weekly basis, threatening additional litigation any time Kenyon Disend successfully defends against her numerous lawsuits.  Dkts. #48 and #49 and the Exhibits thereto.  In these emails, Plaintiff refers to Kenyon Disend attorneys as "pieces of shit" and demands millions of dollars to settle her claims.  Dkt. #48, Ex. A.  When Kenyon Disend submits motions and related pleadings in the various lawsuits brought by Plaintiff, Plaintiff will respond by threatening to bring more lawsuits, and has even stated in open court that if the court was to

---

[6]  The Court incorporates by reference herein its prior findings with respect to Plaintiff's claims against the Kenyon Disend Defendants.  Dkt. #84 at 16-25.

rule in favor of Plaintiff's opponents she would file a lawsuit against them every week.  Dkt. #48, Exs. E and F.  It appears that Plaintiff's actions are motivated by vindictiveness rather than by a search for justice.  Moreover, as previously discussed, Plaintiff's complaints against Kenyon Disend are not well-grounded in fact or law, and nothing demonstrates that she conducted a reasonable inquiry into the alleged fact as required by Rule 11 prior to bringing her claims.  As a result, the Court finds monetary sanctions appropriate and will award Kenyon Disend its attorney's fees and costs for defending this litigation.

In addition, the All Writs Act, 28 U.S.C. § 1651(a), gives this Court the inherent power to enter a pre-filing order against a vexatious litigant.  *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  Before imposing this extreme remedy: (1) the litigant must receive notice and a chance to be heard; (2) the Court must compile "an adequate record for review;" (3) the Court must make substantive findings about the frivolous or harassing nature of plaintiff's litigation; and (4) the vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered."  *Id.* (citation and quotation marks omitted).  Plaintiff has a history of harassing, meritless filings.  Dkt. #48 at ¶ 3.  Plaintiff has repeatedly and unsuccessfully litigated issues raised here in state and federal court, including in actions against these Defendants.  *Id.*; *Block v. Snohomish County, et al.*, Case No. C14-0235RAJ.  The instant case also represents a clear example of frivolous and harassing litigation.  Plaintiff has had the opportunity to be heard on this motion, and the necessary record has been compiled.  Therefore, the Court finds a narrowly-tailored pre-filing order is now warranted.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1. The Motion to Dismiss filed by Mark Plivilech (Dkt. #45) is GRANTED.   The claims against Defendant Plivilech are dismissed in their entirety with prejudice, and this Defendant shall be terminated from this action.

2. The Motion to Dismiss filed by the King County Defendants (Dkt. #39) is GRANTED.   The claims against Defendants Cary Coblantz and King County are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

3. The Motion to Dismiss filed by the WSBA Defendants (Dkt. #51) is GRANTED. The claims against Defendants Sara Andeen, Kevin Bank, Kathryn Berger, Keith Mason Black, Stephanie Bloomfield, Michele Nina Carney, S. Nia Renei Cottrell, William Earl Davis, Stephania Camp Denton, Linda Eide, Doug Ende, Marcia Lynn Damerow Fischer, William McGillin, Michael Jon Myers, Joseph Nappi Jr., Lin O'Dell, Allison Sato, Ronald Schaps, Julie Shankland, Marc Silverman, Todd R. Startzel and Washington State Bar Association are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

4. The Motion for Sanctions filed by Kenyon Disend (Dkt. #47) is GRANTED as discussed above.

   a. Plaintiff SHALL pay to Kenyon Disend Defendants their attorney's fees and costs in defending this litigation.  Kenyon Disend Defendants shall submit a supplemental Declaration setting forth its fees and costs in detail and with the appropriate supporting evidence.

   b. Any *pro se* complaint submitted for filing in this District in which Anne Block is a named Plaintiff or purports to act as party representative shall be

subject to review by the Court prior to the issuance of summons or service of process. The following review provisions shall apply, except in cases where Ms. Block is represented by an attorney licensed to practice law in this District:

i. The Court will review the proposed Complaint to determine whether good cause exists to permit the action to proceed in light of the claims raised therein and Ms. Block's past litigation abuses. The proposed Complaint shall comply with Fed. R. Civ. P. 8(a) and provide a clear statement of the factual and legal basis for each claim asserted, specifically identifying each Defendant against whom the claim is asserted. The proposed Complaint shall be accompanied by a signed statement explaining, on a claim-by-claim basis, (a) whether each claim was raised in any prior action (with an appropriate citation) and (b) why each claim is not barred by collateral estoppel, *res judicata*, and/or an applicable immunity.

ii. If the Court determines that good cause has not been shown, the action will be dismissed *sua sponte* without further notice. If the Court also determines that sanctions are appropriate, those shall be imposed at the same time the action is dismissed. Ms. Block shall have an opportunity to explain why sanctions should not be imposed in a post-Judgment Motion for Reconsideration filed within ten days of the Judgment.

5.  The Court will address the remaining Motion to Dismiss (Dkt. #73), as well as the three pending Motions to Intervene (Dkts. #37, #40, and #41), the Second Motion to Disqualify (Dkt. #87), the Motion to Set Aside Order (Dkt. #93), the Motion for Preliminary Injunction (Dkt. #85) and the Motion for Stay (Dkt. #100), in separate Orders.

6.  The Clerk shall mail a copy of this Order to the *pro se* parties and proposed Intervenors via U.S. Mail.

DATED this 13th day of April 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 27