UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| ANNE BLOCK, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WASHINGTON STATE BAR ASSOCIATION, *et al.*,<br><br>　　　　　　Defendants. | CASE NO. C15-2018RSM<br><br>FOURTH ORDER GRANTING PENDING MOTIONS TO DISMISS |

### I. INTRODUCTION

THIS MATTER comes before the Court on the following pending motions to dismiss:

1. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Sean Gillebo, Kali Matuska, Port of Seattle, Julie Tanga and James Tuttle ("Port of Seattle Defendants") (Dkt. #130); and

2. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Crystal Hill Pennington ("Ms. Hill-Pennington") (Dkt. #135).[1]

Plaintiff has opposed both of the motions; however, her opposition to Ms. Hill-Pennington's motion was untimely.[2] Dkts. #147, #159 and #160. For the reasons discussed herein the Court

---

[1] The Court will address the remaining Motion to Dismiss (Dkt. #145) on or near its noting date, as well as the pending Motion for Preliminary Injunction (Dkt. #85) and Motion for Attorney's Fees (Dkt. #154), in separate Orders.

[2] The Court also notes that Plaintiff has not properly signed her Response briefs as required by the Court's Rules regarding electronic signatures. LCR 10(e)(4) and (8), LCR 11(a) and the

ORDER
PAGE - 1

now GRANTS each of the Defendants' motions and dismisses the claims against those Defendants in their entirety and with prejudice, as further discussed below.[3]

## II. BACKGROUND

On December 28, 2015, Plaintiff filed a Complaint naming 56 different Defendants and alleging a variety of claims ranging from Racketeer Influenced and Corrupt Organizations ("RICO") Act violations to false reporting to fraud. *See* Dkt. #1. On February 18, 2016, Plaintiff filed a "second" Amended Complaint.[4] Dkt. #19. Plaintiff's Amended Complaint contains 87 pages of allegations against 53 different local government and/or private entities and individuals. Dkt. #19. According to Plaintiff, she "brings a civil rights action [] under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on and continuing attempts to punish [her] right to engage in protected First Amendment activities . . . ." *Id.* at 4-5. In addition, Plaintiff makes a number of civil RICO claims and has filed a separate, proposed RICO Statement in support of those claims. Dkts. #19 at 77-79 and #20. The above described motions to dismiss followed.

The Court will discuss facts specific to the various parties below. However, for additional context to these motions, the Court notes that Plaintiff is no stranger to this Court. In addition to the instant matter, she has filed two prior actions. *Block v. Chao*, Case No. C08-1850JLR and *Block v. Snohomish County, et al.*, Case No. C14-0235RAJ. The latter action

---

Court's Electronic Filing Procedures for Civil Cases found at http://www.wawd.uscourts.gov/sites/wawd/files/ECFFilingProcedures.pdf.

[3] The Court acknowledges that Defendants have not yet filed any Replies in support of their motions. However, given the conclusions discussed herein, the Court finds Reply briefs unnecessary to its determination of the legal issues presented.

[4] The Court notes that although Plaintiff characterized the amendment as a "second" amended pleading, it is actually a first Amended Complaint as no other prior amendments had been filed. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the "second" amendment was timely.

ORDER
PAGE - 2

included many of the same allegations against many of the same Defendants as the instant matter.  Further, while Plaintiff is proceeding *pro se* in the instant action, she is also an attorney admitted to practice in Washington.  However, according to Washington State Bar Association ("WSBA") records, her license is currently suspended.  *See* https://www.mywsba.org/LawyerDirectory/LawyerProfile.aspx?Usr _ID=37640 (*last visted* 3/29/2016).  At least some of the allegations she makes in this action stem from apparent disbarment proceedings before the WSBA.  Dkt. #19 at 47, 55-56 and 59.

The Court also finds relevant Plaintiff's conduct in her prior case before the Honorable Richard A. Jones.  In that case, although not his typical practice, Judge Jones noted that Plaintiff's litigation in this Court appears to be part of a much larger campaign.  Case No. C14-0235RAJ, Dkt. #61 at 2.  Plaintiff's conduct in that case resulted not only in the dismissal of her claims, but also in sanctions.  *See id.*, Dkts. #6, #78, #107.  That case appears to be ongoing.  The Court highlights the prior case because it appears the instant action is also part of a larger campaign against Defendants.  As further discussed below, Plaintiff appears to be using her litigation as a way to attempt to punish them by hauling them into court to defend against primarily meritless claims.  For whatever reasons, it appears that Plaintiff feels she has been wronged by Defendants and sees the judicial system not necessarily as a forum in which she will receive justice, but as a tool to use against the Defendants.[5]  With that context, the Court turns to Defendants' motions.

---

[5]  As Snohomish County Defendants highlighted, evidence of this intent can be found in Plaintiff's RICO Statement.  Dkt. #28 at 2, fn. 1.  The RICO Statement is primarily cut and paste from the Amended Complaint, supplemented by additional direct cut and paste of about 80 pages of superfluous material from other unrelated "RICO statements."  For example, pages 86-108 of Plaintiff's RICO Statement contain 128 paragraphs of material which appear to have been directly copied from a "RICO statement" previously filed in *Scheidler v. Avery et. al.  See* C12-5996RBL, Dkt # 68-1 at ¶ ¶ 8-130.  Likewise, pages 108-162 of Plaintiff's RICO statement also appear to merely be an additional 350 cut and pasted paragraphs of material

ORDER
PAGE - 3

## III.     DISCUSSION

### A.  Standard of Review

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiffs' claims must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents for which it has taken judicial notice. *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Here, the Court has taken judicial notice of, and considers herein, documents filed in Plaintiff's other cases in this Court, and specifically those filed in the aforementioned action before Judge Jones. Judicial notice is appropriate because the documents presented are matters of public record, having been filed on the public docket in this Court. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

---

directly from a "RICO statement" previously filed by Plaintiff's associate John Scannell. *Scannell v. Washington State Bar Association et. al.*, C12-0683SJO, Dkt. # 74-1 at ¶¶ 8-358.

ORDER
PAGE - 4

## B. Ms. Hill-Pennington's Motion to Dismiss

The Court first addresses Ms. Hill-Pennington's Motion to Dismiss. Dkt. #135. Ms. Hill-Pennington argues that that Plaintiff's claims against her are insufficiently pled under Fed. R. Civ. P. 12(b)(6), and therefore should be dismissed. *Id.*

As an initial matter, the Court strikes Plaintiff's opposition to the motion as untimely. The Court previously granted Plaintiff a one-week extension of time, and directed Plaintiff to file her Response no later than May 16, 2016. Dkt. #147. Plaintiff did not file her Response until May 17, 2016. Accordingly, the Court will not consider the pleading. However, the Court notes that even if it did consider Plaintiff's Response, its conclusions would remain the same for the reasons discussed below.

The claims made against Ms. Hill-Pennington appear to primarily arise from proceedings involving a protection order or orders sought by Ms. Hill-Pennington against Plaintiff. Dkts. #19 at ¶ ¶ 3.67-3.73 and 3.85 and #20 at ¶ ¶ 2.30 and 3.72-3.74. Plaintiff alleges that Ms. Hill-Pennington retaliated against her by pursuing criminal complaints against her, and defamed her during those proceedings. *Id.* Plaintiff further alleges that Ms. Hill-Pennington was part of a broad conspiracy with her (Hill-Pennington's) husband and others to violate Plaintiff's First Amendment rights. *Id.*

Ms. Hill-Pennington first argues that Plaintiff's defamation claim should be dismissed because the statements allegedly made are privileged, Plaintiff fails to allege falsity or damages, and Plaintiff fails to state sufficient facts supporting her claim. Dkt. #135 at 3-4. The Court agrees with Defendant. A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). In the instant matter, Plaintiff has alleged that Ms. Hill-Pennington made

ORDER
PAGE - 5

a number of false statements about her that caused her damage. Dkt. #19 at ¶ ¶ 3.72-3.74. However, it appears from Plaintiff's allegations that these statements were all made during judicial proceedings related to one or more petitions for a protective order. *Id.* Such statements are privileged under the judicial proceeding privilege. Indeed, the Washington Supreme Court has noted that the absolute privilege defense generally applies to statements made in the course of judicial proceedings and acts as a bar to any civil liability. *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475, 564 P.2d 1131 (1977). To the extent that Plaintiff alleges these statements were made outside of judicial proceedings, she fails to allege that any of the statements are actually false. *See* Dkt. #19 at ¶ ¶ 3.72-3.74. Further, the statements also appear to be statements of Ms. Hill-Pennington's opinion. "'A simple expression of opinion based on disclosed or assumed *nondefamatory* facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.'" *Duc Tan v. Le*, 177 Wn.2d 649, 664, 300 P.3d 356, 364 (2013) (citation omitted; italics in original). As a result, the claim will be dismissed.

Ms. Hill-Pennington next argues that Plaintiff has failed to plead sufficient facts to support a First Amendment claim. Dkt. #135 at 4-5. The Court agrees. It is true that government officials may not take action in retaliation for protected expression or for the purpose of chilling that expression. *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1984); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("the law is settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out"). This applies to retaliation for ordinary speech, petitioning the government for redress, legal actions, and other actions taken in furtherance of First Amendment activity. *See Sorrano's Gasco*, 874 F.2d at 1313-14; *Skoog v.*

ORDER
PAGE - 6

*County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006); C*arePartners, LLC v. Lashway*, 545 F.3d 867, 876 (9th Cir. 2008). To establish a First Amendment retaliation claim, a plaintiff must show (1) that a defendant took some form of state action which would deter a reasonable person from engaging in First Amendment activities and (2) that the "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog*, 469 F.3d at 1232.

Ms. Hill-Pennington argues that Plaintiff's claim must be dismissed because she fails to establish that Ms. Hill-Pennington was a state actor, and she has failed to plead sufficient facts to support the retaliatory motive requirements. Dkt. #135 at 5. The Court agrees. Complaints that Ms. Hill-Pennington allegedly made to law enforcement and the courts appear to have been made in her capacity as a private citizen and do not constitute government action. *See* Dkt. #19 at ¶ ¶ 3.72-3.74. Further, Plaintiff fails to identify any basis for determining whether Ms. Hill-Pennington was a state actor. *Id.* Likewise, any assertion that a claim can be made against Ms. Hill-Pennington because she was "acting through" state actors, is not supported by any legal authority. A review of Plaintiff's Amended Complaint reveals Plaintiff's failure to adequately plead facts sufficient to support her First Amendment retaliation claim. Accordingly, that claim must also be dismissed.

Next, the Court finds that Plaintiff fails to adequately support her RICO claim against Ms. Hill-Pennington. To plead a civil RICO claim, Plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 496, 105 S.Ct. 3275, 3284–85 (1985)). The "predicate

ORDER
PAGE - 7

acts" that constitute "racketeering activity" are listed at 18 U.S.C. § 1961(a); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

In this case, Plaintiff does not specifically identify a predicate act related to this Defendant. *See* Dkts. #19 and #20. At best, Plaintiff alleges that she engaged in extortion. To constitute a RICO predicate act, extortion must either meet the elements of the federal crime described in the Hobbs Act or as a state felony crime. 18 U.S.C. § 1951. The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1952(b). The "obtaining" element "requires a showing that a defendant received something of value from the victim of the alleged extortion and that the "thing of value can be exercised, transferred, or sold." *United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009). Washington law similarly requires that the defendant "obtain or attempt to obtain by threat [the] property or services of the owner . . . ." RCW 9A.56.110. A review of Plaintiff's Amended Complaint and attendant RICO Statement reveals no allegations sufficient to satisfy these required elements. First, Plaintiff does not identify that Ms. Hill-Pennington obtained anything of value from Plaintiff by use of force or threat of use of force. Further, Plaintiff does not identify the purported "RICO enterprise" which this Defendant is alleged to have conducted, nor does she allege any facts connecting Ms. Hill-Pennington to any other "enterprise" involving other Defendants. In addition, Plaintiff has failed to properly identify a specific predicate act which Ms. Hill-Pennington is alleged to have committed, and has failed to identify the required "pattern" of two listed acts within ten years of each other with the threat of continuing activity. *See* 18 U.S.C. § 1961(5); *Howard v. America Online*, 208 F.3d 741, 746 (9th Cir. 2000).

ORDER
PAGE - 8

Finally, Ms. Hill-Pennington argues that, to the extent that the causes of action for Sherman Act violations or ADA violations are alleged against her, Plaintiff has not pled any facts supporting such claims. Dkt. #135 at 6. Having reviewed Plaintiff's 87-page Amended Complaint in its entirety, the Court agrees. Plaintiff fails to plead any facts connecting Ms. Hill-Pennington to any such alleged violations. *See* Dkt. #19. For all of these reasons, the claims against Ms. Hill-Pennington will be dismissed.

### C. Port of Seattle Defendants' Motion to Dismiss

The Court next turns to the Motion to Dismiss brought by the Port of Seattle Defendants. Dkt. #130. These Defendants largely adopt the arguments set forth by the former King County Defendants in their prior motion to dismiss. *Id.* For the reasons discussed below, the Court now dismisses all of Plaintiff's claims against the Port of Seattle Defendants.

Plaintiff's allegations against the Port of Seattle Defendants are sparse. Plaintiff essentially alleges as follows:

- Plaintiff was "illegally detained at Seattle Tacoma International Airport by two Port officers";
- King County Defendant Cary Coblantz "placed a phone call to the Port of Seattle informing them what flight Plaintiff was on asking the Port of Seattle . . . to serve a civil order on Plaintiff. The Port of Seattle Officer Matuska, Tanga and [Gillebo] elicited the assistance of US Customs Officer Curtis Chen to place a tracker on Plaintiff's passport. The Port of Seattle admitted via a public records request that it has never served a civil order on any other person except for Plaintiff";

ORDER
PAGE - 9

- Port of Seattle Defendants "Tanga, [Gillebo], and Tuttle were being paid by King County";

- The Port of Seattle Police Department received an email from King County Defendant Gary Coblantz indicating "that Plaintiff was 'anti-government'"; and

- Port of Seattle Defendant Tuttle "told Plaintiff that he was an internal affairs investigator for the Port of Seattle. Plaintiff learned from Port of Seattle public records, in August 2015, that Tuttle was not an internal affairs investigator."

Dkt. #19 at ¶ ¶ 3.81-3.82. There are no allegations that the Port of Seattle Defendants conspired with anyone for any purpose.

Port of Seattle Defendants first argue that all Port of Seattle Defendants except Officer Kali Matuska should be dismissed the failure to properly serve them with a copy of the Summons and/or Complaint in this matter. Dkt. #130 at 3. Plaintiff has failed to respond to this argument. *See* Dkt. #159. Further, there is no affidavit of service or other evidence in the record that these Defendants, other than Officer Matuska, were ever served with either the original Complaint or the Amended Complaint.

Under Federal Rule of Civil Procedure 12(b)(5), a Complaint may be dismissed for "insufficient service of process." Sufficiency of service is governed by Federal Rule of Civil Procedure 4. Plaintiff is responsible for ensuring that a Summons be served with a copy of the Complaint to each defendant, and service must be accomplished by any person who is at least eighteen years old and who is not a party to the action. Federal Rule of Civil Procedure 4(c). Unless service is waived by the defendant or service is accomplished by a United States marshal, a plaintiff must provide proof of service to the Court by way of the server's affidavit.

ORDER
PAGE - 10

Fed. R. Civ. P. 4(l)(1). Failure to provide service does not affect the validity of service, and the Court may permit proof of service to be amended. Fed. R. Civ. P. 4(l)(3). Additionally,

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Because there is no proof of service in this matter, and more than 90 days has passed since the filing of both the original and Amended Complaints, the Court agrees that the claims should be dismissed against all Port of Seattle Defendants with the exception of Officer Matuska.

Even if these Defendants had been properly served, the claims should be dismissed against them. Indeed, the Court finds that Plaintiff has failed to plead adequate claims against any of the Port of Seattle Defendants. First, with respect to her alleged constitutional violations, Plaintiff fails to set forth adequate facts supporting such claims. Accepting the facts alleged by Plaintiff as true, the Port of Seattle Defendants: 1) received a request from King County Deputy Coblantz to assist with the service of a "civil order" on plaintiff; 2) enlisted the assistance of a U.S. Customs and Border Protection agent to identify Ms. Block when she returned from London; and 3) served the "civil order" on Ms. Block. The referenced "civil order" was apparently a "restraining order" issued by the King County District Court on or about May 4, 2015. Dkt #1 at ¶ 3.37 and Dkt #19 at ¶ 3.80. Nowhere in her Amended Complaint does Plaintiff assert any improper motives or illegal actions by the Port of Seattle Defendants.

ORDER
PAGE - 11

In opposition to Defendants' motion, Plaintiff argues that her factual allegations support a plausible claim against them because their actions caused her to be "raped" at a foreign airport and "illegally detained" at Seattle-Tacoma International Airport:

> The Port of Seattle wrongly portrays the liability of the Port of Seattle defendants as stemming from the service of a no contact order, a function they admit they have never performed before. Plaintiff Block contends the service of the no contact order was simply a pretext for their real involvement, which was spreading defamation about the plaintiff being anti-government through homeland security with the foreseeable result that she would end up being raped in a foreign airport.
> . . .
>
> The Port of Seattle defendants undoubtedly will likewise agree with his fellow RICO codefendants, that in paragraph 3.96, that the plaintiff "confusingly" related that she was subjected to a "pat search" as her criminal RICO defendants.. [sic] There was no confusion there. She stated that she was subjected to a "fully clothed body search" which was done in a "personal and penetrating manner." If this search was not conducted legally, it would constitute rape in the second degree, a class A felony under Washington law. (RCW 9A.44.010, 1(b), RCW 9A.44.050(1)(c)(ii),(2), punishable by life imprisonment.(RCW 9a.20.021(1)(a).
>
> Presumably, the plaintiff was there, so she was a witness to her own rape. This allegation was made under the penalty of CR 11 sanctions and therefore should be presumed to be true for the purposes of a CR 12 motion. To require more than this at this stage of the pleadings in order to make the allegation "plausible" is an outrage and an insult to rape victims everywhere.
>
> What have the Port of Seattle defendants suggested is more plausible? Are they seriously suggesting that some anonymous screener just picked Anne Block at random? Do they suggest that Homeland Security put her on a terrorist watch list for other reasons? Do they suggest that for some unknown reason in paragraph 3.83, Coblatz just happened to decide to try to get Block charged with cyberstalking, even though judges had already ruled that would be unconstitutional?

Dkt. #159 at 7-8. These arguments not only fail to address the proper legal standards, they are absurd, and quite frankly, insulting to the Court.

ORDER
PAGE - 12

On the face of Plaintiff's Amended Complaint, she alleges facts that demonstrate the Port of Seattle Defendants were lawfully performing a statutory duty to serve a Temporary Protection Order issued against Plaintiff by the King County District Court. Under RCW 10.14.100(a), King County Deputy Cary Coblantz was legally obligated to serve Ms. Block with the "civil order." *See also Washburn v. City of Federal Way*, 178 Wn.2d 732, 754, 310 P.3d 1275, 1287 (2012). Deputy Coblantz lawfully requested the assistance of the Port of Seattle Defendants to serve Ms. Block as she was returning from London through Seattle-Tacoma International Airport. *See* RCW 10.93.070(3). Deputy Coblantz provided the Port of Seattle Defendants with Ms. Block's flight number. Dkt #19 at ¶ 3.82. The Port of Seattle, in turn, requested a United States Customs and Border Protection Agency agent to help identify Ms. Block as she returned from London. When she was identified, the Port of Seattle Defendants served Ms. Block with the Temporary Protection Order. These facts do not support any plausible claim for any violation of Plaintiff's constitutional rights.

Likewise, Plaintiff fails to assert any RICO claim against these Defendants. *See* Dkts. #19 and #20. While Plaintiff discusses her RICO claim at length in her opposition, that discussion primarily focuses on the King County Defendants, who have already been dismissed from this case. *See* Dkt. #159. Further, Plaintiff fails to even acknowledge that she has not actually alleged a RICO claim against any of the Port of Seattle Defendants or identified them as subjects of her RICO claim. *See* Dkts. #19, #20 and #159.

Finally, to the extent that the causes of action for Sherman Act violations, Washington's Law Against Discrimination ("WLAD") violations, defamation, ADA violations, and/or anti-privacy violations are alleged against the Port of Seattle Defendants, Plaintiff has not pled any facts supporting such claims. See Dkts. #19 and #130 at 5. Again, Plaintiff does not address

these claims in her opposition, with the exception of her defamation claim. However, while Plaintiff attempts to raise a defamation claim against these Defendants, all she alleges is that they received an allegedly defamatory statement from former King County Defendant Coblantz, who allegedly referred to her as "anti-government." She does not allege that any of the Port of Seattle Defendants made any defamatory statements. For all of the above reasons, the claims against the Port of Seattle Defendants will be dismissed.

### D. Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure for the deficiencies in Plaintiff's Complaint, particularly given the invalidity of Plaintiff's primary legal assertions as discussed above. Moreover, considering Plaintiff's litigation history in this and other courts, and viewing the record in this case as a whole, it is clear to the Court that Plaintiff has engaged in this litigation vexatiously and as a means of harassment of the Defendants, and not merely to seek justice for her alleged injuries. For that reason, the Court finds dismissal with prejudice appropriate.

### IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1. The Motion to Dismiss filed by the Port of Seattle Defendants (Dkt. #130) is GRANTED. The claims against Defendants Sean Gillebo, Kali Matuska, Port of Seattle, Julie Tanga and James Tuttle are dismissed in their entirety with prejudice, and these Defendants shall be terminated from this action.

2. The Motion to Dismiss filed by Crystal Hill Pennington (Dkt. #135) is GRANTED. The claims against Ms. Hill-Pennington are dismissed in their entirety with prejudice, and this Defendant shall be terminated from this action.

3. The Court will address the remaining Motion to Dismiss (Dkt. #145), as well as the pending Motion for Preliminary Injunction (Dkt. #85) and Motion for Attorney's Fees (Dkt. #154), in separate Orders.

DATED this 19th day of May, 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE